1  HADSELL STORMER RICHARDSON & RENICK, LLP
   DAN STORMER   SBN 101967
2  LINCOLN ELLIS   SBN 283657
   128 N. FAIR OAKS AVENUE
3  PASADENA, CA 91103
   t. 626 585-9600 f. 626 577-7079
4  e. dstormer@hadsellstormer.com
   e. l.ellis@hskrr.com
5
   LITT, ESTUAR & KITSON LLP
6  BARRETT S. LITT   SBN 45527
   1055 Wilshire Blvd., Suite 1880
7  Los Angeles, CA 90017
   t. 213-863-4527   f. 213-380-4585
8  e. blitt@littlaw.com

9  SCHONBRUN, DE SIMONE, SEPLOW, HARRIS,
         HOFFMAN & HARRISON
10 PAUL HOFFMAN   SBN 71244
   CATHERINE SWEETSER   SBN 271142
11 732 Ocean Front Walk
   Venice, CA 90291
12 t. 310 396-0731   f. 310 399-7040
   e. hoffpaul@aol.com
13 e. catherine.sdshhh@gmail.com

14 LAW OFFICE OF CAROL A. SOBEL    LAW OFFICE OF COLLEEN FLYNN
   CAROL A. SOBEL SBN 84483            COLLEEN M. FLYNN SBN 234281
15 3110 Main Street, Suite 210        3435 Wilshire Boulevard, Suite.2910
   Santa Monica, CA 90405             Los Angeles, CA 90010
16 t. 310 393-3055  f. 310 451-3858   t. 213 252-9444  f. 213 252-0091
   e. carolsobel@aol.com              e. cflynnlaw@yahoo.com
17

18                  UNITED STATES DISTRICT COURT

19        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

20 CHERYL AICHELE, JONATHAN           CASE NO: CV12-10863 DMG(FFMx)
   ALEXANDER, CARINA CLEMENTE,
21 MICHAEL PRSYNER, JAMES WEITZ,      )
   individually and as class representatives;   ) CLASS ACTION FOR DAMAGES,
22                                    ) INJUNCTIVE AND DECLARATORY
              Plaintiffs,             ) RELIEF; JURY DEMAND
23                                    )
   CITY OF LOS ANGELES, COUNTY OF     ) CIVIL RIGHTS:
24 LOS ANGELES, MAYOR ANTONIO         )
   VILLARAIGOSA, CHIEF CHARLIE        )   42 U.S.C §1983:
25 BECK, individually and in their official   )   FIRST AMENDMENT
   capacities, DOES 1-100;           )   FOURTH AMENDMENT
26                                    )   FOURTEENTH AMENDMENT
              Defendants.            )
27                                    )   CALIF. CONSTITUTION,
   _____ )      ARTICLE I, §§2,3,7,13
28                                        CA CIVIL CODE §52.1
                                          FALSE ARREST
                                          NEGLIGENCE

## JURISDICTION AND VENUE

1.     This action arises from under 42 U.S.C. §1983.  The Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. §§1331 and 1343.  The Court has jurisdiction over the class-action claims pursuant to 28 U.S.C. § 1332(d)(2). Supplemental jurisdiction over the state law claims pursuant is pursuant to 28 U.S.C. §1367.   The Court has jurisdiction to issue declaratory and/or injunctive relief pursuant to 28 U.S.C. §§2201 and 2202 and Federal Rules of Civil Procedure 57.

2.     Venue is proper in the Central District as the injuries complained of occurred in the City of Los Angeles ("City") and were caused by the Los Angeles Police Department ("LAPD") and the Los Angeles County Sheriff's Department ("LASD").   In addition, all defendants are located within the Central District Western Division.

## STATEMENT OF FACTS

3.     This is a civil rights action arising from the unconstitutional and unlawful violation of plaintiffs' First, Fourth and Fourteenth Amendment rights to assembly, association, freedom from unlawful seizure and liberty.  Plaintiffs, and the class of similarly situated individuals whom they represent, were among approximately 300 peaceable protestors and bystanders arrested on November 30, 2011 by the City defendants at or in the vicinity of Los Angeles City Hall in a massive, but unlawful, plan to end Occupy Los Angeles.

4.     The lawn and steps of Los Angeles City Hall have historically been the primary gathering point in the City to engage in protest and petition activities on a myriad of issues.  For example, in 1990, more than a thousand anti-abortion demonstrators protested on the South steps of City Hall, with a large number of counter-protestors also present.  Well over more than 5,000 people gathered in the same location to protest the first Gulf War.  The immigrant rights marches and rallies of the last decade similarly brought tens of thousands of people to City Hall

1   lawn, spilling over into the surrounding streets.  The largest group assembled was
2   estimated by the Los Angeles Police Department as more than 750,000 to protest
3   the proposed immigration bill by Representative Sensenbrenner, listening to
4   speakers standing on the steps of City Hall in 2006.  More recently, several
5   thousand counter-demonstrators assembled on City Hall lawn to protest a neo-Nazi
6   rally being held on the south steps.

7          5.     Plaintiffs participating in the Occupy Los Angeles protest first
8   assembled on the south lawn at City Hall on October 1, 2011.  City Hall is the
9   iconic symbol of government in Los Angeles and a quintessential public forum
10  where the community has historically assembled to exercise First Amendment
11  rights. On that first night and for several subsequent nights, after long discussions
12  with City officials, Occupy participants were required to move their tents off the
13  City Hall lawn at night. But, within just a few days, the City no longer imposed that
14  requirement and permitted the tents to stay up in plain view around the clock.

15         6.     Plaintiffs maintained tents in round-the-clock vigils at City Hall to
16  symbolize the economic crisis that has resulted in historic levels of foreclosures of
17  homes, while financial institutions benefit from public bail outs. At the outset, City
18  officials gave their full endorsement to the protest. In the first week of the
19  demonstration, then-Council President Eric Garcetti and Councilmembers
20  Rosendahl, Alarcon and Zine visited the Occupy protest.   Several of the
21  councilmembers expressly stated their support for the protest.  In that first week,
22  Councilmembers Rosendahl and Alarcon introduced a formal resolution of support
23  for the Occupy protest.  The final version of the resolution was passed in mid-
24  October, 2011. Under the City Administrative Code, the Mayor had the opportunity
25  to veto the resolution but expressly decided not to do so.  At every instance, City
26  officials communicated to plaintiffs permission to be present at City Hall lawn and
27  engage in their round-the-clock vigil against economic injustices.

28         7.     On or about October 6, 2011, Mayor Villaraigosa brought tarps to the

3

1   demonstrators to protect them from the rain.  Over the first several weeks of their
2   demonstration, City officials passed a formal resolution of support for the Occupy
3   action.  In every respect, both explicit and implicit, City officials provided nothing
4   except public approval for the Occupy assembly.   The resolution, passed
5   unanimously by the City Council, expressly stated that "the City of Los Angeles
6   hereby stands in SUPPORT for the continuation of the peaceful and vibrant exercise
7   in First Amendment Rights carried out by'cupy Los Angeles' ..."  This was a
8   reference to the ongoing 24-hour round-the-clock protest that had been under way
9   for nearly two weeks as of the time (October 12, 2011) the Resolution was adopted
10  by the Council.

11      8.      At the time that Occupy began its expressive activities at City Hall
12  lawn, the City had no, or inadequate, standards to guide the exercise of discretion
13  by public employees regarding use of this quintessential public forum.  The City
14  had no procedures to obtain a waiver of time, place or manner restrictions on public
15  assemblies on City Hall lawn. The City had no procedures by which to rescind
16  approval - explicit or implied - for the Occupy demonstration at City Hall lawn.
17  Moreover, the City never imposed any permitting requirements on Occupy.

18      9.      In the 1980s, permission to assemble on City Hall lawn was approved
19  by the Mayor's office through an informal process. When the Pope was scheduled
20  to visit Los Angeles in the late 1980s, the same process was followed and
21  permission was granted to the "Greet the Pope" coalition - a coalition of LGBT,
22  pro-choice and other activists - to assemble at City Hall lawn.  Then-Asst. Chief
23  Vernon sought to ban the protest, but was overridden by the Mayor and the City
24  Council.  In the wake of the protests following the state criminal acquittal of the
25  officers in the Rodney King beating case, the LAPD again attempted, unilaterally,
26  to ban protests at City Hall lawn.  The LAPD was unsuccessful and the forum
27  remained open to protest with no formal permitting process. In fact, in the past even
28  LAPD officers gathered, without a permit, at this site to protest stalled contract

4

1   negotiations with the City. After the litigation against the City resulting from police
2   assaults on demonstrators at the Democratic National Convention in 2000, a new
3   permitting process was implemented, consolidating the process in the Los Angeles
4   Police Department. Over the course of more than three decades, the public fora
5   surrounding the City Hall were never identified as public park grounds, never
6   subject to permitting regulations applicable to City parks, and never under the
7   purview of the Department of Recreation and Parks.      10.     Because the City
8   Hall lawn is a quintessential public forum, any decision regarding the use of this
9   location for expressive activity must be made pursuant to narrow, objective, and
10  fixed standards. Consistent with this bedrock principle, the government may not
11  enact new restrictions or enforce previously unenforced restrictions in such fora to
12  respond to a particular speaker. To pass constitutional muster, any time, place and
13  manner restrictions on use of the particular forum must be codified in objective
14  criteria set out in advance of a specific protest.

15       11.     Plaintiffs set up tents as an expression of their message opposing
16  economic inequality, bailouts for Wall Street and foreclosures for "Main Street".
17  Initially, at the direction of the City defendants, plaintiffs moved their tents to the
18  public sidewalks late each night, where they slept until morning. After a short time,
19  plaintiffs were allowed to remain with their tents on the lawn at night. At the time
20  that the participants in Occupy assembled on the City Hall lawn, the forum had
21  never been posted with any notice that it was a "park" and the City had never treated
22  it as such.

23       12.     At the time that the participants in Occupy assembled on the City Hall
24  lawn, the only restriction in the Los Angeles Municipal Code ("LAMC") on
25  "camping" was set forth in LAMC 63.44(c) and limited to beach property and those
26  areas posted as parks. Only months   after plaintiffs were unlawfully arrested did
27  the City amend the Municipal Code for the specific purpose of identifying City Hall
28  lawn as a "park" in which "camping" was prohibited. In the late spring of 2012, the

5

City Attorney drafted an amendment to Los Angeles Municipal Code §63.44 (prohibiting camping and tents in public parks), which was not adopted by the City Council until six months after plaintiffs were arrested.

13.    Throughout the time that Occupy was present at City Hall lawn, the participants repeatedly met with City officials to address any concerns the City had about the demonstration.  On several occasions, the City asked the County Health Department to inspect the protest area.  Occupy immediately addressed any concerns raised by the County Health Department and complied fully to alleviate any potential problems.  For example, when the County Health Department expressed concern that the portable toilets were inadequate to serve the number of participants in Occupy, the group immediately provided clean toilets on a more frequent basis. At no time was Occupy notified that their presence at City Hall lawn constituted a public health crisis or that their presence presented any other emergency requiring their immediate dispersal.

14.    At the press conference after plaintiffs were arrested, Mayor Villaraigosa made fleeting reference to the presence of children at the protest site as a reason to move against plaintiffs, but there were few, if any, children present at any time and no children were present when the City launched its "shock and awe" attack on plaintiffs, in which 1400 LAPD officers executed a deliberate plan to remove and arrest plaintiffs.  No children were present when this plan was executed and no children were taken into custody by public officials charged with protecting the welfare of children.  Moreover, Los Angeles has homeless families living on the streets and in cars with young children on and around Skid Row, but the Mayor has never responded to that situation.

15.    On Friday, November 25, 2011, plaintiffs learned by watching a press conference held by defendants that they would no longer be allowed to engage in the same expressive activities at City Hall that they had engaged in with the full knowledge and approval of City officials for the past eight plus weeks.  There was

1   no process by which this decision was made other than executive fiat. Shortly after
2   that press conference, City employees tacked paper signs to trees, announcing that
3   the area was now subject to closure at night under the City's park regulations.
4   Plaintiffs were ordered to leave the forum where they had assembled peaceably with
5   approval of the City Council for 59 days.

6       16.    So, after two months, defendant City, through the Mayor and the
7   LAPD, developed and executed a plan to eject plaintiffs from City Hall lawn, which
8   involved an unprecedented show of force by the LAPD.  In the words of Chief
9   Beck, the aim of the LAPD was to utilize "shock and awe," a militaristic approach
10  made infamous by former Secretary of Defense Donald Rumsfeld in the 2003
11  invasion and bombing of Iraq in search of elusive "weapons of mass destruction."
12  The only weapon plaintiffs had in this instance was the First Amendment.

13      17.    The City defendants began execution of their campaign of "shock and
14  awe" at approximately 12:00 a.m. on November 30, attacking from all sides with
15  one group of officers bursting out of the doors of City Hall and knocking down
16  anyone in their path. As officers prepared to make arrests, they advised that anyone
17  who did not want to be arrested should leave City Hall lawn and stand in a
18  particular place identified by the officers. But when some of the plaintiffs followed
19  those orders, they were "kettled" by other officers and arrested, despite the fact that
20  they had fully complied with the order to disperse.   In addition, officers
21  indiscriminately arrested individuals who were several blocks from the "shock and
22  awe" target, including individuals who had not been present for a dispersal order.

23      18.    Following their arrests, plaintiffs were transported to the LAPD's
24  Metropolitan Detention Center ("MDC") or the Van Nuys jail. Those taken to the
25  MDC were held in tight handcuffs in a parking structure adjacent to the jail. They
26  were kept there for hours and denied access to bathroom facilities and water. Their
27  requests to loosen their handcuffs were ignored.  Their requests to use bathroom
28  facilities were similarly denied, with male arrestees told they could do so if they

1  could urinate with their hands handcuffed behind their backs. Those plaintiffs
2  transported to Van Nuys jail were held on buses for approximately 7 hours, with no
3  access to bathroom facilities or water, tightly handcuffed the entire time. Their
4  requests to loosen their handcuffs were ignored. In response to requests to use
5  bathroom facilities, they were told to urinate and defecate on themselves, which
6  some were forced to do.

7      19.   The majority of plaintiffs were incarcerated for approximately 60
8  hours, despite the fact that they were entitled to release on their own recognizance
9  ("OR") pursuant to California Penal Code §853.6. This statute requires, in
10  mandatory language, that law enforcement release misdemeanor arrestees, such as
11  plaintiffs, on their own recognizance either prior to, or immediately after, booking
12  unless one of a limited number of exceptions applies. There was no reasonable
13  basis to believe that each and every one of the plaintiff class came within any of
14  these enumerated exceptions, but no individualized assessment was made. While
15  most of the class was incarcerated unlawfully for more than 60 hours, others were
16  forced to post the maximum cash bail for a misdemeanor offense in order to gain
17  their release. Others who did not have the personal financial resources to post a full
18  cash bail posted a lesser bond, which was nonrecoverable. In sum, the entire
19  plaintiff class was denied the individualized assessment of criminal liability that is
20  the hallmark of due process and each had their liberty unlawfully restricted as a
21  result of a deliberate decision by defendant City to ignore the command of Penal
22  Code §853.6.

23      20.   The denial of due process by the City defendants' deliberate refusal to
24  comply with the mandatory requirements of Penal Code §853.6 is all the more
25  unjustified by the fact that the City erected a high fence around City Hall
26  immediately after completing the arrests, making access to the public fora
27  surrounding City Hall impossible.

28      21.   On or about November 17, 2011, following the arrests of two smaller

groups of protestors at the Bank of America headquarters, the City instituted the policy of denying OR release to individuals who engaged in civil disobedience, or were perceived as engaging in civil disobedience, and were arrested for failure to disperse, trespass and similar non-violent misdemeanor offenses arising from protest activity.  Prior to this time, the LAPD had routinely applied Penal Code §853.6, as they were required to do, and released misdemeanor arrestees OR if they had no outstanding warrants.  However, on November 17, 2011, in response to a request to release the arrestees, Deputy Chief Perez stated that the LAPD would no longer grant OR release to individuals arrested for engaging in civil disobedience.  According to Deputy Chief Perez, the decision was made to deny OR release to "teach people a lesson."   Such a basis for a blanket decision to deny plaintiffs' liberty and detain them without justification for prolonged times violates the First, Fourth and Fourteenth Amendment rights of plaintiffs and the class members and was done with the specific and deliberate intent to interfere with the exercise of plaintiffs' rights to assembly and due process.

22.   In the three days following arrest of the class members, less than four dozen of the nearly 300 arrested were arraigned.  Each of those individuals had outstanding probation or parole violations, or a warrant based on a failure to appear on a minor offense, such as a traffic ticket.

**PARTIES**

**Plaintiffs:**

23.   Cheryl Aichele is a participant in Occupy Los Angeles.  She is a resident of the City and County of Los Angeles. On November 30, 2011, she was arrested while peaceably and lawfully sitting on City Hall lawn.  Aichele was tightly handcuffed and transported by bus to the Van Nuys jail.  The bus was operated by employees of, and belonged to, the LASD, an entity within the Defendant County of Los Angeles.  She was held on the bus for approximately 6 hours without

9

1   bathroom facilities, food or water.  While on the bus, Aichele observed other
2   arrestees forced to urinate on themselves after their repeated requests to access
3   bathroom facilities were denied. Aichele was denied the opportunity to be released
4   on her own recognizance pursuant to Penal Code §853.6 despite the fact that she
5   had no past criminal history and no reasonable suspicion existed to believe that, if
6   released OR, she would immediately engage in purportedly unlawful expressive
7   activity in the public forum of City Hall or elsewhere.  Aichele was compelled to
8   post bail to gain her release.  No criminal charges were filed against Aichele.  She
9   sues as an individual and on behalf of the class of similarly situated individuals she
10  represents.

11        24.    Jonathan Alexander is a reporter for KPFK Radio in Los Angeles.  On
12  the night of November 29, 2012, he was reporting live from the lawn of City Hall.
13  As the police began to make arrests, Alexander decided to stay with the protestors
14  and was subsequently arrested.  Although there was nothing in Alexander's past to
15  support a belief that, if released, he would immediately engage in alleged criminal
16  activity again, he was held on maximum bail.  Alexander was unable to post even
17  a ten-percent bond.  He remained in custody at the LAPD's Metropolitan Detention
18  Center ("MDC") until December 2, 2011, when he was finally released without bail.
19  All criminal charges against Alexanader have been dismissed.  He sues as an
20  individual and on behalf of all similarly situated class members.

21        25.    Carmina Clemente is a participant in Occupy Los Angeles.  She is a
22  resident of the County of Los Angeles.  On November 30, 2011, she was arrested
23  while present at City Hall.  During the course of her arrest, Clemente, like other
24  female arrestees, was subject to unnecessary and unreasonable force when an officer
25  pinched her nipple and then her inner thigh as a "pain compliance" technique.  She
26  suffered bruising to her body where the officer applied the pain compliance
27  technique. Clemente was transported by Los Angeles County employees first to the
28  MDC and then to Van Nuys jail.  Throughout this time, she was held in tight

1  handcuffs, which caused pain and visible bruising to her wrists. Clemente was
2  denied OR release despite the fact that she had no prior criminal history. Ultimately,
3  she posted a bond for her release. No criminal charges were filed against Clemente.
4  She sues as an individual and on behalf of the class of similarly situated individuals
5  she represents.

6      26.    Michael Prysner is a resident of Los Angeles County. He is a war
7  veteran. He was arrested in the early morning hours of November 30, 2011 at City
8  Hall. Prysner was transported to the MDC, where he was held in tight handcuffs for
9  approximately 7 hours on the cement floor of a parking structure adjoining MDC.
10 Although Prsyner made repeated requests to use the bathroom in the hours after his
11 arrest, and observed other arrestees do the same, he was told by officers that he
12 could do so only if he could urinate with his hands handcuffed behind his back.
13 Prysner was denied OR release despite the fact that he was accused only of
14 committing a non-violent misdemeanor offense: failure to disperse. He was held
15 for nearly 20 hours before posting the maximum cash bail of $5,000. No charges
16 were filed against Prsyner. He sues as an individual and on behalf of the class of
17 similarly situated individuals he represents.

18     27.    James Weitz is a videographer and was not a part of Occupy. Weitz
19 was arrested in the early morning hours of November 30, 2011 in the vicinity of 1st
20 Street and Broadway. Weitz was never at the lawn of City Hall that night. Prior to
21 the time of his arrest, Weitz observed officers instruct a group of individuals near
22 Weitz that anyone who did not want to be arrested should get out of the street and
23 go to the public sidewalk farther away from City Hall. Weitz videotaped the
24 officers' instructions. Weitz readily complied with this order and moved to the
25 sidewalk. Shortly after he did so, he was arrested, along with everyone else who
26 had followed the police directive and moved to the sidewalk so as to avoid arrest.
27 Weitz was tightly handcuffed and transported by bus to Van Nuys jail. Once the
28 bus arrived at Van Nuys, Weitz and the other occupants were held in handcuffs for

11

1  approximately four hours or more and denied access to bathroom facilities, food and

2  water throughout the time that they were held on the bus. Several arrestees

3  requested to use bathroom facilities and were repeatedly denied permission by the

4  defendant COUNTY employees. Arrestees were forced to urinate and defecate on

5  themselves while handcuffed, causing nauseating odors on the enclosed bus. At

6  least one arrestee was placed in a cage on the bus, causing the individual increased

7  anxiety, which Weitz observed. After being held for hours on the bus at Van Nuys

8  jail without water and/or bathroom facilities, Weitz and the others were then

9  transported back to downtown Los Angeles to the MDC. In the course of driving

10 from Van Nuys to the MDC by employees of the defendant County. who stopped

11 in route for coffee and donuts for the deputies while Weitz and the others remained

12 on the bus in handcuffs, as they had been since their arrest. Weitz was denied OR

13 release despite having no prior criminal record. He was released early on Friday,

14 December 2, 2011, only after being required to post $2,000 bail, despite the fact that

15 he had no criminal history. No charges were filed against Weitz. He sues as an

16 individual and on behalf of the class of similarly situated individuals he represents.

17

18 **Defendants:**

19      28.   Defendant City of Los Angeles is, and at all times relevant herein was,

20 a municipal entity duly organized under the laws of the State of California, with the

21 capacity to sue and be sued. The City is a Charter City and subject to the Charter

22 and the City Administrative Code. The Los Angeles Police Department is a

23 subdivision of the City of Los Angeles. The City is sued on the basis of its policies,

24 customs and/or practices which gave rise to plaintiffs' federal civil rights claims, as

25 well as on the basis of *respondeat superior* for the state law claims.

26      29.   Defendant County of Los Angeles ("County") is a subdivision of the

27 State of California and a government entity duly organized under the laws of the

28 State of California, with the capacity to sue and be sued. On November 30, 2011,

1  the Los Angeles County Sheriff's Department provided officers and transportation
2  members of the plaintiff class to the LAPD's Van Nuys jail, where plaintiffs
3  continued to be held on the buses in tight handcuffs for extremely long periods of
4  time.  While the County defendants did not make these arrests, they affirmatively
5  refused to loosen painfully tight handcuffs, refused to provide access to bathrooms,
6  and ridiculed plaintiffs when they requested assistance, telling plaintiffs to urinate
7  and defecate on themselves.  The County employees charged with transporting
8  plaintiffs had the duty to intervene to prevent or halt unlawful and/or
9  unconstitutional conduct  complained of herein.

10      30.    Mayor Antonio Villaraigosa is the chief executive officer of the City
11  of Los Angeles.   Unless otherwise provided by the City Charter, the Mayor has
12  authority over all departments in the City.   Pursuant to the City Charter and
13  Administrative Code, the Mayor must act to approve or disapprove resolutions
14  passed by the City Council, either by express action or by operation of law.  Under
15  the terms of the City laws, resolutions passed by the City are the official policy of
16  the City unless and until revised or rescinded.   Mayor Villaraigosa had the
17  opportunity to reject the resolution of the City Council concerning Occupy's
18  presence at City Hall but did not do so.  On information and belief, plaintiffs allege
19  that Mayor Villaraigosa directed the closing of the City Hall lawn public fora and
20  directed the Los Angeles Police Department to arrest plaintiffs if they did not
21  disperse. Mayor Villaraigosa is sued in his individual and official capacity.

22      31.    Chief Charlie Beck is the head of the Los Angeles Police Department.
23  At all times relevant herein, he was the command staff employee of the LAPD who
24  gave final approval to the plan, supervision, and execution of the police conduct
25  complained of herein.  To the extent, if any, that Beck did not personally approve
26  the plan to disperse, arrest, detain and incarcerate plaintiffs for prolonged times, he
27  expressly delegated his authority as a policy maker to members of his command
28  staff, including but not limited to Assistant Chief Paysinger of the Office of

1   Operations, Deputy Chief Jacobs of the Office of Operations, and Deputy Chief Jose

2   Perez of Central Bureau.  Regardless of the degree of delegation of his authority as

3   the policy maker for the Los Angeles Police Department and the City of Los

4   Angeles on the issues raised by plaintiffs' claims, Beck ratified and/or condoned the

5   policies, practices and customs employed in the arrest and detention of plaintiffs as

6   complained of herein.  At a press conference held by defendant Villaraigosa and

7   Beck on November 30, 2011, following the arrests of plaintiffs and the class they

8   represent, Beck acknowledged the process of developing the plan for the arrests of

9   plaintiffs and his approval of the plan.  Beck is sued in his individual and official

10  capacity.

11       32.    Plaintiffs are ignorant of the true names and/or capacities of defendants

12  sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants

13  by such fictitious names.  Plaintiffs will amend this complaint to allege their true

14  names and capacities when ascertained.  The Doe defendants include individual

15  employees of the defendant City and County, who caused, participated in, and/or

16  failed to intervene to prevent the conduct complained of herein. Plaintiffs are

17  informed and believe and therefore allege that each of the Doe defendants is legally

18  responsible and liable for the incident, injuries and damages claimed herein, and

19  that each Doe defendant proximately caused said incidents, injuries and damages

20  by reason of their negligence, breach of duty, negligent supervision, management

21  or control, violation of constitutional and legal rights, or by reason of other

22  personal, vicarious or imputed negligence, fault, or breach of duty, whether

23  severally or jointly, or whether based upon agency, employment, or control, or upon

24  any other act or omission.  Plaintiffs will seek leave to amend this complaint to

25  insert further charging allegations when such facts are ascertained.

26       33.    Each of the defendants, including defendants DOES 1 through100,

27  caused, and is responsible for, the unlawful conduct and resulting injuries suffered

28  by plaintiffs and the class they represent by, among other things, personally

14

1  participating in the unlawful conduct, or acting jointly, or conspiring with others
2  who did so; by authorizing, acquiescing in, or setting in motion policies, plans or
3  actions that led to the unlawful conduct; by failing to take action to prevent the
4  unlawful conduct; by failing and refusing with deliberate indifference to plaintiffs'
5  rights to initiate and maintain adequate training and supervision; and by ratifying
6  the unlawful conduct that occurred by agents and officers under their direction and
7  control, including failing to take remedial or disciplinary action.

8      34.    In doing the acts alleged herein, defendants, and each of them, acted
9  within the course and scope of their employment.

10     35.    In doing the acts and/or omissions alleged herein, defendants, and each
11  of them, acted under color of authority and/or under color of law.

12     36.    In doing the acts and/or omissions alleged herein, defendants, and each
13  of them, acted as the agent, servant, employee and/or in concert with each of said
14  other defendants.

15

16                **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

17     37.    Plaintiffs timely filed claims with the defendant City of Los Angeles
18  and the defendant County of Los Angeles pursuant to California Government Code
19  §810 et seq. The claims were filed on behalf of individual named plaintiffs and on
20  behalf of the class of similarly situated individuals they represent. The claims were
21  denied by all defendants, either by written letters of advisement or by operation of
22  law. Plaintiffs have exhausted all administrative remedies available to them.

23

24                    **CLASS ACTION ALLEGATIONS**

25     38.    The proposed damages class is defined as all person who were arrested
26  in or around the vicinity of City Hall on November 30, 2011, for participating in the
27  Occupy protest and/or for allegedly failing to disperse. The proposed damages
28  subclasses are defined as:

15

a.   All persons who were arrested while participating in the Occupy protest at Los Angeles City Hall on November 30, 2011 ("Occupy Sub-Class");

b.   All persons who were arrested in the vicinity of City Hall on November 30, 2011, but who were not participating in the Occupy protest and who complied with all police orders prior to their arrest ("Vicinity Sub-Class");

39.   The proposed injunctive relief class is all individuals who were denied release on their own recognizance, pursuant to Penal Code §853.6, without reasonable suspicion to believe that they were not eligible for OR release.

40.   The claims of the proposed class and each subclass satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3) and, alternately, Rule 23(b)(2).

41.   The total of those arrested in the event giving rise to this action is approximately 292 persons and, therefore, too numerous for joinder. The Vicinity sub-class of those arrested outside of the City Hall lawn is approximately 60 individuals.

42.   The defendants arrested putative class as a group and treated all arrestees the same, acting on grounds that apply generally to the classes. The named plaintiffs' claims that their First, Fourth and Fourteenth Amendment rights and their analogous state Constitution, statutory and common law rights were violated raise common questions of law and fact.

43.   The claims that the class members' First, Fourth and Fourteenth Amendment rights were violated raise common questions of law and fact that predominate over any questions affecting only individual members. This includes arrest without probable cause based on an unlawful dispersal order, arrest of the sub-class of those outside of City Hall lawn without any dispersal order or probable cause, excessive force in handcuffing, denial of bathroom facilities, and violation

1 of all class members' liberty interests by the deliberate decision to incarcerate the
2 class on the basis of their having engaged in what Defendant City alleges was civil
3 disobedience and/or their association with individuals who the Defendant City
4 believed had engaged in civil disobedience and, thereby, deny plaintiffs the liberty
5 interest codified in California Penal Code §853.6.

6      44.    The claims by the class and each subclass that the arrests violated their
7 First Amendment rights to engage in, observe or associate with expressive and
8 assembly activities present common questions of law and fact that predominate over
9 any questions affecting only individual members.

10      45.    The claims of the named plaintiffs are typical of the claims of the class,
11 as each was engaged in or associating with peaceable and lawful free speech and
12 assembly activity when each was arrested on November 30, 2011 as part of a
13 deliberate plan characterized by Defendan Beck as "shock and awe" against the
14 class as a whole.

15      46.    The representative plaintiffs will fairly and adequately protect the
16 interests of the class because they were subject to the unlawful law enforcement
17 conduct complained of herein, and have no interests antagonistic to other members
18 of the class. In addition, plaintiffs' counsel are experienced in litigating federal civil
19 rights cases and class actions.

20      47.    The named plaintiffs are represented by counsel with extensive class-
21 action experience in civil rights cases. Attorneys Hoffman, Litt and Sobel have
22 successfully litigated a number of class-action cases involving the rights of
23 protesters in Los Angeles. Most recently, Hoffman, Litt and Sobel were appointed
24 by the court as class counsel in *Multi-Ethnic Immigrant Worker Network v. City of*
25 *Los Angeles*, 24 F.R.D. 621 (C.D. Cal. 2007), challenging the LAPD's assault on
26 a lawful immigrant rights rally in MacArthur Park on May 1, 2007. The case
27 resulted in a settlement of $12,850,000, the largest amount paid nationally in a
28 protest case in which there were no arrests of the plaintiffs. In addition to class-

1 | action protest litigation, attorneys Hoffman, Litt, Sobel and Stormer have served as
2 | class counsel in numerous other class actions.

3 |     48.    The defendants have acted and refused to act on grounds generally
4 | applicable to the class, and injunctive and declaratory relief for the class as a whole
5 | is appropriate.

6 |     49.    The prosecution of separate actions by individual members of the class
7 | would create a risk of inconsistent or incompatible standards of conduct for the
8 | defendants, thereby making a class action the superior method of adjudicating the
9 | controversy.

10 |
11 | **MONELL CLAIMS**

12 |     50.    The City of Los Angeles maintains a policy, practice and/or custom of
13 | engaging in mass unlawful dispersal orders to protesters in the absence of a lawful
14 | basis to order those engaged in expressive activity to leave a public forum.

15 |     51.    The violation of constitutional and statutory rights complained of
16 | herein resulted from a policy, practice and/or custom of the CITY and was directed,
17 | approved and/or ratified by Mayor VILLARAIGOSA and LAPD Chief BECK.
18 | Mayor Villaraigosa and Chief Beck are policy makers for the City. To the extent
19 | that they did not personally direct the policy, practice and/or custom at issue, their
20 | authority as policymakers, and specifically the authority of Chief Beck, was
21 | expressly delegated to Assistant Chief Paysinger and Deputy Chiefs Jacobs of the
22 | LAPD's Office of Operations and to Deputy Chief Perez, the commander of Central
23 | Division, the geographic subdivision of the LAPD which includes downtown Los
24 | Angeles. Each of these individuals - Mayor Villaraigosa, Chief Beck, Asst. Chief
25 | Paysinger, Deputy Chief Jacobs and Deputy Chief Perez - was present during the
26 | execution of the policy. Moreover, on information and belief, plaintiffs allege that
27 | the Los Angeles Police Commission was advised of, and approved in advance, the
28 | plan developed for the removal and arrest of the Occupy demonstrators and those

1  believed by defendants to be associated with them.   Members of the Police
2  Commission were present as the arrests were executed.

3        52.    On information and belief, plaintiffs allege that Chief Paysinger and
4  Deputy Chief Jacobs were delegated by Chief Beck with the authority to set policy
5  and direct that the liberty interest guaranteed by Penal Code §853.6 and the
6  Fourteenth Amendment would be denied to everyone arrested on November 30 in
7  the assault on the Occupy demonstration, regardless of whether there was
8  reasonable individualized suspicion to believe that any of the 292 individuals
9  arrested on November 30 should be denied his or her liberty based on facts
10 supporting one or more of the limited list of exceptions to the requirement of
11 mandatory OR release in Penal Code §853.6 for misdemeanor arrestees.

12       53.    The denial of OR release to the plaintiff class on November 30, 2011
13 involved the application of a policy first applied by the LAPD on or about early
14 November, 2011.   On information and belief, plaintiffs allege that the LAPD
15 instituted such a policy to deny OR release to protestors who were arrested on
16 misdemeanor charges for engaging in civil disobedience.   The policy, practice
17 and/or custom of denying OR release was instituted for the purpose of "teaching a
18 lesson" to individuals who engaged in civil disobedience.   There was no
19 individualized suspicion to believe that each and every arrestee came within one of
20 the enumerated exceptions to mandatory OR release as provided by Penal Code
21 §853.6.  There is no possible basis for such a policy, practice or custom other than
22 to retaliate for the exercise of First Amendment rights.

23       54.    Each of these policy makers, whether directly or by express delegation,
24 participated in, caused, approved or ratified the arrest and prolonged detention of
25 the plaintiff class. This included through issuing, approving and/or ratifying the
26 order to arrest the class, and through issuing, approving and/or ratifying the order
27 to deny OR release for plaintiffs in violation of Penal Code §853.6.  Additionally,
28 individual supervisory officers had the   duty to exercise appropriate command

1  authority in their supervision of their subordinates and failed to do so, resulting in
2  the unconstitutional deprivations complained of herein. Individual officers had the
3  duty to intervene to prevent or halt unlawful and/or unconstitutional conduct
4  complained of herein, including the mass false arrest of the class.

5

6  **DECLARATORY AND INJUNCTIVE RELIEF**

7      55.    Paragraphs 1 through 54 are incorporated by reference as if set forth
8  herein.

9      56.    The public fora encircling City Hall have historically been used for
10 large protests. The City defendants were fully aware of the expressive activity
11 engaged in by the plaintiff class. The Los Angeles City Council unanimously
12 passed a formal resolution expressing support for the continued presence of Occupy
13 on City Hall lawn as First Amendment expression. The City's subsequent reversal
14 and decision to apply park regulations 59 days after plaintiffs began exercising First
15 Amendment rights in this archetypal public forum is a transparent attempt to restrict
16 Occupy LA's speech.

17     57.    The City defendants' actions in participating in, executing, causing to
18 be executed, failing to intervene to cause the cessation of, approving or ratifying
19 the arrest of the plaintiff class on November 30, 2011 on or at the Los Angeles City
20 Hall violated the rights of plaintiffs pursuant to the First, Fourth and Fourteenth
21 Amendments to the U.S. Constitution.

22     58.    The City defendants have adopted municipal policies, practices and
23 customs that have caused the violations complained of herein; and, in the alternate,
24 have actual or constructive notice of the constitutional violations described herein
25 and have failed to take action, thereby allowing the continuation of such a policy
26 or custom, and causing the harms complained of herein.

27     59.    As a direct and proximate result of the conduct of defendants described
28 herein, the named individual plaintiffs have been denied their constitutional,

20

1   statutory and legal rights as stated below, and have suffered general and special

2   damages, including but not limited to, mental and emotional distress, physical

3   injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and

4   anxiety and other damages in an amount according to proof.

5        60.   Defendants' acts were willful, wanton, malicious and oppressive and

6   done with conscious disregard and deliberate indifference for plaintiffs' rights.

7        61.   Defendants' policies, practices, customs, conduct and acts alleged

8   herein have resulted and will continue to result in irreparable injury to plaintiffs,

9   including but not limited to violations of their constitutional and statutory rights.

10  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs

11  described herein.  The plaintiffs and class members intend in the future to exercise

12  their constitutional rights of freedom of speech and association by engaging in

13  demonstrations and expressive activities in the City of Los Angeles.  Defendants'

14  conduct described herein has created uncertainty among plaintiffs with respect to

15  their exercise now and in the future of these constitutional rights.  Specifically,

16  Plaintiffs are concerned that, if arrested, whether lawfully or unlawfully, they will

17  again be denied the liberty interest codified in California Penal Code §853.6 and

18  will be detained until their arraignment unless and until they post a monetary bond.

19  Plaintiffs therefore seek injunctive relief from this court, to ensure that plaintiffs and

20  persons similarly situated will not suffer violations of their rights from defendants'

21  illegal and unconstitutional policies, customs and practices as described herein.

22       62.   Plaintiffs also seek injunctive relief in the form of an order requiring

23  that defendants seal and destroy any records derived from plaintiffs' arrests,

24  including fingerprints, photographs, and other identification and descriptive

25  information, and all information, and biological samples and information obtained

26  from such biological samples collected from the plaintiff class, and identify to the

27  plaintiff class all entities and agencies to which such information has been

28  disseminated; and that all such disseminated records be collected and destroyed.

63.   An actual controversy exists between plaintiffs and defendants in that plaintiffs contend that the policies, practices and conduct of defendants alleged herein are unlawful and unconstitutional, whereas plaintiffs are informed and believe that defendants contend that said policies, practices and conduct are lawful and constitutional.   Plaintiffs seek a declaration of rights with respect to this controversy.

**FIRST CLAIM FOR RELIEF**
**Violation Of First Amendment To The United States Constitution**
**(42 U.S.C. § 1983); Violation of the California Constitution, Article I, §§2, 3**

64.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

65.   Defendants' above-described conduct violated plaintiffs' rights to freedom of speech, assembly and association under the First Amendment to the United States Constitution and the analogous provisions of the California Constitution.

**SECOND CLAIM FOR RELIEF**
**Violation Of Fourth Amendment To United States Constitution**
**(42 U.S.C. § 1983); California Constitution Article I, §7**

66.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

67.   Defendants' above-described conduct violated plaintiffs' rights to be free from unreasonable seizures and excessive and/or arbitrary force and/or arrest and/or detention without reasonable or probable cause under the Fourth Amendment to the United States Constitution.   Defendants intentionally imprisoned the class in a parking structure and on buses for hours, in tight handcuffs, and held plaintiffs in the jails in violation of Penal Code section 853.6, and for an unreasonably prolonged period of time and under unreasonably inhumane conditions.

### THIRD CLAIM FOR RELIEF
**Violation Of Fourteenth Amendment To United States Constitution
(42 U.S.C. § 1983); California Constitution Article I, §7**

68.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

69.    Defendants' above-described conduct deprived plaintiffs of liberty without due process of law under the Fourteenth Amendment to the United States Constitution. Based on their perceived association with Occupy and their purported engagement in "civil disobedience," Plaintiffs were uniformly denied the mandatory "liberty" interest codified at California Penal Code §853.6 when they were denied released on their own recognizance and either required to post bail, or held for nearly three days before being released without charges.

### FOURTH CLAIM FOR RELIEF
**Violation Of Fourteenth Amendment To United States Constitution
(42 U.S.C. § 1983); California Constitution Article I, §13**

70.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

71.    Defendants' above-described conduct violated plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

### FIFTH CLAIM FOR RELIEF
**False Arrest and/or False Imprisonment**

72.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

73.    Plaintiffs were arrested and imprisoned without reasonable or probable cause to believe that they committed any crime.

74.    Defendants intentionally imprisoned the class in a parking structure, buses and the jails in violation of Penal Code section 853.6,and for an unreasonably prolonged period of time and under unreasonably inhumane conditions.

23

## SIXTH CLAIM FOR RELIEF
### Violation of California Civil Code § 52.1

75.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.  The **CITY** defendants explicitly determined in advance of the arrests to deny plaintiffs any consideration under the legislative directive for mandatory release without bail codified in Penal Code §853.6. Defendants did so for the purpose of punishing plaintiffs for engaging what defendant **CITY** believed was civil disobedience and to deter plaintiffs and others from exercising First Amendment rights and engaging in alleged civil disobedience in the future.

76.     Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code section 52.1.


## SEVENTH CLAIM FOR RELIEF
### Negligence

77.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

78.     Defendants have a duty of care to plaintiffs to ensure that defendants did not cause unnecessary or unjustified harm to plaintiffs, and a duty of care to hire, train, supervise and discipline their officers and employees so as to not cause harm to plaintiffs and to prevent violations of plaintiffs' constitutional, statutory and common law rights.

79.     The above-described acts and omissions of defendants breached the duty of care defendants owed to the named individual plaintiffs.

## PRAYER FOR RELIEF

1. For an order certifying the class defined herein pursuant to Federal Rules of Civil Procedure Rule 23(b)(2) and (3);

2. For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

3. For preliminary and permanent injunctive relief requiring defendants to seal and destroy all records derived from this arrest, including all fingerprints, photographs, identification and descriptive information collected from the plaintiff class;

4. For entry of an order that disclosure be made in writing to plaintiffs and the Court as to all entities and agencies to which such material has been disseminated and by whom gathered; and that all records disseminated be collected and sealed, including all copies of such disseminated records that may have been subject to dissemination by others;

5. For entry of an order declaring the arrests null and void;

6 For a declaratory judgment that defendants' conduct complained of herein was a violation of plaintiffs' rights under the Constitution and laws of the United States and California;

7. For general and compensatory damages for violation of plaintiffs' federal and state constitutional and statutory rights, pain and suffering, all to be determined according to proof;

8. For punitive and exemplary damages in amounts to be determined according to proof as to the individual defendants;

9. For an award of statutory damages and penalties pursuant to Cal. Civil Code section 52(b) to be determined according to proof;

10. For attorneys' fees pursuant to 42 U.S.C. § 1988 and California Civil Code section 52(b) and section 52.1(h), and California Code of Civil Procedure section 1021.5;

11.  For costs of suit;

12.  For pre- and post-judgment interest as permitted by law;

13.  For such other and further relief as the Court may deem just and proper.

Dated: December 20, 2012          Respectfully submitted,

                                  Hadsell Stormer Richardson & Renick, LLP
                                  Schonbrun, DeSimone, Seplow, Harris, Hoffman
                                      & Harrison
                                  Litt, Estuar & Kitson, LLP
                                  Law Office of Carol A. Sobel
                                  Law Office of Colleen M. Flynn

                                  By: CAROL A. SOBEL
                                      Attorneys for Plaintiffs

26

1

## JURY TRIAL DEMAND

2        Plaintiffs hereby demand a jury trial.

3

Dated: December 20, 2012        Respectfully submitted,
4
                                Hadsell Stormer Richardson & Renick, LLP
5                               Schonbrun, DeSimone, Seplow, Harris, Hoffman
                                    & Harrison
6                               Litt, Estuar & Kitson, LLP
                                Law Office of Carol A. Sobel
7                               Law Office of Colleen M. Flynn

8

9                               By: CAROL A. SOBEL
                                Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Cheryl Aichele, Jonathan Alexander, Carina Clemente, Michael Prysner, James Weitz, as individuals and as representatives of a class of similarly situated individuals | City of Los Angeles, County of Los Angeles, Mayor Antonio Villaraigosa, Chief Charlie Beck, Does 1-100, individually and in their official capacities |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Law Office of Carol A. Sobel<br>3110 Main Street, Ste. 210<br>Santa Monica, CA 90405   t. 310 393-3055 | Carmen Trutanich<br>Los Angeles City Attorney<br>200 N. Main Street, City Hall East<br>Los Angeles, CA 90012 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☑ MONEY DEMANDED IN COMPLAINT: $ TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. Sec. 1983: 1st, 4th, 14th Amendment - arrest for demonstration; denial of liberty by denial of OR; unlawful conditions of detention

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | ☑ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 240 Torts to Land | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV12-10863

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

                         ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

                         ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

                         ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Carol A. Sobel_     Date December 20, 2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

### CV12- 10863 DMG (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)         NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Carol A. Sobel  SBN 84483
3110 Main Street, Suite 210
Santa Monica, CA 90405
t. 310 393-3055 e. 310 451-3858
e. carolsobel@aol.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL AICHELE, JONATHAN ALEXANDER, CARINA CLEMENTE, MICHAEL PRYSNER, JAMES WEITZ, individually and as class representatives; PLAINTIFF(S) v. | CASE NUMBER<br><br>CV12-10863<br>DMG (FFMx) |
| CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, MAYOR ANTONIO VILLARAIGOSA, CHIEF CHARLIE BECK, individually and in their official capacities, DOES 1-100; DEFENDANT(S). | **SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Carol A. Sobel_____, whose address is _3110 Main Street, Suite 210, Santa Monica, CA 90405_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___DEC 2 0 2012___

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*