**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

I.    **TABLE OF REPORTED ATTORNEYS' FEES – ORGANIZED BY CASE [SUPERSCRIPT REFERENCES FOUND AT CONCLUSION OF THIS SECTION BEGINNING ON PG. 16] [RATES ROUNDED DOWN TO NEAREST DOLLAR]**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Hector O. Villagra[1] | ACLU | 17 (1994) | $600 | 2011 | $681 | |
| Belinda Escobosa Helzer[1] | ACLU | 11 (2000) | $525 | 2011 | $596 | |
| Peter Bibring[1] | ACLU | 09 (2002) | $490 | 2011 | $556 | RS SL |
| Paralegal[1] | ACLU | | $200 | 2011 | $227 | |
| Joseph J. Ybarra[1] | MTO** | 10 (2001) | $550 | 2011 | $624 | |
| Jacob A. Kreilkamp[1] | MTO** | 08 (2003) | $505 | 2011 | $573 | |
| Laura D. Smolowe[1] | MTO** | 05 (2006) | $460 | 2011 | $522 | |
| Marina A. Torres[1] | MTO** | 03 (2008) | $385 | 2011 | $437 | |
| Sarala V. Nagala[1] | MTO** | 03 (2008) | $385 | 2011 | $437 | |
| Paralegal[1] | MTO** | | $210 | 2011 | $238 | |
| ALS[1] | MTO** | | $250 | 2011 | $284 | |
| Carol Sobel[2] | Law Ofc Carol Sobel | 31 (1978) | $710 | 2009 | $859 | SL |
| Mark Rosenbaum[2] | ACLU | 35 (1974) | $740 | 2009 | $896 | SL |
| Peter Eliasberg[2] | ACLU | 15 (1994) | $525 | 2009 | $635 | SL |
| Peter Bibring[2] | ACLU | 07 (2002) | $375 | 2009 | $454 | RS SL |
| James de Simone[3] | Schoenbrun, de Simon | 27 (1985) | $695 | 2012 | $764 | SL |
| Michael Seplow[3] | Schoenbrun, de Simon | 22 (1990) | $630 | 2012 | $693 | SL |

1

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Anna Canning[3] | Schoenbrun, de Simon | 06 (2006) | $450 | 2012 | $495 | |
| Law student interns[3] | Schoenbrun, de Simon | | $200 | 2012 | $220 | |
| Sid Wolinsky[4] | DRA* | 49 (1961) | $835 | 2010 | $979 | |
| Laurence Paradis[4] | DRA* | 26 (1985) | $730 | 2010 | $829 | SL |
| Melissa Kasnitz[4] | DRA* | 18 (1992) | $650 | 2010 | $738 | |
| Jennifer Bezoza[4] | DRA* | 10 (2000) | $570 | 2010 | $648 | |
| Roger Heller[4] | DRA* | 09 (2001) | $560 | 2010 | $636 | SL |
| Kevin Knestrick[4] | DRA* | 07 (2003) | $535 | 2010 | $608 | |
| Kasey Corbit[4] | DRA* | 06 (2004) | $500 | 2010 | $568 | |
| Mary–Lee Kimber[4] | DRA* | 05 (2005) | $475 | 2010 | $540 | |
| Stephanie Biedermann[4] | DRA* | 03 (2007) | $350 | 2010 | $398 | |
| Becca von Behren[4] | DRA* | 02 (2008) | $265 | 2010 | $301 | |
| Senior paralegals[4] | DRA* | | $265 | 2010 | $301 | |
| Paralegals[4] | DRA* | | $225 | 2010 | $256 | |
| Summer associates[4] | DRA* | | $245 | 2010 | $278 | |
| Law clerks[4] | DRA* | | $175 | 2010 | $199 | |
| Case clerks[4] | DRA* | | $165 | 2010 | $187 | |
| Daniel B. Kohrman[4] | AFL***** | 26 (1984) | $740 | 2010 | $841 | |
| Julie Nepveu[4] | AFL***** | 19 (1991) | $660 | 2010 | $750 | |
| Jose R. Allen[4] | Skadden Arps | 34 (1976) | $930 | 2010 | $1,057 | SL |
| Sheryl Wu Leung[4] | Skadden Arps | 05 (2005) | $395 | 2010 | $449 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
|------|------|------------------------|------|------|---------------|--------------|
| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
| Nathaniel Fisher[4] | Skadden Arps | 02 (2008) | $530 | 2010 | $602 | |
| Legal assistant[4] | Skadden Arps | | $285 | 2010 | $324 | |
| Technology manager[4] | Skadden Arps | | $320 | 2010 | $364 | |
| Ben Schonbrun[5] | Schonbrun, de Simone | 25 (1985) | $650 | 2010 | $738 | SL |
| Michael Seplow[5] | Schonbrun, de Simone | 20 (1990) | $590 | 2010 | $670 | SL |
| John Raphling[5] | Schonbrun, de Simone | 17 (1993) | $525 | 2010 | $596 | |
| Barrett S. Litt[6] | Litt, Estuar & Kitson | 40 (1969) | $800 | 2009 | $973 | SL |
| Carol A. Sobel[6] | Law Offices of Carol Sobel | 31 (1978) | $710 | 2009 | $864 | SL |
| Rebecca Thornton[6] | Law Offices of Carol Sobel | 08 (2001) | $425 | 2009 | $517 | |
| Paul L. Hoffman[6] | Schonbrun, de Simone | 33 (1976) | $750 | 2009 | $912 | SL |
| Barrett S. Litt[7] | Litt, Estuar & Kitson | 38 (1969) | $725 | 2007 | $935 | SL |
| Paul Estuar[7] | Litt, Estuar & Kitson | 14 (1993) | $485 | 2007 | $625 | SL |
| Stacey Brown[7] | Litt, Estuar & Kitson | 01 (2006) | $275 | 2007 | $354 | SL |
| Senior Paralegals[7] | Litt, Estuar & Kitson | | $225 | 2007 | $290 | |
| Barrett S. Litt[8] | Litt, Estuar & Kitson | 43 (1969) | $850 | 2012 | $935 | SL |
| Robert M. Kitson[8] | Litt, Estuar & Kitson | 17 (1995) | $625 | 2012 | $687 | SL |
| Bryan M. Miller[8] | Litt, Estuar & Kitson | 18 (1994) | $625 | 2012 | $687 | |
| Sr. paralegal[8] | Litt, Estuar & Kitson | | $250 | 2012 | $275 | |
| Law student interns[8] | Litt, Estuar & Kitson | | $225 | 2012 | $247 | |
| Dan Stormer[8] | HSKRR**** | 38 (1974) | $825 | 2012 | $907 | SL |
| Michael Bien[9] | Rosen Bien Galvan & Grunfeld | 28 (2008) | $640 | 2008 | $800 | SL |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Unnamed[10] | Prison Law Office | 01 (2009) | $275 | 2010 | $322 | |
| Unnamed[10] | Prison Law Office | 32 (1978) | $700 | 2010 | $820 | |
| Unnamed[10] | Rosen Bien & Galvan | 48 (1962) | $800 | 2010 | $938 | |
| Unnamed[10] | Rosen Bien & Galvan | 13 (1997) | $560 | 2010 | $656 | |
| Sr. paralegal[10] | Rosen Bien & Galvan | | $240 | 2010 | $281 | |
| Unnamed[10] | Bingham, McCutcheon | 32 (1978) | $700 | 2010 | $820 | |
| Unnamed[10] | Bingham, McCutcheon | 02 (2008) | $400 | 2010 | $469 | |
| Unnamed[10] | Bingham, McCutcheon | 13 (1997) | $655 | 2010 | $768 | |
| John Houston Scott[11] | Scott Law Firm | 37 (1976) | $725 | 2013 | $772 | |
| Thomas P. Greerty[11] | Law Offices of Thomas P. Greerty | 34 (1979) | $725 | 2013 | $772 | |
| Amitai Schwartz[11] | Law Offices of Amitai Schwartz | 40 (1973) | $725 | 2013 | $772 | SL |
| Moira Duvernay[11] | Law Offices of Amitai Schwartz | 09 (2004) | $450 | 2013 | $479 | RS SL |
| Sanford J. Rosen[12] | Rosen Bien & Galvan | 46 (1962) | $700 | 2008 | $875 | |
| Sid Wolinsky[13] | DRA* | 51 (1961) | $860 | 2012 | $946 | |
| Shawna Parks[13] | DRA* | 13 (1999) | $665 | 2012 | $731 | RS SL |
| Mary-Lee Smith[13] | DRA* | 07 (2005) | $555 | 2012 | $610 | |
| Karla Gilbride[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Larry Paradis[13] | DRA* | 27 (1985) | $800 | 2012 | $880 | |
| Ron Elsberry[13] | DRA* | 25 (1987) | $725 | 2012 | $797 | |
| Katherine Weed[13] | DRA* | 10 (2002) | $600 | 2012 | $660 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
|------|------|------------------------|------|------|---------------|--------------|
| Stephanie Biedermann[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Christine Chuang[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Kara Janssen[13] | DRA* | 02 (2010) | $330 | 2012 | $363 | |
| Paralegal | DRA* | | $240 | 2012 | $275 | |
| Summer Associates[13] | DRA* | | $250 | 2012 | $264 | |
| Michelle Uzeta[13] | DRLC*** | 20 (1992) | $700 | 2012 | $770 | |
| Debra Patkin[13] | DRLC*** | 05 (2007) | $450 | 2012 | $495 | |
| Jennifer Lee[13] | DRLC*** | 09 (2003) | $550 | 2012 | $605 | |
| Matthew Strugar[13] | DRLC*** | 08 (2004) | $525 | 2012 | $577 | |
| Law Clerk[13] | DRLC*** | | $230 | 2012 | $253 | |
| Litigation Assist[13] | DRLC*** | | $230 | 2012 | $253 | |
| Shawna Parks[14] | DRLC | 10 (1999) | $525 | 2009 | $635 | RS SL |
| Sage Reeves[14] | DRLC | 08 (2001) | $475 | 2009 | $575 | |
| Matthew Strugar[14] | DRLC | 05 (2004) | $400 | 2009 | $484 | |
| Bethany Woodard[14] | MTO** | 04 (2005) | $395 | 2009 | $478 | |
| Kristina Wilson[14] | MTO** | 03 (2006) | $350 | 2009 | $423 | |
| Robert Dell Angelo[14] | MTO** | 17 (1992) | $550 | 2009 | $665 | SL |
| Law Clerks[14] | MTO** | | $220 | 2009 | $266 | |
| Barrett S. Litt[15] | Litt, Estuar & Kitson | 39 (1969) | $750 | 2008 | $937 | SL |
| Earnest Bell[15] | Law Offices of Earnest Bell | 20 (1988) | $600 | 2008 | $750 | |
| Sr. Paralegal[15] | Litt, Estuar & Kitson | | $235 | 2008 | $293 | |

Table 1 title: **Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks**

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Dale Galipo[16] | Law Ofc of Dale Galipo | 28 (1984) | $700 | 2012 | $757 | SL |
| Humberto Guizar[16] | | 26 (1986) | $500 | 2012 | $550 | |
| Matthew McNicholas[17] | McNicholas & McNicholas | 15 (1997) | $700 | 2012 | $770 | SL |
| Douglas D. Winter[17] | McNicholas & McNicholas | 22 (1990) | $600 | 2012 | $660 | |
| Catherine Schmidt[17] | McNicholas & McNicholas | 11 (2001) | $500 | 2012 | $550 | |
| Bill Lann Lee[18] | Lewis, Feinberg, Lee, Renaker, & Jackson | 38 (1974) | $825 | 2012 | $907 | SL |
| Matthew Righetti[19] | Righetti Glugoski | 27 (1985) | $750 | 2012 | $825 | SL |
| John Glugoski[19] | Righetti Glugoski | 12 (1997) | $650 | 2012 | $715 | |
| Angela Padilla[20] | MoFo | 15 (1991) | $600 | 2006 | $799 | SL |
| Mahogany Jenkins[20] | MoFo | 02 (2004) | $285 | 2006 | $379 | |
| Robert Rubin[20] | LCCR | 28 (1978) | $625 | 2006 | $832 | |
| Paralegal[20] | MoFo | | $175 | 2006 | $233 | |
| Carol Sobel[21] | Law Office of Carol Sobel | 32 (1978) | $725 | 2010 | $823 | SL |
| Rebecca Thornton[21] | Law Office of Carol Sobel | 09 (2001) | $450 | 2010 | $511 | |
| Heather McGunigle[22] | DRLC | 04 (2009) | $375 | 2009 | $454 | |
| Todd Burns[23] | Law Office of Todd Burns | 18 (1996) | $650 | 2014 | $671 | |
| Scott A. Brooks[24] | Daniels, Fine, Israel, Schonbuch & Lebovits | 19 (1992) | $650 | 2011 | $738 | |
| Paul R. Fine[24] | Daniels, Fine, Israel, | 39 (1972) | $850 | 2011 | $965 | SL |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| | Schonbuch & Lebovits | | | | | |
| Craig Momita[24] | Daniels, Fine, Israel, Schonbuch & Lebovits | 18 (1993) | $400 | 2011 | $454 | |
| Stephen Glick[24] | Law Offices of Stephen Glick | 37 (1974) | $800 | 2011 | $908 | SL |
| Ian Herzog[24] | Law Office of Ian Herzog | 44 (1967) | $1,000 | 2011 | $1,104 | SL |
| Susan Abitanta[24] | Law Office of Ian Herzog | 28 (1983) | $600 | 2011 | $681 | SL |
| Rebecca Grey[25] | | 16 (1998) | $650 | 2014 | $671 | |
| Dale Galipo[26] | Law Ofc Dale Galipo | 23 (1989) | $675 | 2013 | $719 | SL |
| Michael Haddad[27] | Haddad & Sherwin | 23 91991) | $725 | 2014 | $748 | SL |
| Julia Sherwin[27] | Haddad & Sherwin | 19 (1995) | $695 | 2014 | $717 | SL |
| Richard Pearl[27] | | 44 (1970) | $750 | 2014 | $774 | SL |
| Genevieve Guertin[27] | Haddad & Sherwin | 05 (2009) | $400 | 2014 | $412 | |
| Gina Altomare[27] | Haddad & Sherwin | 04 (2010) | $350 | 2014 | $361 | |
| Thomas Kennedy Helm[27] | Haddad & Sherwin | 02 (2012) | $325 | 2014 | $335 | |
| Paralegals (not senior)[27] | Haddad & Sherwin | | $200 | 2014 | $206 | |
| Jim DeSimone[28] | Schonbrun, de Simone | 28 (1985) | $725 | 2013 | $772 | SL |
| Michael Seplow[28] | Schonbrun, de Simone | 23 (1990) | $660 | 2013 | $703 | SL |
| Douglas Ingraham[28] | Schonbrun, de Simone | 15 (1998) | $575 | 2013 | $612 | |
| Chritopher Cox[29] | Weill Gotschall | 23 (1991) | $850 | 2014 | $877 | |
| Bambo Obarro[29] | Weill Gotschall | 04 (2010) | $400 | 2014 | $412 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Ronald K. Tellis[30] | Baron & Budd | 18 (1996) | $775 | 2014 | $800 | |
| Timothy G. Blood[30] | Blood Hurst and O'Reardon | 24 (1990) | $695 | 2014 | $717 | |
| Gene J. Stonebarger[31] | Stonebarger Law, APC | 14 (2000) | $650 | 2014 | $671 | |
| Richard D. Lambert[31] | Stonebarger Law | 07 (2007) | $500 | 2014 | $516 | |
| Dale Galipo[32] | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $825 | SL |
| Dale Galipo[33] | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $825 | SL |
| Barrett S. Litt[34] | Kaye, McLane, Bednarski & Litt | 45 (1969 | $975 | 2014 | $1006 | SL |
| Ronald O. Kaye[34] | Kaye, McLane, Bednarski & Litt | 26 (1988) | $775 | 2014 | $800 | SL |
| David M. McLane[34] | Kaye, McLane, Bednarski & Litt | 28 (1988) | $775 | 2014 | $800 | SL |
| Kevin LaHue[34] | Kaye, McLane, Bednarski & Litt | 10 (2004) | $600 | 2014 | $619 | |
| Caitlin Weisberg[34] | Kaye, McLane, Bednarski & Litt | 06 (2008) | $500 | 2014 | $516 | |
| Julia White[34] | Kaye, McLane, Bednarski & Litt | Sr. Paralegal | $295 | 2014 | $304 | |
| Heath White[34] | Kaye, McLane, Bednarski & Litt | High Tech Paralegal | $235 | 2014 | $242 | |

8

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS
ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 2: Consumer/Wage & Hour Class Action Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Guy Wallace[51] | Schneider Wallace | 17 (1993) | $650 | 2010 | $760 | SL |
| Josh Konecky[51] | Schneider Wallace | 14 (1996) | $625 | 2010 | $731 | |
| Jonathan E. Gertler[52] | Chavez & Gertler | 31 (1983) | $725 | 2013 | $754 | SL |
| Dan L. Gildor[52] | Chavez & Gertler | 12 (2002) | $550 | 2013 | $572 | |
| Patrick N. Keegan[53] | Keegan & Baker LLP | 20 (1993) | $695 | 2013 | $722 | |
| Todd Schneider[54] | Schneider Wallace | 29 (1982) | $675 | 2011 | $759 | SL |
| Eric Gibbs[55] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789 | SL |
| Dylan Hughes[55] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637 | SL |
| Geoffrey Munroe[55] | Girard Gibbs | 07 (2003) | $445 | 2010 | $520 | RS SL |
| Eric Gibbs[56] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789 | SL |
| Dylan Hughes[56] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637 | SL |
| Jonathan Selbin[57] | Lieff Cabraser | 16 [1993] | $600 | 2009 | $730 | |

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Unnamed[11] | Arnold & Porter | 39 (1974) | $910 | 2013 | $946 | N/A |
| Unnamed[11] | Arnold & Porter | 09 (2004) | $625 | 2013 | $650 | N/A |
| Unnamed[11] | Quinn Emanuel | | $821 | 2013 | $853 | N/A |
| Unnamed[11] | Quinn Emanuel | | $448 | 2013 | $465 | N/A |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Unnamed[11] | Quinn Emanuel | 20 | $700 | 2013 | $728 | N/A |
| Diane Hutnyan[81] | Quinn Emanuel | 15 (1997) | $790 | 2012 | $854 | |
| Victoria Maroulis[81] | Quinn Emanuel | 13 (1999) | $815 | 2012 | $882 | SL |
| Todd Briggs[81] | Quinn Emanuel | 12 (2000) | $735 | 2012 | $795 | |
| Marc Becker[81] | Quinn Emanuel | 24 (1988) | $1035 | 2012 | $1,119 | N/A |
| Melissa Dalziel[81] | Quinn Emanuel | 12 (2000) | $730 | 2012 | $790 | |
| Thomas J. Nolan[82] | Skadden Arps | 40 (1971) | $1095 | 2011 | $1,231 | SL |
| Jason D. Russell[82] | Skadden Arps | 18 (1993) | $1030 | 2011 | $1,158 | SL |
| Hillary A. Hamilton[82] | Skadden Arps | 10 (2001) | $710 | 2011 | $798 | |
| Legal Assistant[82] | Skadden Arps | | $295 | 2011 | $331 | |
| Arturo Gonzalez[83] | MoFo | 28 (1985) | $950 | 2013 | $988 | SL |
| Suzanna Brickman[83] | MoFo | 07 (2006) | $650 | 2013 | $676 | |
| Unnamed[84] | Lieff Cabraser | 01 (2011) | $325 | 2012 | $351 | N/A |
| Unnamed[84] | Lieff Cabraser | 04 (2008) | $395 | 2012 | $427 | N/A |
| Unnamed[84] | Lieff Cabraser | 06 (2006) | $435 | 2012 | $470 | N/A |
| Unnamed[84] | Lieff Cabraser | 11 (2001) | $525 | 2012 | $567 | N/A |
| Unnamed[84] | Lieff Cabraser | 14 (1998) | $585 | 2012 | $632 | N/A |
| Unnamed[84] | Lieff Cabraser | 17 (1995) | $650 | 2012 | $703 | N/A |
| Unnamed[84] | Lieff Cabraser | 21 (1991) | $700 | 2012 | $757 | N/A |
| Unnamed[84] | Lieff Cabraser | 24 (1988) | $775 | 2012 | $838 | N/A |
| Unnamed[84] | Lieff Cabraser | 29 (1983) | $775 | 2012 | $838 | N/A |
| Unnamed[84] | Lieff Cabraser | 34 (1978) | $800 | 2012 | $865 | N/A |
| Unnamed[84] | Lieff Cabraser | 38 (1974) | $900 | 2012 | $973 | N/A |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[84] | Lieff Cabraser | 42 (1970) | $900 | 2012 | $973 | N/A |
| Unnamed[85] | Paul Hastings | 01 (2010) | $360 | 2011 | $404 | N/A |
| Unnamed[85] | Paul Hastings | 03 (2008) | $450 | 2011 | $506 | N/A |
| Unnamed[85] | Paul Hastings | 04 (2007) | $500 | 2011 | $562 | N/A |
| Unnamed[85] | Paul Hastings | 05 (2006) | $530 | 2011 | $596 | N/A |
| Unnamed[85] | Paul Hastings | 06 (2005) | $565 | 2011 | $635 | N/A |
| Unnamed[85] | Paul Hastings | 07 (2004) | $590 | 2011 | $663 | N/A |
| Unnamed[85] | Paul Hastings | 08 (2003) | $620 | 2011 | $697 | N/A |
| Unnamed[85] | Paul Hastings | 09 (2002) | $630 | 2011 | $708 | N/A |
| Unnamed[85] | Paul Hastings | 12 (1999) | $670 | 2011 | $753 | N/A |
| Unnamed[85] | Paul Hastings | 15 (1996) | $725 | 2011 | $815 | N/A |
| Unnamed[85] | Paul Hastings | 17 (1994) | $725 | 2011 | $815 | N/A |
| Unnamed[85] | Paul Hastings | 23 (1998) | $850 | 2011 | $956 | N/A |
| Unnamed[85] | Paul Hastings | 33 (1978) | $940 | 2011 | $1,057 | N/A |
| Wayne Barsky[86] | Gibson Dunn | 26 (1983) | $905 | 2009 | $1,101 | |
| Marcellus McRae[86] | Gibson Dunn | 21 (1988) | $785 | 2009 | $955 | |
| Daniel Kolkey[86] | Gibson Dunn | 32 (1977) | $840 | 2009 | $1,022 | |
| Danielle Katzir[86] | Gibson Dunn | 05 (2004) | $525 | 2009 | $639 | |
| Multiple associates[86] | Gibson Dunn | 04 (2005) | $495 | 2009 | $602 | |
| Melissa Barshop[86] | Gibson Dunn | 03 (2006) | $470 | 2009 | $572 | |
| Multiple associates[86] | Gibson Dunn | 02 (2007) | $400 | 2009 | $487 | |
| Multiple associates[86] | Gibson Dunn | 01 (2008) | $345 | 2009 | $420 | |
| Paralegal[86] | Gibson Dunn | | $300 | 2009 | $365 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
|------|------|------------------------|------|------|---------------|--------------|
| **Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports** | | | | | | |
| Paralegal[86] | Gibson Dunn | | $295 | 2009 | $359 | |
| Paralegal[86] | Gibson Dunn | | $315 | 2009 | $383 | |
| Danielle Gilmore[87] | Quinn Emanuel | 15 (1993) | $685 | 2008 | $866 | SL |
| Sara Brenner[87] | Quinn Emanuel | 02 (2006) | $340 | 2008 | $430 | |
| Paralegal[87] | Quinn Emanuel | | $235 | 2008 | $297 | |
| Mark D. Kemple[88] | Greenberg Traurig | 20 (1989) | $675 | 2009 | $821 | SL |
| Erik Swanholt[88] | Greenberg Traurig | 11 (1998) | $575 | 2009 | $700 | SL |
| Hirad Dadgostar[88] | Greenberg Traurig | 03 (2006) | $400 | 2008 | $506 | |
| Brian J. Hennigan[89] | Irell & Manella | 25 (1983) | $775 | 2008 | $980 | SL |
| Michal H. Strub[89] | Irell & Manella | 18 (1990) | $670 | 2008 | $847 | |
| Kimberly A. Svendsen[89] | Irell & Manella | 04 (2004) | $410 | 2008 | $518 | |
| Dena G. Kaplan[89] | Irell & Manella | 05 (2003) | $475 | 2008 | $601 | |
| Katherine J. Galston[89] | Irell & Manella | 05 (2003) | $490 | 2008 | $620 | |
| Paralegal[89] | Irell & Manella | | $220 | 2008 | $278 | |
| Gordon Kirscher[90] | O'Melveny &Myers | 38 (1971) | $860 | 2009 | $1,046 | |
| Alejandro Mayorkas[90] | O'Melveny &Myers | 23 (1986) | $770 | 2009 | $937 | |
| Thomas M. Riordan[90] | O'Melveny &Myers | 14 (1995) | $675 | 2009 | $821 | |
| Jorge DeNeve[90] | O'Melveny &Myers | 10 (1998) | $620 | 2009 | $754 | |
| Allan Johnson[90] | O'Melveny &Myers | 08 (2001) | $565 | 2009 | $687 | |
| Abby Schwartz[90] | O'Melveny &Myers | 03 (2006) | $450 | 2009 | $547 | |
| Paralegal[90] | O'Melveny &Myers | 17 (2004) | $310 | 2009 | $377 | |
| Paralegal[90] | O'Melveny &Myers | 05 (2004) | $225 | 2009 | $274 | |
| Paralegal[90] | O'Melveny &Myers | 12 (1997) | $245 | 2009 | $298 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Litigation Support Specialist[90] | O'Melveny &Myers | 04 (2005) | $260 | 2009 | $316 | |
| Unnamed[91] | Paul Hastings | 36 (1974) | $940 | 2010 | $1,099 | |
| Unnamed[91] | Paul Hastings | 16 (1994) | $725 | 2010 | $848 | |
| Unnamed[91] | Paul Hastings | 11 (1999) | $670 | 2010 | $783 | |
| Unnamed[91] | Paul Hastings | 10 (2000) | $660 | 2010 | $772 | |
| Sr. Paralegal[91] | Paul Hastings | | $330 | 2010 | $371 | |
| Unnamed[92] | White & Case | 04 (2004) | $600 | 2009 | $730 | |
| Unnamed[92] | White & Case | 06 (2003) | $600 | 2009 | $730 | |
| Unnamed[92] | White & Case | 08 (2001) | $655 | 2009 | $797 | |
| Unnamed[92] | White & Case | 24 (1985) | $750 | 2009 | $912 | |
| Unnamed[92] | Weil, Gotscahl | 01 (2008) | $355 | 2009 | $432 | |
| Unnamed[92] | Weil, Gotscahl | 03 (2006) | $465 | 2009 | $566 | |
| Unnamed[92] | Weil, Gotscahl | 04 (2005) | $500 | 2009 | $608 | |
| Unnamed[92] | Weil, Gotscahl | 06 (2003) | $580 | 2009 | $706 | |
| Unnamed[92] | Weil, Gotscahl | 23 (1986) | $799 | 2009 | $972 | |
| Unnamed[92] | Pachulski, Stang | 14 (1995) | $535 | 2009 | $651 | |
| Unnamed[92] | Pachulski, Stang | 20 (1989) | $645 | 2009 | $785 | |
| Unnamed[92] | Pachulski, Stang | 22 (1987) | $725 | 2009 | $882 | |
| Unnamed[92] | Pachulski, Stang | 24 (1985) | $675 | 2009 | $821 | |
| Unnamed[92] | Pachulski, Stang | 27 (1982) | $750 | 2009 | $912 | |
| Unnamed[92] | Pachulski, Stang | 32 (1977) | $650 | 2009 | $791 | |
| Unnamed[92] | O'Melveny & Myers | 03 (2006) | $395 | 2009 | $481 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS
ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[92] | O'Melveny & Myers | 34 (1975) | $860 | 2009 | $1,046 | |
| Unnamed[92] | Munger, Tolles | 03 (2006) | $400 | 2009 | $487 | |
| Unnamed[92] | Munger, Tolles | 04 (2005) | $450 | 2009 | $547 | |
| Unnamed[92] | Munger, Tolles | 04 (2005) | $435 | 2009 | $529 | |
| Unnamed[92] | Munger, Tolles | 04 (2004) | $395 | 2009 | $481 | |
| Unnamed[92] | Munger, Tolles | 12 (1997) | $525 | 2009 | $639 | |
| Unnamed[92] | Munger, Tolles | 21 (1988) | $600 | 2009 | $730 | |
| Unnamed[92] | Munger, Tolles | 22 (1987) | $725 | 2009 | $882 | |
| Unnamed[92] | Munger, Tolles | 25 (1984) | $550 | 2009 | $669 | |
| Unnamed[92] | Munger, Tolles | 39 (1970) | $625 | 2009 | $760 | |
| Unnamed[92] | Morrison & Foerster | 24 (1985) | $750 | 2009 | $912 | |
| Unnamed[92] | Morrison & Foerster | 09 (2000) | $535 | 2009 | $651 | |
| Unnamed[92] | Morrison & Foerster | 17 (1992) | $650 | 2009 | $791 | |
| Unnamed[92] | Klee, Tuchin | 12 (1997) | $650 | 2009 | $791 | |
| Unnamed[92] | Klee, Tuchin | 18 (1991) | $590 | 2009 | $718 | |
| Unnamed[92] | Klee, Tuchin | 9 (1990) | $850 | 2009 | $1,034 | |
| Unnamed[92] | Hennigan, Bennett | 09 (2000) | $505 | 2009 | $614 | |
| Unnamed[92] | Hennigan, Bennett | 30 (1979) | $760 | 2009 | $925 | |
| Unnamed[92] | Hennigan, Bennett | 31 (1978) | $680 | 2009 | $827 | |
| Unnamed[92] | Gibson Dunn | 03 (2006) | $470 | 2009 | $572 | |
| Unnamed[92] | Gibson Dunn | 06 (2003) | $570 | 2009 | $693 | |
| Unnamed[92] | Gibson Dunn | 12 (1997) | $635 | 2009 | $773 | |
| Unnamed[92] | Gibson Dunn | 15 (1994) | $525 | 2009 | $639 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[92] | Gibson Dunn | 18 (1991) | $610 | 2009 | $742 | |
| Unnamed[92] | Gibson Dunn | 25 (1974) | $790 | 2009 | $961 | |
| Unnamed[92] | Davis, Polk | 04 (2005) | $680 | 2009 | $827 | |
| Unnamed[92] | Davis, Polk | 19 (1990) | $955 | 2009 | $1,162 | |
| Unnamed[92] | Davis, Polk | 23 (1986) | $960 | 2009 | $1,168 | |
| Daniel Perry[93] | Milbank, Tweed | 14 (2000) | $1135 | 2014 | $1135 | SL RS |
| Delilah Vinzon[93] | Milbank, Tweed | 12 (2002) | $900 | 2014 | $900 | |
| Hannah Cannom[93] | Milbank, Tweed | 08 (2006) | $800 | 2014 | $800 | SL RS |
| Revi-Ruth Enriquez[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $760 | |
| Caitlin Hawks[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $760 | |
| Katherine Eklund[93] | Milbank, Tweed | 05 (2009) | $550 | 2014 | $550 | |
| Amy Lalley[94] | Sidley Austin | 14 (1998) | $700 | 2012 | $757 | |
| Amy Lalley[94] | Sidley Austin | 14 (1998) | $825 | 2014 | $700 | |
| Alex Doherty[94] | Sidley Austin | 04 (1998) | $520 | 2012 | $562 | |
| Alex Doherty[94] | Sidley Austin | 06 (2008) | $700 | 2014 | $700 | |
| Lauren McCray[94] | Sidley Austin | 01 (1998) | $340 | 2012 | $367 | |
| Lauren McCray[94] | Sidley Austin | 02 (1998) | $495 | 2014 | $495 | |

*DRA stands for Disability Rights Advocates
**MTO stands for Munger, Tolles & Olson
***DRLC stands for Disability Rights Legal Center
****HSKRR stands for Hadsell, Stormer, Keeny, Richardson & Renick

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

*****AFL stands for AARP Foundation Litigation

## CIVIL RIGHTS AND RELATED LODESTAR AWARD SOURCES

[1] – *Vasquez v. Rackauckas*, SACV 09-1090 VBF, 2011 WL 1791091 (C.D. Cal. May 10, 2011) *aff'd in part, rev'd in part and remanded,* 734 F.3d 1025 (9th Cir. 2013) (lodestar award in civil rights injunctive relief class action regarding modification of state gang injunctions) (remand did not affect fee award)

[2] – *Fitzgerald v. City of Los Angeles*, CV 03-01876DDP(RZX), 2009 WL 960825 (C.D. Cal. Apr. 7, 2009) (lodestar award in civil rights Skid Row litigation)

[3] – *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC ANX, 2012 WL 2449849 (C.D. Cal. May 30, 2012) (lodestar award in settlement of ADA case)

[4] – *Californians for Disability Rights v. California Dep't of Transp.,* C 06-05125 SBA MEJ, 2010 WL 8746910 (N.D. Cal. Dec. 13, 2010) *report and recommendation adopted sub nom. Californians for Disability Rights, Inc. v. California Dep't of Transp.,* C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (lodestar award in settlement of ADA case)

[5] – *Rauda v. City of Los Angeles,* CV08-3128-CAS PJW, 2010 WL 5375958 (C.D. Cal. Dec. 20, 2010) (lodestar award in civil rights police misconduct case)

[6] – *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles,* CV 07-3072 AHM FMMX, 2009 WL 9100391 (C.D. Cal. June 24, 2009) ) (lodestar cross-check in protest excessive force civil rights class action)

[7] – *Craft v. Cnty. of San Bernardino,* 624 F. Supp. 2d 1113, 1122-23 (C.D. Cal. 2008) (lodestar cross-check in jail civil rights class action)

[8] – *Pierce v. Cnty. of Orange,* 905 F. Supp. 2d 1017, 1035-39, 1049  (C.D. Cal. 2012) (lodestar award in jail ADA class action)

[9] – *L.H. v. Schwarzenegger,* 645 F. Supp. 2d 888, 893-96 (E.D. Cal. 2009) (lodestar award in settlement of prison injunctive relief class action)

[10] – *Armstrong v. Brown,* 805 F. Supp. 2d 918, 920-21 (N.D. Cal. 2011)) (lodestar award in prison class action for monitoring work)

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

[11] – *A.D. v. State of California Highway Patrol,* C 07-5483 SI, 2013 WL 6199577 (N.D. Cal. Nov. 27, 2013) (civil rights lodestar award for police killing) [Arnold & Porter and Quinn Emmanuel rates were described in opinion as support for awarded rates, and are contained in the commercial rates table with the attorney as )"Unnamed"]

[12] – *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir. 2010), *upholding award in Prison Legal News v. Schwarzenegger,* 561 F. Supp. 2d 1095, 1106 (N.D. Cal. 2008) (post –settlement lodestar award in prisoner First Amendment injunctive relief case)

[13] – *Communities Actively Living Independent and Free v. City of Los Angeles,* 2:090cv-00287 CBM-RZ-Doc # 255 (C.D. Cal. 6/10/13) (lodestar award in settlement of ADA injunctive relief class action) [ATTACHED AS EXHIBIT 13]

[14] – *Lauderdale v. City of Long Beach,* CV 08-979 ABC (JWJx) (C.D.Cal. 1/11/10) (lodestar award after settlement of ADA injunctive relief class action against jail) [ATTACHED AS EXHIBIT 14]

[15] – *Gamino v. County of Ventura,* CV 02-9785-CBM (Ex), Doc # 185 (C.D.Cal. 2/5/09) (lodestar cross-check in jail civil rights class action) [ATTACHED AS EXHIBIT 15]

[16] – *P.C. v. City of Los Angeles,* 2:090cv-06495-PLA Doc # 77  (C.D. Cal. 9/4/12) (lodestar award in civil rights suit against police for excessive force resulting in death) [ATTACHED AS EXHIBIT 16]

[17] – *Avila v. LAPD*, No. CV 11-01326 sjo (FMOX) (C.D.Cal. 8/2/12) (lodestar award for retaliatory termination for testifying for FLSA plaintiff) [ATTACHED AS EXHIBIT 17]

[18] – *Vallabhapurapu v. Burger King Corp*., Case No. C11-00667 WHA (JSC) (N.D.Cal. 10/26/2012) (lodestar award with multiplier of 1.29 in ADA accessibility class action; opinion refers to rates used to calculate the lodestar of up to $825; Lee Dec dated 8/27/2012 sets forth the rates used to calculate the lodestar, including a rate of $825 for him) [ATTACHED AS EXHIBIT 18]

[19] – *Rutti v. Lojack Corp., Inc.*, SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) (FLSA lodestar crosscheck)

[20] – Fee award in *Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, CV 04-9396 CBMJTLX, 2006 WL 4081215 (C.D. Cal. Dec. 12, 2006) rev'd, 607 F.3d 1178 (9th Cir. 2010) on reh'g en banc, 657 F.3d 936 (9th Cir. 2011) and aff'd, 657 F.3d 936 (9th Cir. 2011) (civil rights case successfully challenging day laborer ordinance on First Amendment grounds)

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

[21] – Fee award in *Long Beach Area Peace Network v. City of Long Beach,* No. CV 04-08510 JSO (SSx) (C.D.Calif.) (Doc # 64) (civil rights case successfully challenging parade ordinance on First Amendment grounds) (rates based on personal knowledge from fee declaration filed by Mr. Litt in the case) [ATTACHED AS EXHIBIT 21]

[22] – 2/22/10 Fee Order in *Riverside County Dept. of Mental Health v. A.S.*, No. CV 08-00511 ABC  (C.D.Calif.) (IDEA fee award) (2009 used because it is clear from the timing of the order that 2009 rates were used)

[23] – Fee order in *Dugan v. County of Los Angeles*, 2:11-cv-08145-CAS-SHx (C.D.Cal. 3/3/14) (4th Amendment, malicious prosecution § 1983 action; background as criminal defense lawyer; no evidence of prior experience litigating civil rights cases, but knowledge of 4th Amendment law and trial experience should be reflected in the rate) [**ATTACHED AS EXHIBIT 23**]

[24] – Fee order in *Heyen v. Safeway Inc.*, B243610, 2014 WL 2154676 (Cal. Ct. App. May 23, 2014) upheld (individual wage and hour case after denial of class certification, with damages award of approximately $26,000; full hourly rate awarded to determine lodestar, then reduced due to limited success because received only 25% of overtime sought; fee award was in 2012, based on 2011 rates [since fee application was filed in 2011]).

[25] – Lodestar fee award in *Echague v. Metro. Life Ins*. Co., No. 12-CV-00640-WHO, 2014 WL 4746115, at *2 (N.D. Cal. Sept. 24, 2014) – ERISA case.

[26] – Fee award in *Contreras v. City of Los Angeles*, 2:11-CV-1480-SVW-SH, 2013 WL 1296763 (C.D. Cal. Mar. 28, 2013) – individual police case

[27] – Fee order in *Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *8 (N.D. Cal. Dec. 8, 2014) – individual police case (1.1 multiplier awarded under Civil Code § 52.1).

[28] – Fee order in *Xue Lu v. United States*, No. CV 01-01758 CBM EX, 2014 WL 2468826, at *5 (C.D. Cal. May 23, 2014) – EAJA market rate award (available due to government's bad faith).

[29] – Fee order in *Xu v. Yamanaka*, No. 13-CV-3240 YGR, 2014 WL 3840105 (N.D. Cal. Aug. 1, 2014); award was for successful Anti-SLAPP motion; defendants voluntarily reduced rate sought by 10%

[30] – Fee order in *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG CWX, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) objections overruled, No. CV 11-7667 PSG CWX, 2014 WL 4090512 (C.D. Cal. June 20, 2014) – consumer class action in which award was court determined lodestar, not percentage of fund.

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

[31] – Fee order in *Morey v. Louis Vuitton N. Am., Inc., No. 11CV1517 WQH BLM,* 2014 WL 109194, at *10 (S.D. Cal. Jan. 9, 2014) – consumer class action in which award was court determined lodestar, not percentage of fund; 1.51 multiplier..

[32] – Fee order in *Sanchez v. County of San Bernardino*, 10-09384 MMM (OPx) [3/1/14] – individual police case [**ATTACHED AS EXHIBIT 32**]

[33] – Fee order in *Howard v. County of Riverside,* EDCV 12-00700 VAP (OPx) [8/27/14] – individual police case [**ATTACHED AS EXHIBIT 33**].

[34] – Fee order in *Rodriguez v. County of LA*, 10-6342-CBM (AJWx) [12/26/2014] – multi-plaintiff prisoners for guard brutality; award primarily under California state law for Civil Code 52.1 claim, with part of award on exclusively federal claims under PLRA; multiplier of two for state fee award [**ATTACHED AS EXHIBIT 34**].


OF THE 34 CIVIL RIGHTS AND RELATED CASES, 23 ARE FROM THE CENTRAL DISTRICT, 9 FROM THE NORTHERN DISTRICT, 1 FROM THE EASTERN DISTRICT AND 1 FROM THE SOUTHERN DISTRICT. AT LEAST THE CENTRAL AND NORTHERN DISTRICT RATES ARE COMPARABLE, AND MANY FIRMS PRACTICE IN BOTH. (FOR THIS PURPOSE, ERISA, ANTI-SLAPP AND PUBLIC INTEREST/CONSUMER LODESTAR AWARDS ARE INCLUDED]

**CLASS ACTION LODESTAR CROSS CHECK SOURCES**

[51] – *Wren v. RGIS Inventory Specialists,* C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) *supplemented,* C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011)

[52]– *Bolton v. U.S. Nursing Corp*., C 12-4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013)

[53]– *Johansson-Dohrmann v. Cbr Sys., Inc.,* 12-CV-1115-MMA BGS, 2013 WL 3864341 (S.D. Cal. July 24, 2013)

[54]– *Thieriot v. Celtic Ins. Co.,* C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011)

[55]– *Browne v. Am. Honda Motor Co., Inc.,* CV 09-06750 MMM DTBX, 2010 WL 9499073 (C.D. Cal. Oct. 5, 2010)

[56]– *Parkinson v. Hyundai Motor Am.,* 796 F. Supp. 2d 1160, 1164-66,  1170-73 (C.D. Cal. 2010)

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

[57]– *Pelletz v. Weyerhaeuser Co.,* 592 F. Supp. 2d 1322, 1326-27 (W.D. Wash. 2009)

[58]– *Gonzalez v. S. Wine & Spirits of Am. Inc*., No. 2:11-CV-05849-ODW, 2014 WL 1630674, at *2 (C.D. Cal. Apr. 24, 2014))

## COMMERCIAL LITIGATION SOURCES

[81]– *Apple, Inc. v. Samsung Electronics Co., Ltd*., C 11-1846 LHK PSG, 2012 WL 5451411 (N.D. Cal. Nov. 7, 2012)). The rates listed reflect what Quinn Emmanuel indicated were its standard rates for the attorneys being billed; the court award was lower as follows: Marc Becker - $800; Diane Hutnyan - $700; Victoria Maroulis - $700; Todd Briggs - $700; Melissa Dalziel - $681. Because Mr. Becker is based in London he was marked N/A for whether he was designated as a SuperLawyer.

[82]– Skadden Arps bill Bill to MGA Entertainment Inc. in *Mattel v. MGA Entertainment*, Case No. 04 CV 09049-DOC (C.D.Cal.), filed 7/11/1, Doc 10684-50; rates accepted without objection and ordered in Doc. 10703 (8/4/11) [ATTACHED AS EXHIBIT 82]

[83]– Declaration of Arturo Gonzalez in *Bullis Charter School v. Los Altos School District et al*. , Case No. 109 CV144569 (Santa Clara Sup. Ct., filed 10/19/13).  Although *Bullis* is arguably a public interest case, we are presenting this as a reflection of Mr. Gonzalez's and Ms. Brickman's normal rates, which is what Mr. Gonzalez explains in his declaration. [ATTACHED AS EXHIBIT 83]

[84]– The Lieff Cabraser rates were provided in a 3/21/2012 email from firm partner as their standard rates for 2012; Lieff Cabraser is a contingent fee firm specializing in class actions.

[85]– Email from ACLU to Barry Litt of 7/26/11 with Paul Hastings rate information provided to ACLU by former Paul Hastings associate.

[86]– 4/9/09 Gibson Dunn partner Wayne Barsky Declaration in *Rogel v. Development Agency of City of Lynwood*, Case No. BS106592 (reflecting Gibson Dunn standard rates) [ATTACHED AS EXHIBIT 86]

[87]– 11/27/08 Dec. of Quinn Emmanuel partner Danielle Gilmore in *Monrovia Nursing Co. v. Rosedale*, Case No. BC 351140  (LA Sup. Ct.) (reflecting Gibson Dunn standard rates) [ATTACHED AS EXHIBIT 87]

[88]– 10/16/09 Fee Order for Greenberg Taurig attorneys in *Santa Fe Pointe, L.P. v. Greystone Servicing Corp.*, C-07-5454 MMC, 2009 WL 3353449 (N.D. Cal. 10/16/09) (reflecting rates billed to client)

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

[89] – 11/21/08 Dec. of O'Irell & Manella partner Brian Hennigan in *Monrovia Nursery Co.  v. Rosedale*, No. BC351140 (Los Angeles Superior Court) (reflecting customary rates, which were billed to client in the case) (rates rounded down to the closest $5)[ATTACHED AS EXHIBIT 89]

[90] – 1/09/09 Bankruptcy Fee Application in *In re Three A's Holdings, L.L.C.*, No CV-04-07131- SVW (D. Del.) [bankruptcy fee application; only adversarial (litigation) rates relied on]

[91] – 11/17/10 Declaration of James Gillian in support of fee application in *La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*, CA 9 Case #09-55215 (Dkt. # 43-7) [ATTACHED AS EXHIBIT 91]

[92] – Selected rates compiled from 2009 Westlaw Court Express

[93] – Milbank Tweed rates being sought for DRLC co-counsel in *LAUSD v. Michael Garcia*, Case No. 10-55879 (9th Cir.); listed in email from DRLC counsel Anna Rivera on 2/24/14 [not yet in other tables as of 2/24]

[94] – Sidley Austin rates listed in Declaration of Amy Lalley for fee motion in Jones v. Upland Housing Authority, NO.: EDCV 12-2074 VAP (OPx) (Dkt. # 46 2/24/14) [**ATTACHED AS EXHIBIT 94**]

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

## II.      RATES FROM SECTION I ORGANIZED BY YEARS OF PRACTICE

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Sid Wolinsky[13] | DRA* | 51 (1961) | $860 | 2012 | $946 | |
| Sid Wolinsky[4] | DRA* | 49 (1961) | $835 | 2010 | $979 | |
| Unnamed[10] | Rosen Bien & Galvan | 48 (1962) | $800 | 2010 | $938 | |
| Sanford J. Rosen[12] | Rosen Bien & Galvan | 46 (1962) | $700 | 2008 | $875 | |
| Barrett S. Litt[34] | Kaye, McLane, Bednarski & Litt | 45 (1969 | $975 | 2014 | $1006 | SL |
| Richard Pearl[27] | | 44 (1970) | $750 | 2014 | $774 | SL |
| Ian Herzog[24] | Law Office of Ian Herzog | 44 (1967) | $1,000 | 2011 | $1,104 | SL |
| Barrett S. Litt[8] | Litt, Estuar & Kitson | 43 (1969) | $850 | 2012 | $935 | SL |
| Amitai Schwartz[11] | Law Offices of Amitai Schwartz | 40 (1973) | $725 | 2013 | $772 | SL |
| Barrett S. Litt[6] | Litt, Estuar & Kitson | 40 (1969) | $800 | 2009 | $973 | SL |
| Paul R. Fine[24] | Daniels, Fine, Israel, Schonbuch &  Lebovits | 39 (1972) | $850 | 2011 | $965 | SL |
| Barrett S. Litt[15] | Litt, Estuar & Kitson | 39 (1969) | $750 | 2008 | $937 | SL |
| Dan Stormer[8] | HSKRR**** | 38 (1974) | $825 | 2012 | $907 | SL |
| Bill Lann Lee[18] | Lewis, Feinberg, Lee, Renaker, & Jackson | 38 (1974) | $825 | 2012 | $907 | SL |
| Barrett S. Litt[7] | Litt, Estuar & Kitson | 38 (1969) | $725 | 2007 | $935 | SL |
| John Houston Scott[11] | Scott Law Firm | 37 (1976) | $725 | 2013 | $772 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Stephen Glick[24] | Law Offices of Stephen Glick | 37 (1974) | $800 | 2011 | $908 | SL |
| Mark Rosenbaum[2] | ACLU | 35 (1974) | $740 | 2009 | $896 | SL |
| Thomas P. Greerty[11] | Law Offices of Thomas P. Greerty | 34 (1979) | $725 | 2013 | $772 | |
| Jose R. Allen[4] | Skadden Arps | 34 (1976) | $930 | 2010 | $1,057 | SL |
| Paul L. Hoffman[6] | Schonbrun, de Simone | 33 (1976) | $750 | 2009 | $912 | SL |
| Carol Sobel[21] | Law Office of Carol Sobel | 32 (1978) | $725 | 2010 | $823 | SL |
| Unnamed[10] | Prison Law Office | 32 (1978) | $700 | 2010 | $820 | |
| Unnamed[10] | Bingham, McCutcheon | 32 (1978) | $700 | 2010 | $820 | |
| Carol Sobel[2] | Law Ofc Carol Sobel | 31 (1978) | $710 | 2009 | $859 | SL |
| Carol A. Sobel[6] | Law Offices of Carol Sobel | 31 (1978) | $710 | 2009 | $864 | SL |
| Dale Galipo[32] | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $825 | SL |
| Dale Galipo[33] | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $825 | SL |
| Michael Bien[9] | Rosen Bien Galvan & Grunfeld | 28 (2008) | $640 | 2008 | $800 | SL |
| David M. McLane[34] | Kaye, McLane, Bednarski & Litt | 28 (1988) | $775 | 2014 | $800 | SL |
| Jim DeSimone[28] | Schonbrun, de Simone | 28 (1985) | $725 | 2013 | $772 | SL |
| Dale Galipo[16] | Law Ofc of Dale Galipo | 28 (1984) | $700 | 2012 | $757 | SL |
| Susan Abitanta[24] | Law Office of Ian Herzog | 28 (1983) | $600 | 2011 | $681 | SL |
| Robert Rubin[20] | LCCR | 28 (1978) | $625 | 2006 | $832 | |
| Larry Paradis[13] | DRA* | 27 (1985) | $800 | 2012 | $880 | |
| Matthew Righetti[19] | Righetti Glugoski | 27 (1985) | $750 | 2012 | $825 | SL |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| James de Simone[3] | Schoenbrun, de Simon | 27 (1985) | $695 | 2012 | $764 | SL |
| Ronald O. Kaye[34] | Kaye, McLane, Bednarski & Litt | 26 (1988) | $775 | 2014 | $800 | SL |
| Humberto Guizar[16] | | 26 (1986) | $500 | 2012 | $550 | |
| Laurence Paradis[4] | DRA* | 26 (1985) | $730 | 2010 | $829 | SL |
| Daniel B. Kohrman[4] | AFL***** | 26 (1984) | $740 | 2010 | $841 | |
| Ron Elsberry[13] | DRA* | 25 (1987) | $725 | 2012 | $797 | |
| Ben Schonbrun[5] | Schonbrun, de Simone | 25 (1985) | $650 | 2010 | $738 | SL |
| Timothy G. Blood[30] | Blood Hurst and O'Reardon | 24 (1990) | $695 | 2014 | $717 | |
| Michael Haddad[27] | Haddad & Sherwin | 23 91991) | $725 | 2014 | $748 | SL |
| Chritopher Cox[29] | Weill Gotschall | 23 (1991) | $850 | 2014 | $877 | |
| Michael Seplow[28] | Schonbrun, de Simone | 23 (1990) | $660 | 2013 | $703 | SL |
| Dale Galipo[26] | Law Ofc Dale Galipo | 23 (1989) | $675 | 2013 | $719 | SL |
| Michael Seplow[3] | Schoenbrun, de Simon | 22 (1990) | $630 | 2012 | $693 | SL |
| Douglas D. Winter[17] | McNicholas & McNicholas | 22 (1990) | $600 | 2012 | $660 | |
| Michelle Uzeta[13] | DRLC*** | 20 (1992) | $700 | 2012 | $770 | |
| Michael Seplow[5] | Schonbrun, de Simone | 20 (1990) | $590 | 2010 | $670 | SL |
| Earnest Bell[15] | Law Offices of Earnest Bell | 20 (1988) | $600 | 2008 | $750 | |
| Julia Sherwin[27] | Haddad & Sherwin | 19 (1995) | $695 | 2014 | $717 | SL |
| Scott A. Brooks[24] | Daniels, Fine, Israel, Schonbuch &  Lebovits | 19 (1992) | $650 | 2011 | $738 | |
| Julie Nepveu[4] | AFL***** | 19 (1991) | $660 | 2010 | $750 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Ronald K. Tellis[30] | Baron & Budd | 18 (1996) | $775 | 2014 | $800 | |
| Todd Burns[23] | Law Office of Todd Burns | 18 (1996) | $650 | 2014 | $671 | |
| Bryan M. Miller[8] | Litt, Estuar & Kitson | 18 (1994) | $625 | 2012 | $687 | |
| Craig Momita[24] | Daniels, Fine, Israel, Schonbuch &  Lebovits | 18 (1993) | $400 | 2011 | $454 | |
| Melissa Kasnitz[4] | DRA* | 18 (1992) | $650 | 2010 | $738 | |
| Robert M. Kitson[8] | Litt, Estuar & Kitson | 17 (1995) | $625 | 2012 | $687 | SL |
| Hector O. Villagra[1] | ACLU | 17 (1994) | $600 | 2011 | $681 | |
| John Raphling[5] | Schonbrun, de Simone | 17 (1993) | $525 | 2010 | $596 | |
| Robert Dell Angelo[14] | MTO** | 17 (1992) | $550 | 2009 | $665 | SL |
| Rebecca Grey[25] | | 16 (1998) | $650 | 2014 | $671 | |
| Douglas Ingraham[28] | Schonbrun, de Simone | 15 (1998) | $575 | 2013 | $612 | |
| Matthew McNicholas[17] | McNicholas & McNicholas | 15 (1997) | $700 | 2012 | $770 | SL |
| Peter Eliasberg[2] | ACLU | 15 (1994) | $525 | 2009 | $635 | SL |
| Angela Padilla[20] | MoFo | 15 (1991) | $600 | 2006 | $799 | SL |
| Gene J. Stonebarger[31] | Stonebarger Law, APC | 14 (2000) | $650 | 2014 | $671 | |
| Paul Estuar[7] | Litt, Estuar & Kitson | 14 (1993) | $485 | 2007 | $625 | SL |
| Shawna Parks[13] | DRA* | 13 (1999) | $665 | 2012 | $731 | RS SL |
| Unnamed[10] | Bingham, McCutcheon | 13 (1997) | $655 | 2010 | $768 | |
| Unnamed[10] | Rosen Bien & Galvan | 13 (1997) | $560 | 2010 | $656 | |
| John Glugoski[19] | Righetti Glugoski | 12 (1997) | $650 | 2012 | $715 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Catherine Schmidt[17] | McNicholas & McNicholas | 11 (2001) | $500 | 2012 | $550 | |
| Belinda Escobosa Helzer[1] | ACLU | 11 (2000) | $525 | 2011 | $596 | |
| Kevin LaHue[34] | Kaye, McLane, Bednarski & Litt | 10 (2004) | $600 | 2014 | $619 | |
| Katherine Weed[13] | DRA* | 10 (2002) | $600 | 2012 | $660 | |
| Joseph J. Ybarra[1] | MTO** | 10 (2001) | $550 | 2011 | $624 | |
| Jennifer Bezoza[4] | DRA* | 10 (2000) | $570 | 2010 | $648 | |
| Shawna Parks[14] | DRLC | 10 (1999) | $525 | 2009 | $635 | RS SL |
| Moira Duvernay[11] | Law Offices of Amitai Schwartz | 09 (2004) | $450 | 2013 | $479 | RS SL |
| Jennifer Lee[13] | DRLC*** | 09 (2003) | $550 | 2012 | $605 | |
| Peter Bibring[1] | ACLU | 09 (2002) | $490 | 2011 | $556 | RS SL |
| Roger Heller[4] | DRA* | 09 (2001) | $560 | 2010 | $636 | SL |
| Rebecca Thornton[21] | Law Office of Carol Sobel | 09 (2001) | $450 | 2010 | $511 | |
| Matthew Strugar[13] | DRLC*** | 08 (2004) | $525 | 2012 | $577 | |
| Jacob A. Kreilkamp[1] | MTO** | 08 (2003) | $505 | 2011 | $573 | |
| Sage Reeves[14] | DRLC | 08 (2001) | $475 | 2009 | $575 | |
| Rebecca Thornton[6] | Law Offices of Carol Sobel | 08 (2001) | $425 | 2009 | $517 | |
| Richard D. Lambert[31] | Stonebarger Law | 07 (2007) | $500 | 2014 | $516 | |
| Mary-Lee Smith[13] | DRA* | 07 (2005) | $555 | 2012 | $610 | |
| Kevin Knestrick[4] | DRA* | 07 (2003) | $535 | 2010 | $608 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
|------|------|------------------------|------|------|---------------|--------------|
| Peter Bibring[2] | ACLU | 07 (2002) | $375 | 2009 | $454 | RS SL |
| Caitlin Weisberg[34] | Kaye, McLane, Bednarski & Litt | 06 (2008) | $500 | 2014 | $516 | |
| Anna Canning[3] | Schoenbrun, de Simon | 06 (2006) | $450 | 2012 | $495 | |
| Kasey Corbit[4] | DRA* | 06 (2004) | $500 | 2010 | $568 | |
| Genevieve Guertin[27] | Haddad & Sherwin | 05 (2009) | $400 | 2014 | $412 | |
| Debra Patkin[13] | DRLC*** | 05 (2007) | $450 | 2012 | $495 | |
| Karla Gilbride[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Stephanie Biedermann[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Christine Chuang[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Laura D. Smolowe[1] | MTO** | 05 (2006) | $460 | 2011 | $522 | |
| Mary–Lee Kimber[4] | DRA* | 05 (2005) | $475 | 2010 | $540 | |
| Sheryl Wu Leung[4] | Skadden Arps | 05 (2005) | $395 | 2010 | $449 | |
| Matthew Strugar[14] | DRLC | 05 (2004) | $400 | 2009 | $484 | |
| Bambo Obarro[29] | Weill Gotschall | 04 (2010) | $400 | 2014 | $412 | |
| Gina Altomare[27] | Haddad & Sherwin | 04 (2010) | $350 | 2014 | $361 | |
| Heather McGunigle[22] | DRLC | 04 (2009) | $375 | 2009 | $454 | |
| Bethany Woodard[14] | MTO** | 04 (2005) | $395 | 2009 | $478 | |
| Marina A. Torres[1] | MTO** | 03 (2008) | $385 | 2011 | $437 | |
| Sarala V. Nagala[1] | MTO** | 03 (2008) | $385 | 2011 | $437 | |

Table caption above table: **Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks**

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Stephanie Biedermann[4] | DRA* | 03 (2007) | $350 | 2010 | $398 | |
| Kristina Wilson[14] | MTO** | 03 (2006) | $350 | 2009 | $423 | |
| Thomas Kennedy Helm[27] | Haddad & Sherwin | 02 (2012) | $325 | 2014 | $335 | |
| Kara Janssen[13] | DRA* | 02 (2010) | $330 | 2012 | $363 | |
| Nathaniel Fisher[4] | Skadden Arps | 02 (2008) | $530 | 2010 | $602 | |
| Unnamed[10] | Bingham, McCutcheon | 02 (2008) | $400 | 2010 | $469 | |
| Becca von Behren[4] | DRA* | 02 (2008) | $265 | 2010 | $301 | |
| Mahogany Jenkins[20] | MoFo | 02 (2004) | $285 | 2006 | $379 | |
| Unnamed[10] | Prison Law Office | 01 (2009) | $275 | 2010 | $322 | |
| Stacey Brown[7] | Litt, Estuar & Kitson | 01 (2006) | $275 | 2007 | $354 | SL |
| Technology manager[4] | Skadden Arps | | $320 | 2010 | $364 | |
| Julia White[34] | Kaye, McLane, Bednarski & Litt | Sr. Paralegal | $295 | 2014 | $304 | |
| Legal assistant[4] | Skadden Arps | | $285 | 2010 | $324 | |
| Senior paralegals[4] | DRA* | | $265 | 2010 | $301 | |
| ALS[1] | MTO** | | $250 | 2011 | $284 | |
| Sr. paralegal[8] | Litt, Estuar & Kitson | | $250 | 2012 | $275 | |
| Summer Associates[13] | DRA* | | $250 | 2012 | $264 | |
| Summer associates[4] | DRA* | | $245 | 2010 | $278 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Sr. paralegal[10] | Rosen Bien & Galvan | | $240 | 2010 | $281 | |
| Paralegal | DRA* | | $240 | 2012 | $275 | |
| Heath White[34] | Kaye, McLane, Bednarski & Litt | High Tech Paralegal | $235 | 2014 | $242 | |
| Sr. Paralegal[15] | Litt, Estuar & Kitson | | $235 | 2008 | $293 | |
| Law Clerk[13] | DRLC*** | | $230 | 2012 | $253 | |
| Litigation Assist[13] | DRLC*** | | $230 | 2012 | $253 | |
| Paralegals[4] | DRA* | | $225 | 2010 | $256 | |
| Senior Paralegals[7] | Litt, Estuar & Kitson | | $225 | 2007 | $290 | |
| Law student interns[8] | Litt, Estuar & Kitson | | $225 | 2012 | $247 | |
| Law Clerks[14] | MTO** | | $220 | 2009 | $266 | |
| Paralegal[1] | MTO** | | $210 | 2011 | $238 | |
| Paralegal[1] | ACLU | | $200 | 2011 | $227 | |
| Law student interns[3] | Schoenbrun, de Simon | | $200 | 2012 | $220 | |
| Paralegals (not senior)[27] | Haddad & Sherwin | | $200 | 2014 | $206 | |
| Law clerks[4] | DRA* | | $175 | 2010 | $199 | |
| Paralegal[20] | MoFo | | $175 | 2006 | $233 | |
| Case clerks[4] | DRA* | | $165 | 2010 | $187 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 2: Consumer/Wage & Hour Class Action Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Jonathan E. Gertler[52] | Chavez & Gertler | 31 (1983) | $725 | 2013 | $754 | SL |
| Todd Schneider[54] | Schneider Wallace | 29 (1982) | $675 | 2011 | $759 | SL |
| Patrick N. Keegan[53] | Keegan & Baker LLP | 20 (1993) | $695 | 2013 | $722 | |
| Guy Wallace[51] | Schneider Wallace | 17 (1993) | $650 | 2010 | $760 | SL |
| Jonathan Selbin[57] | Lieff Cabraser | 16 [1993] | $600 | 2009 | $730 | |
| Eric Gibbs[55] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789 | SL |
| Eric Gibbs[56] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789 | SL |
| Josh Konecky[51] | Schneider Wallace | 14 (1996) | $625 | 2010 | $731 | |
| Dan L. Gildor[52] | Chavez & Gertler | 12 (2002) | $550 | 2013 | $572 | |
| Dylan Hughes[55] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637 | SL |
| Dylan Hughes[56] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637 | SL |
| Geoffrey Munroe[55] | Girard Gibbs | 07 (2003) | $445 | 2010 | $520 | RS SL |

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[84] | Lieff Cabraser | 42 (1970) | $900 | 2012 | $973 | N/A |
| Thomas J. Nolan[82] | Skadden Arps | 40 (1971) | $1095 | 2011 | $1,231 | SL |
| Unnamed[11] | Arnold & Porter | 39 (1974) | $910 | 2013 | $946 | N/A |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
|---|---|---|---|---|---|---|
| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
| Unnamed[92] | Munger, Tolles | 39 (1970) | $625 | 2009 | $760 | |
| Unnamed[84] | Lieff Cabraser | 38 (1974) | $900 | 2012 | $973 | N/A |
| Gordon Kirscher[90] | O'Melveny &Myers | 38 (1971) | $860 | 2009 | $1,046 | |
| Unnamed[91] | Paul Hastings | 36 (1974) | $940 | 2010 | $1,099 | |
| Unnamed[84] | Lieff Cabraser | 34 (1978) | $800 | 2012 | $865 | N/A |
| Unnamed[92] | O'Melveny & Myers | 34 (1975) | $860 | 2009 | $1,046 | |
| Unnamed[85] | Paul Hastings | 33 (1978) | $940 | 2011 | $1,057 | N/A |
| Daniel Kolkey[86] | Gibson Dunn | 32 (1977) | $840 | 2009 | $1,022 | |
| Unnamed[92] | Pachulski, Stang | 32 (1977) | $650 | 2009 | $791 | |
| Unnamed[92] | Hennigan, Bennett | 31 (1978) | $680 | 2009 | $827 | |
| Unnamed[92] | Hennigan, Bennett | 30 (1979) | $760 | 2009 | $925 | |
| Unnamed[84] | Lieff Cabraser | 29 (1983) | $775 | 2012 | $838 | N/A |
| Arturo Gonzalez[83] | MoFo | 28 (1985) | $950 | 2013 | $988 | SL |
| Unnamed[92] | Pachulski, Stang | 27 (1982) | $750 | 2009 | $912 | |
| Wayne Barsky[86] | Gibson Dunn | 26 (1983) | $905 | 2009 | $1,101 | |
| Unnamed[92] | Munger, Tolles | 25 (1984) | $550 | 2009 | $669 | |
| Brian J. Hennigan[89] | Irell & Manella | 25 (1983) | $775 | 2008 | $980 | SL |
| Unnamed[92] | Gibson Dunn | 25 (1974) | $790 | 2009 | $961 | |
| Marc Becker[81] | Quinn Emanuel | 24 (1988) | $1035 | 2012 | $1,119 | N/A |
| Unnamed[84] | Lieff Cabraser | 24 (1988) | $775 | 2012 | $838 | N/A |
| Unnamed[92] | White & Case | 24 (1985) | $750 | 2009 | $912 | |
| Unnamed[92] | Morrison & Foerster | 24 (1985) | $750 | 2009 | $912 | |
| Unnamed[92] | Pachulski, Stang | 24 (1985) | $675 | 2009 | $821 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[85] | Paul Hastings | 23 (1998) | $850 | 2011 | $956 | N/A |
| Unnamed[92] | Davis, Polk | 23 (1986) | $960 | 2009 | $1,168 | |
| Unnamed[92] | Weil, Gotscahl | 23 (1986) | $799 | 2009 | $972 | |
| Alejandro Mayorkas[90] | O'Melveny &Myers | 23 (1986) | $770 | 2009 | $937 | |
| Unnamed[92] | Pachulski, Stang | 22 (1987) | $725 | 2009 | $882 | |
| Unnamed[92] | Munger, Tolles | 22 (1987) | $725 | 2009 | $882 | |
| Unnamed[84] | Lieff Cabraser | 21 (1991) | $700 | 2012 | $757 | N/A |
| Marcellus McRae[86] | Gibson Dunn | 21 (1988) | $785 | 2009 | $955 | |
| Unnamed[92] | Munger, Tolles | 21 (1988) | $600 | 2009 | $730 | |
| Mark D. Kemple[88] | Greenberg Traurig | 20 (1989) | $675 | 2009 | $821 | SL |
| Unnamed[92] | Pachulski, Stang | 20 (1989) | $645 | 2009 | $785 | |
| Unnamed[11] | Quinn Emanuel | 20 | $700 | 2013 | $728 | N/A |
| Unnamed[92] | Davis, Polk | 19 (1990) | $955 | 2009 | $1,162 | |
| Unnamed[92] | Klee, Tuchin | 19 (1990) | $850 | 2009 | $1,034 | |
| Jason D. Russell[82] | Skadden Arps | 18 (1993) | $1030 | 2011 | $1,158 | SL |
| Unnamed[92] | Gibson Dunn | 18 (1991) | $610 | 2009 | $742 | |
| Unnamed[92] | Klee, Tuchin | 18 (1991) | $590 | 2009 | $718 | |
| Michal H. Strub[89] | Irell & Manella | 18 (1990) | $670 | 2008 | $847 | |
| Paralegal[90] | O'Melveny &Myers | 17 (2004) | $310 | 2009 | $377 | |
| Unnamed[84] | Lieff Cabraser | 17 (1995) | $650 | 2012 | $703 | N/A |
| Unnamed[85] | Paul Hastings | 17 (1994) | $725 | 2011 | $815 | N/A |
| Unnamed[92] | Morrison & Foerster | 17 (1992) | $650 | 2009 | $791 | |
| Unnamed[91] | Paul Hastings | 16 (1994) | $725 | 2010 | $848 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Diane Hutnyan[81] | Quinn Emanuel | 15 (1997) | $790 | 2012 | $854 | |
| Unnamed[85] | Paul Hastings | 15 (1996) | $725 | 2011 | $815 | N/A |
| Unnamed[92] | Gibson Dunn | 15 (1994) | $525 | 2009 | $639 | |
| Danielle Gilmore[87] | Quinn Emanuel | 15 (1993) | $685 | 2008 | $866 | SL |
| Daniel Perry[93] | Milbank, Tweed | 14 (2000) | $1135 | 2014 | $1135 | SL RS |
| Amy Lalley[94] | Sidley Austin | 14 (1998) | $825 | 2014 | $700 | |
| Amy Lalley[94] | Sidley Austin | 14 (1998) | $700 | 2012 | $757 | |
| Unnamed[84] | Lieff Cabraser | 14 (1998) | $585 | 2012 | $632 | N/A |
| Thomas M. Riordan[90] | O'Melveny &Myers | 14 (1995) | $675 | 2009 | $821 | |
| Unnamed[92] | Pachulski, Stang | 14 (1995) | $535 | 2009 | $651 | |
| Victoria Maroulis[81] | Quinn Emanuel | 13 (1999) | $815 | 2012 | $882 | SL |
| Delilah Vinzon[93] | Milbank, Tweed | 12 (2002) | $900 | 2014 | $900 | |
| Todd Briggs[81] | Quinn Emanuel | 12 (2000) | $735 | 2012 | $795 | |
| Melissa Dalziel[81] | Quinn Emanuel | 12 (2000) | $730 | 2012 | $790 | |
| Unnamed[85] | Paul Hastings | 12 (1999) | $670 | 2011 | $753 | N/A |
| Unnamed[92] | Klee, Tuchin | 12 (1997) | $650 | 2009 | $791 | |
| Unnamed[92] | Gibson Dunn | 12 (1997) | $635 | 2009 | $773 | |
| Unnamed[92] | Munger, Tolles | 12 (1997) | $525 | 2009 | $639 | |
| Paralegal[90] | O'Melveny &Myers | 12 (1997) | $245 | 2009 | $298 | |
| Unnamed[84] | Lieff Cabraser | 11 (2001) | $525 | 2012 | $567 | N/A |
| Unnamed[91] | Paul Hastings | 11 (1999) | $670 | 2010 | $783 | |
| Erik Swanholt[88] | Greenberg Traurig | 11 (1998) | $575 | 2009 | $700 | SL |
| Hillary A. Hamilton[82] | Skadden Arps | 10 (2001) | $710 | 2011 | $798 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[91] | Paul Hastings | 10 (2000) | $660 | 2010 | $772 | |
| Jorge DeNeve[90] | O'Melveny &Myers | 10 (1998) | $620 | 2009 | $754 | |
| Unnamed[11] | Arnold & Porter | 09 (2004) | $625 | 2013 | $650 | N/A |
| Unnamed[85] | Paul Hastings | 09 (2002) | $630 | 2011 | $708 | N/A |
| Unnamed[92] | Morrison & Foerster | 09 (2000) | $535 | 2009 | $651 | |
| Unnamed[92] | Hennigan, Bennett | 09 (2000) | $505 | 2009 | $614 | |
| Hannah Cannom[93] | Milbank, Tweed | 08 (2006) | $800 | 2014 | $800 | SL RS |
| Unnamed[85] | Paul Hastings | 08 (2003) | $620 | 2011 | $697 | N/A |
| Unnamed[92] | White & Case | 08 (2001) | $655 | 2009 | $797 | |
| Allan Johnson[90] | O'Melveny &Myers | 08 (2001) | $565 | 2009 | $687 | |
| Suzanna Brickman[83] | MoFo | 07 (2006) | $650 | 2013 | $676 | |
| Unnamed[85] | Paul Hastings | 07 (2004) | $590 | 2011 | $663 | N/A |
| Revi-Ruth Enriquez[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $760 | |
| Caitlin Hawks[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $760 | |
| Alex Doherty[94] | Sidley Austin | 06 (2008) | $700 | 2014 | $700 | |
| Unnamed[84] | Lieff Cabraser | 06 (2006) | $435 | 2012 | $470 | N/A |
| Unnamed[85] | Paul Hastings | 06 (2005) | $565 | 2011 | $635 | N/A |
| Unnamed[92] | White & Case | 06 (2003) | $600 | 2009 | $730 | |
| Unnamed[92] | Weil, Gotscahl | 06 (2003) | $580 | 2009 | $706 | |
| Unnamed[92] | Gibson Dunn | 06 (2003) | $570 | 2009 | $693 | |
| Katherine Eklund[93] | Milbank, Tweed | 05 (2009) | $550 | 2014 | $550 | |
| Unnamed[85] | Paul Hastings | 05 (2006) | $530 | 2011 | $596 | N/A |
| Danielle Katzir[86] | Gibson Dunn | 05 (2004) | $525 | 2009 | $639 | |

34

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Paralegal[90] | O'Melveny &Myers | 05 (2004) | $225 | 2009 | $274 | |
| Katherine J. Galston[89] | Irell & Manella | 05 (2003) | $490 | 2008 | $620 | |
| Dena G. Kaplan[89] | Irell & Manella | 05 (2003) | $475 | 2008 | $601 | |
| Unnamed[84] | Lieff Cabraser | 04 (2008) | $395 | 2012 | $427 | N/A |
| Unnamed[85] | Paul Hastings | 04 (2007) | $500 | 2011 | $562 | N/A |
| Unnamed[92] | Davis, Polk | 04 (2005) | $680 | 2009 | $827 | |
| Unnamed[92] | Weil, Gotscahl | 04 (2005) | $500 | 2009 | $608 | |
| Multiple associates[86] | Gibson Dunn | 04 (2005) | $495 | 2009 | $602 | |
| Unnamed[92] | Munger, Tolles | 04 (2005) | $450 | 2009 | $547 | |
| Unnamed[92] | Munger, Tolles | 04 (2005) | $435 | 2009 | $529 | |
| Litigation Support Specialist[90] | O'Melveny &Myers | 04 (2005) | $260 | 2009 | $316 | |
| Unnamed[92] | White & Case | 04 (2004) | $600 | 2009 | $730 | |
| Kimberly A. Svendsen[89] | Irell & Manella | 04 (2004) | $410 | 2008 | $518 | |
| Unnamed[92] | Munger, Tolles | 04 (2004) | $395 | 2009 | $481 | |
| Alex Doherty[94] | Sidley Austin | 04 (1998) | $520 | 2012 | $562 | |
| Unnamed[85] | Paul Hastings | 03 (2008) | $450 | 2011 | $506 | N/A |
| Melissa Barshop[86] | Gibson Dunn | 03 (2006) | $470 | 2009 | $572 | |
| Unnamed[92] | Gibson Dunn | 03 (2006) | $470 | 2009 | $572 | |
| Unnamed[92] | Weil, Gotscahl | 03 (2006) | $465 | 2009 | $566 | |
| Abby Schwartz[90] | O'Melveny &Myers | 03 (2006) | $450 | 2009 | $547 | |
| Hirad Dadgostar[88] | Greenberg Traurig | 03 (2006) | $400 | 2008 | $506 | |
| Unnamed[92] | Munger, Tolles | 03 (2006) | $400 | 2009 | $487 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[92] | O'Melveny & Myers | 03 (2006) | $395 | 2009 | $481 | |
| Multiple associates[86] | Gibson Dunn | 02 (2007) | $400 | 2009 | $487 | |
| Sara Brenner[87] | Quinn Emanuel | 02 (2006) | $340 | 2008 | $430 | |
| Lauren McCray[94] | Sidley Austin | 02 (1998) | $495 | 2014 | $495 | |
| Unnamed[84] | Lieff Cabraser | 01 (2011) | $325 | 2012 | $351 | N/A |
| Unnamed[85] | Paul Hastings | 01 (2010) | $360 | 2011 | $404 | N/A |
| Unnamed[92] | Weil, Gotscahl | 01 (2008) | $355 | 2009 | $432 | |
| Multiple associates[86] | Gibson Dunn | 01 (2008) | $345 | 2009 | $420 | |
| Lauren McCray[94] | Sidley Austin | 01 (1998) | $340 | 2012 | $367 | |
| Unnamed[11] | Quinn Emanuel | | $821 | 2013 | $853 | N/A |
| Unnamed[11] | Quinn Emanuel | | $448 | 2013 | $465 | N/A |
| Sr. Paralegal[91] | Paul Hastings | | $330 | 2010 | $371 | |
| Paralegal[86] | Gibson Dunn | | $315 | 2009 | $383 | |
| Paralegal[86] | Gibson Dunn | | $300 | 2009 | $365 | |
| Legal Assistant[82] | Skadden Arps | | $295 | 2011 | $331 | |
| Paralegal[86] | Gibson Dunn | | $295 | 2009 | $359 | |
| Paralegal[87] | Quinn Emanuel | | $235 | 2008 | $297 | |
| Paralegal[89] | Irell & Manella | | $220 | 2008 | $278 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

## III.      RATES FROM SECTION I ORGANIZED FROM HIGH TO LOW

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Ian Herzog[24] | Law Office of Ian Herzog | 44 (1967) | $1,000 | 2011 | $1,104 | SL |
| Barrett S. Litt[34] | Kaye, McLane, Bednarski & Litt | 45 (1969 | $975 | 2014 | $1006 | SL |
| Jose R. Allen[4] | Skadden Arps | 34 (1976) | $930 | 2010 | $1,057 | SL |
| Sid Wolinsky[13] | DRA* | 51 (1961) | $860 | 2012 | $946 | |
| Barrett S. Litt[8] | Litt, Estuar & Kitson | 43 (1969) | $850 | 2012 | $935 | SL |
| Paul R. Fine[24] | Daniels, Fine, Israel, Schonbuch &  Lebovits | 39 (1972) | $850 | 2011 | $965 | SL |
| Chritopher Cox[29] | Weill Gotschall | 23 (1991) | $850 | 2014 | $877 | |
| Sid Wolinsky[4] | DRA* | 49 (1961) | $835 | 2010 | $979 | |
| Dan Stormer[8] | HSKRR**** | 38 (1974) | $825 | 2012 | $907 | SL |
| Bill Lann Lee[18] | Lewis, Feinberg, Lee, Renaker, & Jackson | 38 (1974) | $825 | 2012 | $907 | SL |
| Unnamed[10] | Rosen Bien & Galvan | 48 (1962) | $800 | 2010 | $938 | |
| Barrett S. Litt[6] | Litt, Estuar & Kitson | 40 (1969) | $800 | 2009 | $973 | SL |
| Stephen Glick[24] | Law Offices of Stephen Glick | 37 (1974) | $800 | 2011 | $908 | SL |
| Dale Galipo[32] | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $825 | SL |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Dale Galipo[33] | Law Ofc Dale Galipo | 30 (1984) | $800 | 2014 | $825 | SL |
| Larry Paradis[13] | DRA* | 27 (1985) | $800 | 2012 | $880 | |
| David M. McLane[34] | Kaye, McLane, Bednarski & Litt | 28 (1988) | $775 | 2014 | $800 | SL |
| Ronald O. Kaye[34] | Kaye, McLane, Bednarski & Litt | 26 (1988) | $775 | 2014 | $800 | SL |
| Ronald K. Tellis[30] | Baron & Budd | 18 (1996) | $775 | 2014 | $800 | |
| Richard Pearl[27] | | 44 (1970) | $750 | 2014 | $774 | SL |
| Barrett S. Litt[15] | Litt, Estuar & Kitson | 39 (1969) | $750 | 2008 | $937 | SL |
| Paul L. Hoffman[6] | Schonbrun, de Simone | 33 (1976) | $750 | 2009 | $912 | SL |
| Matthew Righetti[19] | Righetti Glugoski | 27 (1985) | $750 | 2012 | $825 | SL |
| Mark Rosenbaum[2] | ACLU | 35 (1974) | $740 | 2009 | $896 | SL |
| Daniel B. Kohrman[4] | AFL***** | 26 (1984) | $740 | 2010 | $841 | |
| Laurence Paradis[4] | DRA* | 26 (1985) | $730 | 2010 | $829 | SL |
| Amitai Schwartz[11] | Law Offices of Amitai Schwartz | 40 (1973) | $725 | 2013 | $772 | SL |
| Barrett S. Litt[7] | Litt, Estuar & Kitson | 38 (1969) | $725 | 2007 | $935 | SL |
| John Houston Scott[11] | Scott Law Firm | 37 (1976) | $725 | 2013 | $772 | |
| Thomas P. Greerty[11] | Law Offices of Thomas P. Greerty | 34 (1979) | $725 | 2013 | $772 | |
| Carol Sobel[21] | Law Office of Carol Sobel | 32 (1978) | $725 | 2010 | $823 | SL |
| Jim DeSimone[28] | Schonbrun, de Simone | 28 (1985) | $725 | 2013 | $772 | SL |

38

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Ron Elsberry[13] | DRA* | 25 (1987) | $725 | 2012 | $797 | |
| Michael Haddad[27] | Haddad & Sherwin | 23 91991) | $725 | 2014 | $748 | SL |
| Carol Sobel[2] | Law Ofc Carol Sobel | 31 (1978) | $710 | 2009 | $859 | SL |
| Carol A. Sobel[6] | Law Offices of Carol Sobel | 31 (1978) | $710 | 2009 | $864 | SL |
| Sanford J. Rosen[12] | Rosen Bien & Galvan | 46 (1962) | $700 | 2008 | $875 | |
| Unnamed[10] | Prison Law Office | 32 (1978) | $700 | 2010 | $820 | |
| Unnamed[10] | Bingham, McCutcheon | 32 (1978) | $700 | 2010 | $820 | |
| Dale Galipo[16] | Law Ofc of Dale Galipo | 28 (1984) | $700 | 2012 | $757 | SL |
| Michelle Uzeta[13] | DRLC*** | 20 (1992) | $700 | 2012 | $770 | |
| Matthew McNicholas[17] | McNicholas & McNicholas | 15 (1997) | $700 | 2012 | $770 | SL |
| James de Simone[3] | Schoenbrun, de Simon | 27 (1985) | $695 | 2012 | $764 | SL |
| Timothy G. Blood[30] | Blood Hurst and O'Reardon | 24 (1990) | $695 | 2014 | $717 | |
| Julia Sherwin[27] | Haddad & Sherwin | 19 (1995) | $695 | 2014 | $717 | SL |
| Dale Galipo[26] | Law Ofc Dale Galipo | 23 (1989) | $675 | 2013 | $719 | SL |
| Shawna Parks[13] | DRA* | 13 (1999) | $665 | 2012 | $731 | RS SL |
| Michael Seplow[28] | Schonbrun, de Simone | 23 (1990) | $660 | 2013 | $703 | SL |
| Julie Nepveu[4] | AFL***** | 19 (1991) | $660 | 2010 | $750 | |
| Unnamed[10] | Bingham, McCutcheon | 13 (1997) | $655 | 2010 | $768 | |
| Ben Schonbrun[5] | Schonbrun, de Simone | 25 (1985) | $650 | 2010 | $738 | SL |
| Scott A. Brooks[24] | Daniels, Fine, Israel, Schonbuch & Lebovits | 19 (1992) | $650 | 2011 | $738 | |
| Todd Burns[23] | Law Office of Todd Burns | 18 (1996) | $650 | 2014 | $671 | |
| Melissa Kasnitz[4] | DRA* | 18 (1992) | $650 | 2010 | $738 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Rebecca Grey[25] | | 16 (1998) | $650 | 2014 | $671 | |
| Gene J. Stonebarger[31] | Stonebarger Law, APC | 14 (2000) | $650 | 2014 | $671 | |
| John Glugoski[19] | Righetti Glugoski | 12 (1997) | $650 | 2012 | $715 | |
| Michael Bien[9] | Rosen Bien Galvan & Grunfeld | 28 (2008) | $640 | 2008 | $800 | SL |
| Michael Seplow[3] | Schoenbrun, de Simon | 22 (1990) | $630 | 2012 | $693 | SL |
| Robert Rubin[20] | LCCR | 28 (1978) | $625 | 2006 | $832 | |
| Bryan M. Miller[8] | Litt, Estuar & Kitson | 18 (1994) | $625 | 2012 | $687 | |
| Robert M. Kitson[8] | Litt, Estuar & Kitson | 17 (1995) | $625 | 2012 | $687 | SL |
| Susan Abitanta[24] | Law Office of Ian Herzog | 28 (1983) | $600 | 2011 | $681 | SL |
| Douglas D. Winter[17] | McNicholas & McNicholas | 22 (1990) | $600 | 2012 | $660 | |
| Earnest Bell[15] | Law Offices of Earnest Bell | 20 (1988) | $600 | 2008 | $750 | |
| Hector O. Villagra[1] | ACLU | 17 (1994) | $600 | 2011 | $681 | |
| Angela Padilla[20] | MoFo | 15 (1991) | $600 | 2006 | $799 | SL |
| Kevin LaHue[34] | Kaye, McLane, Bednarski & Litt | 10 (2004) | $600 | 2014 | $619 | |
| Katherine Weed[13] | DRA* | 10 (2002) | $600 | 2012 | $660 | |
| Michael Seplow[5] | Schonbrun, de Simone | 20 (1990) | $590 | 2010 | $670 | SL |
| Douglas Ingraham[28] | Schonbrun, de Simone | 15 (1998) | $575 | 2013 | $612 | |
| Jennifer Bezoza[4] | DRA* | 10 (2000) | $570 | 2010 | $648 | |
| Unnamed[10] | Rosen Bien & Galvan | 13 (1997) | $560 | 2010 | $656 | |
| Roger Heller[4] | DRA* | 09 (2001) | $560 | 2010 | $636 | SL |

# RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Mary-Lee Smith[13] | DRA* | 07 (2005) | $555 | 2012 | $610 | |
| Robert Dell Angelo[14] | MTO** | 17 (1992) | $550 | 2009 | $665 | SL |
| Joseph J. Ybarra[1] | MTO** | 10 (2001) | $550 | 2011 | $624 | |
| Jennifer Lee[13] | DRLC*** | 09 (2003) | $550 | 2012 | $605 | |
| Kevin Knestrick[4] | DRA* | 07 (2003) | $535 | 2010 | $608 | |
| Nathaniel Fisher[4] | Skadden Arps | 02 (2008) | $530 | 2010 | $602 | |
| John Raphling[5] | Schonbrun, de Simone | 17 (1993) | $525 | 2010 | $596 | |
| Peter Eliasberg[2] | ACLU | 15 (1994) | $525 | 2009 | $635 | SL |
| Belinda Escobosa Helzer[1] | ACLU | 11 (2000) | $525 | 2011 | $596 | |
| Shawna Parks[14] | DRLC | 10 (1999) | $525 | 2009 | $635 | RS SL |
| Matthew Strugar[13] | DRLC*** | 08 (2004) | $525 | 2012 | $577 | |
| Jacob A. Kreilkamp[1] | MTO** | 08 (2003) | $505 | 2011 | $573 | |
| Humberto Guizar[16] | | 26 (1986) | $500 | 2012 | $550 | |
| Catherine Schmidt[17] | McNicholas & McNicholas | 11 (2001) | $500 | 2012 | $550 | |
| Richard D. Lambert[31] | Stonebarger Law | 07 (2007) | $500 | 2014 | $516 | |
| Caitlin Weisberg[34] | Kaye, McLane, Bednarski & Litt | 06 (2008) | $500 | 2014 | $516 | |
| Kasey Corbit[4] | DRA* | 06 (2004) | $500 | 2010 | $568 | |
| Peter Bibring[1] | ACLU | 09 (2002) | $490 | 2011 | $556 | RS SL |
| Paul Estuar[7] | Litt, Estuar & Kitson | 14 (1993) | $485 | 2007 | $625 | SL |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS
ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Sage Reeves[14] | DRLC | 08 (2001) | $475 | 2009 | $575 | |
| Mary–Lee Kimber[4] | DRA* | 05 (2005) | $475 | 2010 | $540 | |
| Laura D. Smolowe[1] | MTO** | 05 (2006) | $460 | 2011 | $522 | |
| Moira Duvernay[11] | Law Offices of Amitai Schwartz | 09 (2004) | $450 | 2013 | $479 | RS SL |
| Rebecca Thornton[21] | Law Office of Carol Sobel | 09 (2001) | $450 | 2010 | $511 | |
| Anna Canning[3] | Schoenbrun, de Simon | 06 (2006) | $450 | 2012 | $495 | |
| Debra Patkin[13] | DRLC*** | 05 (2007) | $450 | 2012 | $495 | |
| Karla Gilbride[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Stephanie Biedermann[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Christine Chuang[13] | DRA* | 05 (2007) | $430 | 2012 | $473 | |
| Rebecca Thornton[6] | Law Offices of Carol Sobel | 08 (2001) | $425 | 2009 | $517 | |
| Craig Momita[24] | Daniels, Fine, Israel, Schonbuch & Lebovits | 18 (1993) | $400 | 2011 | $454 | |
| Genevieve Guertin[27] | Haddad & Sherwin | 05 (2009) | $400 | 2014 | $412 | |
| Matthew Strugar[14] | DRLC | 05 (2004) | $400 | 2009 | $484 | |
| Bambo Obarro[29] | Weill Gotschall | 04 (2010) | $400 | 2014 | $412 | |
| Unnamed[10] | Bingham, McCutcheon | 02 (2008) | $400 | 2010 | $469 | |
| Sheryl Wu Leung[4] | Skadden Arps | 05 (2005) | $395 | 2010 | $449 | |
| Bethany Woodard[14] | MTO** | 04 (2005) | $395 | 2009 | $478 | |
| Marina A. Torres[1] | MTO** | 03 (2008) | $385 | 2011 | $437 | |
| Sarala V. Nagala[1] | MTO** | 03 (2008) | $385 | 2011 | $437 | |

42

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Peter Bibring[2] | ACLU | 07 (2002) | $375 | 2009 | $454 | RS SL |
| Heather McGunigle[22] | DRLC | 04 (2009) | $375 | 2009 | $454 | |
| Gina Altomare[27] | Haddad & Sherwin | 04 (2010) | $350 | 2014 | $361 | |
| Stephanie Biedermann[4] | DRA* | 03 (2007) | $350 | 2010 | $398 | |
| Kristina Wilson[14] | MTO** | 03 (2006) | $350 | 2009 | $423 | |
| Kara Janssen[13] | DRA* | 02 (2010) | $330 | 2012 | $363 | |
| Thomas Kennedy Helm[27] | Haddad & Sherwin | 02 (2012) | $325 | 2014 | $335 | |
| Technology manager[4] | Skadden Arps | | $320 | 2010 | $364 | |
| Julia White[34] | Kaye, McLane, Bednarski & Litt | Sr. Paralegal | $295 | 2014 | $304 | |
| Mahogany Jenkins[20] | MoFo | 02 (2004) | $285 | 2006 | $379 | |
| Legal assistant[4] | Skadden Arps | | $285 | 2010 | $324 | |
| Unnamed[10] | Prison Law Office | 01 (2009) | $275 | 2010 | $322 | |
| Stacey Brown[7] | Litt, Estuar & Kitson | 01 (2006) | $275 | 2007 | $354 | SL |
| Becca von Behren[4] | DRA* | 02 (2008) | $265 | 2010 | $301 | |
| Senior paralegals[4] | DRA* | | $265 | 2010 | $301 | |
| ALS[1] | MTO** | | $250 | 2011 | $284 | |
| Sr. paralegal[8] | Litt, Estuar & Kitson | | $250 | 2012 | $275 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Summer Associates[13] | DRA* | | $250 | 2012 | $264 | |
| Summer associates[4] | DRA* | | $245 | 2010 | $278 | |
| Sr. paralegal[10] | Rosen Bien & Galvan | | $240 | 2010 | $281 | |
| Paralegal | DRA* | | $240 | 2012 | $275 | |
| Heath White[34] | Kaye, McLane, Bednarski & Litt | High Tech Paralegal | $235 | 2014 | $242 | |
| Sr. Paralegal[15] | Litt, Estuar & Kitson | | $235 | 2008 | $293 | |
| Law Clerk[13] | DRLC*** | | $230 | 2012 | $253 | |
| Litigation Assist[13] | DRLC*** | | $230 | 2012 | $253 | |
| Paralegals[4] | DRA* | | $225 | 2010 | $256 | |
| Senior Paralegals[7] | Litt, Estuar & Kitson | | $225 | 2007 | $290 | |
| Law student interns[8] | Litt, Estuar & Kitson | | $225 | 2012 | $247 | |
| Law Clerks[14] | MTO** | | $220 | 2009 | $266 | |
| Paralegal[1] | MTO** | | $210 | 2011 | $238 | |
| Paralegal[1] | ACLU | | $200 | 2011 | $227 | |
| Law student interns[3] | Schoenbrun, de Simon | | $200 | 2012 | $220 | |
| Paralegals (not senior)[27] | Haddad & Sherwin | | $200 | 2014 | $206 | |
| Law clerks[4] | DRA* | | $175 | 2010 | $199 | |
| Paralegal[20] | MoFo | | $175 | 2006 | $233 | |
| Case clerks[4] | DRA* | | $165 | 2010 | $187 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 2: Consumer/Wage & Hour Class Action Lodestar Crosschecks | | | | | | |
|---|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** | **Super-Lawyer** |
| Jonathan E. Gertler[52] | Chavez & Gertler | 31 (1983) | $725 | 2013 | $754 | SL |
| Patrick N. Keegan[53] | Keegan & Baker LLP | 20 (1993) | $695 | 2013 | $722 | |
| Todd Schneider[54] | Schneider Wallace | 29 (1982) | $675 | 2011 | $759 | SL |
| Eric Gibbs[55] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789 | SL |
| Eric Gibbs[56] | Girard Gibbs | 15 (1995) | $675 | 2010 | $789 | SL |
| Guy Wallace[51] | Schneider Wallace | 17 (1993) | $650 | 2010 | $760 | SL |
| Josh Konecky[51] | Schneider Wallace | 14 (1996) | $625 | 2010 | $731 | |
| Jonathan Selbin[57] | Lieff Cabraser | 16 [1993] | $600 | 2009 | $730 | |
| Dan L. Gildor[52] | Chavez & Gertler | 12 (2002) | $550 | 2013 | $572 | |
| Dylan Hughes[55] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637 | SL |
| Dylan Hughes[56] | Girard Gibbs | 10 (2000) | $545 | 2010 | $637 | SL |
| Geoffrey Munroe[55] | Girard Gibbs | 07 (2003) | $445 | 2010 | $520 | RS SL |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Daniel Perry[93] | Milbank, Tweed | 14 (2000) | $1135 | 2014 | $1135 | SL RS |
| Thomas J. Nolan[82] | Skadden Arps | 40 (1971) | $1095 | 2011 | $1,231 | SL |
| Marc Becker[81] | Quinn Emanuel | 24 (1988) | $1035 | 2012 | $1,119 | N/A |
| Jason D. Russell[82] | Skadden Arps | 18 (1993) | $1030 | 2011 | $1,158 | SL |
| Unnamed[92] | Davis, Polk | 23 (1986) | $960 | 2009 | $1,168 | |
| Unnamed[92] | Davis, Polk | 19 (1990) | $955 | 2009 | $1,162 | |
| Arturo Gonzalez[83] | MoFo | 28 (1985) | $950 | 2013 | $988 | SL |
| Unnamed[91] | Paul Hastings | 36 (1974) | $940 | 2010 | $1,099 | |
| Unnamed[85] | Paul Hastings | 33 (1978) | $940 | 2011 | $1,057 | N/A |
| Unnamed[11] | Arnold & Porter | 39 (1974) | $910 | 2013 | $946 | N/A |
| Wayne Barsky[86] | Gibson Dunn | 26 (1983) | $905 | 2009 | $1,101 | |
| Unnamed[84] | Lieff Cabraser | 42 (1970) | $900 | 2012 | $973 | N/A |
| Unnamed[84] | Lieff Cabraser | 38 (1974) | $900 | 2012 | $973 | N/A |
| Delilah Vinzon[93] | Milbank, Tweed | 12 (2002) | $900 | 2014 | $900 | |
| Gordon Kirscher[90] | O'Melveny &Myers | 38 (1971) | $860 | 2009 | $1,046 | |
| Unnamed[92] | O'Melveny & Myers | 34 (1975) | $860 | 2009 | $1,046 | |
| Unnamed[85] | Paul Hastings | 23 (1998) | $850 | 2011 | $956 | N/A |
| Unnamed[92] | Klee, Tuchin | 19 (1990) | $850 | 2009 | $1,034 | |
| Daniel Kolkey[86] | Gibson Dunn | 32 (1977) | $840 | 2009 | $1,022 | |
| Amy Lalley[94] | Sidley Austin | 14 (1998) | $825 | 2014 | $700 | |
| Unnamed[11] | Quinn Emanuel | | $821 | 2013 | $853 | N/A |
| Victoria Maroulis[81] | Quinn Emanuel | 13 (1999) | $815 | 2012 | $882 | SL |
| Unnamed[84] | Lieff Cabraser | 34 (1978) | $800 | 2012 | $865 | N/A |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Hannah Cannom[93] | Milbank, Tweed | 08 (2006) | $800 | 2014 | $800 | SL RS |
| Unnamed[92] | Weil, Gotscahl | 23 (1986) | $799 | 2009 | $972 | |
| Unnamed[92] | Gibson Dunn | 25 (1974) | $790 | 2009 | $961 | |
| Diane Hutnyan[81] | Quinn Emanuel | 15 (1997) | $790 | 2012 | $854 | |
| Marcellus McRae[86] | Gibson Dunn | 21 (1988) | $785 | 2009 | $955 | |
| Unnamed[84] | Lieff Cabraser | 29 (1983) | $775 | 2012 | $838 | N/A |
| Brian J. Hennigan[89] | Irell & Manella | 25 (1983) | $775 | 2008 | $980 | SL |
| Unnamed[84] | Lieff Cabraser | 24 (1988) | $775 | 2012 | $838 | N/A |
| Alejandro Mayorkas[90] | O'Melveny &Myers | 23 (1986) | $770 | 2009 | $937 | |
| Unnamed[92] | Hennigan, Bennett | 30 (1979) | $760 | 2009 | $925 | |
| Revi-Ruth Enriquez[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $760 | |
| Caitlin Hawks[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $760 | |
| Unnamed[92] | Pachulski, Stang | 27 (1982) | $750 | 2009 | $912 | |
| Unnamed[92] | White & Case | 24 (1985) | $750 | 2009 | $912 | |
| Unnamed[92] | Morrison & Foerster | 24 (1985) | $750 | 2009 | $912 | |
| Todd Briggs[81] | Quinn Emanuel | 12 (2000) | $735 | 2012 | $795 | |
| Melissa Dalziel[81] | Quinn Emanuel | 12 (2000) | $730 | 2012 | $790 | |
| Unnamed[92] | Pachulski, Stang | 22 (1987) | $725 | 2009 | $882 | |
| Unnamed[92] | Munger, Tolles | 22 (1987) | $725 | 2009 | $882 | |
| Unnamed[85] | Paul Hastings | 17 (1994) | $725 | 2011 | $815 | N/A |
| Unnamed[91] | Paul Hastings | 16 (1994) | $725 | 2010 | $848 | |
| Unnamed[85] | Paul Hastings | 15 (1996) | $725 | 2011 | $815 | N/A |
| Hillary A. Hamilton[82] | Skadden Arps | 10 (2001) | $710 | 2011 | $798 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
|------|------|------------------------|------|------|---------------|--------------|
| Unnamed[84] | Lieff Cabraser | 21 (1991) | $700 | 2012 | $757 | N/A |
| Unnamed[11] | Quinn Emanuel | 20 | $700 | 2013 | $728 | N/A |
| Amy Lalley[94] | Sidley Austin | 14 (1998) | $700 | 2012 | $757 | |
| Alex Doherty[94] | Sidley Austin | 06 (2008) | $700 | 2014 | $700 | |
| Danielle Gilmore[87] | Quinn Emanuel | 15 (1993) | $685 | 2008 | $866 | SL |
| Unnamed[92] | Hennigan, Bennett | 31 (1978) | $680 | 2009 | $827 | |
| Unnamed[92] | Davis, Polk | 04 (2005) | $680 | 2009 | $827 | |
| Unnamed[92] | Pachulski, Stang | 24 (1985) | $675 | 2009 | $821 | |
| Mark D. Kemple[88] | Greenberg Traurig | 20 (1989) | $675 | 2009 | $821 | SL |
| Thomas M. Riordan[90] | O'Melveny &Myers | 14 (1995) | $675 | 2009 | $821 | |
| Michal H. Strub[89] | Irell & Manella | 18 (1990) | $670 | 2008 | $847 | |
| Unnamed[85] | Paul Hastings | 12 (1999) | $670 | 2011 | $753 | N/A |
| Unnamed[91] | Paul Hastings | 11 (1999) | $670 | 2010 | $783 | |
| Unnamed[91] | Paul Hastings | 10 (2000) | $660 | 2010 | $772 | |
| Unnamed[92] | White & Case | 08 (2001) | $655 | 2009 | $797 | |
| Unnamed[92] | Pachulski, Stang | 32 (1977) | $650 | 2009 | $791 | |
| Unnamed[84] | Lieff Cabraser | 17 (1995) | $650 | 2012 | $703 | N/A |
| Unnamed[92] | Morrison & Foerster | 17 (1992) | $650 | 2009 | $791 | |
| Unnamed[92] | Klee, Tuchin | 12 (1997) | $650 | 2009 | $791 | |
| Suzanna Brickman[83] | MoFo | 07 (2006) | $650 | 2013 | $676 | |
| Unnamed[92] | Pachulski, Stang | 20 (1989) | $645 | 2009 | $785 | |
| Unnamed[92] | Gibson Dunn | 12 (1997) | $635 | 2009 | $773 | |
| Unnamed[85] | Paul Hastings | 09 (2002) | $630 | 2011 | $708 | N/A |

Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
|------|------|------------------------|------|------|---------------|--------------|
| Unnamed[92] | Munger, Tolles | 39 (1970) | $625 | 2009 | $760 | |
| Unnamed[11] | Arnold & Porter | 09 (2004) | $625 | 2013 | $650 | N/A |
| Jorge DeNeve[90] | O'Melveny &Myers | 10 (1998) | $620 | 2009 | $754 | |
| Unnamed[85] | Paul Hastings | 08 (2003) | $620 | 2011 | $697 | N/A |
| Unnamed[92] | Gibson Dunn | 18 (1991) | $610 | 2009 | $742 | |
| Unnamed[92] | Munger, Tolles | 21 (1988) | $600 | 2009 | $730 | |
| Unnamed[92] | White & Case | 06 (2003) | $600 | 2009 | $730 | |
| Unnamed[92] | White & Case | 04 (2004) | $600 | 2009 | $730 | |
| Unnamed[92] | Klee, Tuchin | 18 (1991) | $590 | 2009 | $718 | |
| Unnamed[85] | Paul Hastings | 07 (2004) | $590 | 2011 | $663 | N/A |
| Unnamed[84] | Lieff Cabraser | 14 (1998) | $585 | 2012 | $632 | N/A |
| Unnamed[92] | Weil, Gotscahl | 06 (2003) | $580 | 2009 | $706 | |
| Erik Swanholt[88] | Greenberg Traurig | 11 (1998) | $575 | 2009 | $700 | SL |
| Unnamed[92] | Gibson Dunn | 06 (2003) | $570 | 2009 | $693 | |
| Allan Johnson[90] | O'Melveny &Myers | 08 (2001) | $565 | 2009 | $687 | |
| Unnamed[85] | Paul Hastings | 06 (2005) | $565 | 2011 | $635 | N/A |
| Unnamed[92] | Munger, Tolles | 25 (1984) | $550 | 2009 | $669 | |
| Katherine Eklund[93] | Milbank, Tweed | 05 (2009) | $550 | 2014 | $550 | |
| Unnamed[92] | Pachulski, Stang | 14 (1995) | $535 | 2009 | $651 | |
| Unnamed[92] | Morrison & Foerster | 09 (2000) | $535 | 2009 | $651 | |
| Unnamed[85] | Paul Hastings | 05 (2006) | $530 | 2011 | $596 | N/A |
| Unnamed[92] | Gibson Dunn | 15 (1994) | $525 | 2009 | $639 | |
| Unnamed[92] | Munger, Tolles | 12 (1997) | $525 | 2009 | $639 | |

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[84] | Lieff Cabraser | 11 (2001) | $525 | 2012 | $567 | N/A |
| Danielle Katzir[86] | Gibson Dunn | 05 (2004) | $525 | 2009 | $639 | |
| Alex Doherty[94] | Sidley Austin | 04 (1998) | $520 | 2012 | $562 | |
| Unnamed[92] | Hennigan, Bennett | 09 (2000) | $505 | 2009 | $614 | |
| Unnamed[85] | Paul Hastings | 04 (2007) | $500 | 2011 | $562 | N/A |
| Unnamed[92] | Weil, Gotscahl | 04 (2005) | $500 | 2009 | $608 | |
| Multiple associates[86] | Gibson Dunn | 04 (2005) | $495 | 2009 | $602 | |
| Lauren McCray[94] | Sidley Austin | 02 (1998) | $495 | 2014 | $495 | |
| Katherine J. Galston[89] | Irell & Manella | 05 (2003) | $490 | 2008 | $620 | |
| Dena G. Kaplan[89] | Irell & Manella | 05 (2003) | $475 | 2008 | $601 | |
| Melissa Barshop[86] | Gibson Dunn | 03 (2006) | $470 | 2009 | $572 | |
| Unnamed[92] | Gibson Dunn | 03 (2006) | $470 | 2009 | $572 | |
| Unnamed[92] | Weil, Gotscahl | 03 (2006) | $465 | 2009 | $566 | |
| Unnamed[92] | Munger, Tolles | 04 (2005) | $450 | 2009 | $547 | |
| Unnamed[85] | Paul Hastings | 03 (2008) | $450 | 2011 | $506 | N/A |
| Abby Schwartz[90] | O'Melveny &Myers | 03 (2006) | $450 | 2009 | $547 | |
| Unnamed[11] | Quinn Emanuel | | $448 | 2013 | $465 | N/A |
| Unnamed[84] | Lieff Cabraser | 06 (2006) | $435 | 2012 | $470 | N/A |
| Unnamed[92] | Munger, Tolles | 04 (2005) | $435 | 2009 | $529 | |
| Kimberly A. Svendsen[89] | Irell & Manella | 04 (2004) | $410 | 2008 | $518 | |
| Hirad Dadgostar[88] | Greenberg Traurig | 03 (2006) | $400 | 2008 | $506 | |
| Unnamed[92] | Munger, Tolles | 03 (2006) | $400 | 2009 | $487 | |
| Multiple associates[86] | Gibson Dunn | 02 (2007) | $400 | 2009 | $487 | |

50

**RATE TABLES: TABLE 1 – CIVIL RIGHTS LITIGATION AWARDS; TABLE 2 – CONSUMER CLASS ACTION AWARDS; TABLE 3 – COMMERCIAL LITIGATION AWARDS AND RATES**

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | | |
|---|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate | Super-Lawyer |
| Unnamed[84] | Lieff Cabraser | 04 (2008) | $395 | 2012 | $427 | N/A |
| Unnamed[92] | Munger, Tolles | 04 (2004) | $395 | 2009 | $481 | |
| Unnamed[92] | O'Melveny & Myers | 03 (2006) | $395 | 2009 | $481 | |
| Unnamed[85] | Paul Hastings | 01 (2010) | $360 | 2011 | $404 | N/A |
| Unnamed[92] | Weil, Gotscahl | 01 (2008) | $355 | 2009 | $432 | |
| Multiple associates[86] | Gibson Dunn | 01 (2008) | $345 | 2009 | $420 | |
| Sara Brenner[87] | Quinn Emanuel | 02 (2006) | $340 | 2008 | $430 | |
| Lauren McCray[94] | Sidley Austin | 01 (1998) | $340 | 2012 | $367 | |
| Sr. Paralegal[91] | Paul Hastings | | $330 | 2010 | $371 | |
| Unnamed[84] | Lieff Cabraser | 01 (2011) | $325 | 2012 | $351 | N/A |
| Paralegal[86] | Gibson Dunn | | $315 | 2009 | $383 | |
| Paralegal[90] | O'Melveny &Myers | 17 (2004) | $310 | 2009 | $377 | |
| Paralegal[86] | Gibson Dunn | | $300 | 2009 | $365 | |
| Legal Assistant[82] | Skadden Arps | | $295 | 2011 | $331 | |
| Paralegal[86] | Gibson Dunn | | $295 | 2009 | $359 | |
| Litigation Support Specialist[90] | O'Melveny &Myers | 04 (2005) | $260 | 2009 | $316 | |
| Paralegal[90] | O'Melveny &Myers | 12 (1997) | $245 | 2009 | $298 | |
| Paralegal[87] | Quinn Emanuel | | $235 | 2008 | $297 | |
| Paralegal[90] | O'Melveny &Myers | 05 (2004) | $225 | 2009 | $274 | |
| Paralegal[89] | Irell & Manella | | $220 | 2008 | $278 | |

1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15

16

COMMUNITIES ACTIVELY
LIVING INDEPENDENT AND
FREE, a nonprofit corporation, and
AUDREY HARTHORN, an
individual, on behalf
of themselves and ALL OTHERS
SIMILARLY SITUATED

         )
         )
         )
         )
         )
         )
         )

CASE NO. CV 09-0287 CBM (RZx)

CLASS ACTION

ORDER GRANTING PLAINTIFFS'
APPLICATION FOR REASONABLE
ATTORNEYS' FEES AND COSTS

17

18

19

         Plaintiffs,

    vs.

         )
         )
         )
         )

20

21

22

CITY OF LOS ANGELES, a
public entity, and COUNTY OF
LOS ANGELES, a public entity,

         )
         )
         )
         )

23

         Defendants.

         )

24

25

26

27

28

      Before the court is Plaintiffs' Application for Reasonable Attorneys' Fees
and Costs. [Docket No. 234.] Plaintiffs have applied to the Court for an order
approving attorneys' fees and reimbursement of litigation costs to Class Counsel
in the amount of $1,225,000, and up to $75,000 in attorneys' fees and costs for

monitoring the Settlement Agreement ("Agreement"). Defendant County of Los Angeles does not oppose the motion, and these are the amounts contained in the proposed class settlement agreement between the Plaintiffs and the County. Having read the papers submitted and carefully considered the arguments and relevant legal authority, and good cause appearing, the Court GRANTS Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs and finds and rules as follows:

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Court finds that Plaintiffs have submitted sufficient evidence supporting their claim for reasonable attorneys' fees and costs, and hereby approves the settlement of attorneys' fees and costs in the amount of $1,225,000 for work performed on this matter, as stated in Section VII of the Agreement. The Court also approves the availability of fees and costs for monitoring the Agreement after Final Approval, in an amount up to $75,000, as stated in Section VI.G of the Agreement.

2.      The Court finds that Plaintiffs have provided sufficient evidence, including time records detailing the tasks performed on this matter and declarations from practitioners in the field, supporting the reasonableness of their 2012 requested hourly rates. The Court finds that the requested hourly rates correspond to the prevailing market rate in the relevant community, considering the experience, skill, and reputation of the attorneys in question.

3.      Class counsel stated that no other litigation in the country has sought to determine the nature and extent of a municipality's obligation to include persons with disabilities in its emergency preparedness and planning efforts. Therefore, counsel had to conduct considerable research, familiarize themselves with the fact intensive literature on the subject of emergency planning, and explore untested legal theories.  The active litigation included extensive, voluminous discovery, numerous depositions, and thousands of pages of

documents.  The negotiations were thorough, involving many teleconferences, in-person meetings, and conferences and mediation sessions before two judges. Additionally, after a joint request to stay the litigation, the Court approved a process where Plaintiffs and the Defendant County would coordinate to draft a "Persons with Disabilities and Access and Functional Needs Annex," ("Annex") for which the experts conferred and resolved many issues, and any disputes were referred to counsel.  Resolving the issues involved many settlement conferences on the phone and in person, and multiple proposals and drafts by both parties. After the Annex was sent out for public comment in late 2011, the U.S. Department of Justice detailed its concerns, after which a second draft was developed and Defendant County of Los Angeles developed a work plan. Negotiations continued for five months regarding the scope of the Annex and workplan.  Parties then attended two mediation sessions in February and July 2012 and were able to resolve all outstanding substantive issues.  After the July mediation session, parties continued to work together to finalize the Agreement and other matters, including attorneys' fees and costs.  The proposed settlement was approved by the Los Angeles County Board of Supervisors on October 15, 2012.

4.    The Court finds that Class Counsel was efficient in allocating work. Counsel states that only four attorneys performed the majority of the work required, that discrete tasks were given to other attorneys as needed, and that a small group of attorneys litigated the entire case.  Counsel also states that Attorneys Wolinsky, Smith, and Gilbride from Disability Rights Advocates ("DRA"), and Attorney Parks from Disability Rights Legal Center ("DRLC"), did a majority of the work.

5.    In support of the hourly rates quoted by lead attorneys in this case, Attorney Wolinsky is a graduate of Yale Law School in 1961 and has been

practicing law and trying cases for over 50 years. He has been the lead and trial attorney in well over 150 class action and high-impact cases, and has tried and argued cases before the California and New York Federal Courts, the California and Hawaii Supreme Courts, and many other appellate courts. He is the Director of Litigation at DRA and is considered one of the foremost experts nationally on civil rights and disability law, and is requesting an hourly rate of $860. Attorney Parks is a 1999 graduate of University of California at Berkeley, Boalt Hall, and is nationally recognized as a leading disability rights attorney and has been co-director of litigation at DRA since April 2012. From 2005 to March 2012, she was at the DRLC, where she was a litigation attorney, and later the legal director from 2009 to 2012, and is requesting an hourly rate of $665. Attorney Smith is managing attorney at DRA, and graduated from U.C. Berkeley, Boalt Hall Law School in 2005. She received the 2013 California Lawyer Magazine Attorney of the Year Award in the area of Disability Law for her work on this litigation and the 2010 California Lawyer Attorney of the Year Award in the area of Disability Law for her work on the above referenced Caltrans case, and is requesting an hourly rate of $555. Attorney Gilbride is a 2007 graduate of Georgetown Law School and worked on this case as part of DRA. Attorney Gilbride served as a law clerk to Judge Ronald Gould on the U.S. Court of Appeals for the Ninth Circuit in Seattle. She conducted much of the written discovery and took and defended several depositions. She was also responsible for all expert discovery, and is knowledgeable in the requirements for emergency preparedness under the law, and is requesting an hourly rate of $430.

6. In support of the hourly rates quoted by other attorneys in this case, Attorney Uzeta is a 1992 graduate of University of California at Davis, King Hall School of Law, with a Certification in Public Interest Law. She has practiced exclusively in the area of civil rights law, in particular disability rights, since

1993.  From February 1995 to August 2008, she worked as an attorney at Disability Rights California ("DRC"), the largest disability rights organization in the nation, where she represented individuals and classes with disabilities in federal and state litigation.  From August 2008 to December 2010, she was employed as the Litigation Director of the Southern California Housing Rights Center, a Los Angeles based nonprofit whose mission is to combat housing discrimination, where she engaged mostly in disability discrimination cases, and is requesting an hourly rate of $700.  Attorney Paradis is the Executive Director and Co-Director of Litigation at DRA.  He graduated from Harvard Law School in 1985 and has extensive experience with disability rights litigation, and has received several awards for his work on precedent setting disability rights cases, including the California Lawyer Magazine Attorney of the Year Award in 2003 and 2011 and the Trial Lawyer of the Year Award from the San Francisco Trial Lawyers Association.  Mr. Paradis assisted with advising the litigation team on settlement strategy and potential experts, and is requesting an hourly rate of $800. Attorney Elsberry is a 1987 graduate of University of California, Hastings College of Law. He was a Managing Attorney at DRA from 2009 to 2012, and is currently a Senior Staff Attorney at DRLC. He assisted with certain tasks relating to class certification, and is requesting an hourly rate of $725.  Attorney Weed is a 2002 graduate of the University of Michigan Law School.  She was involved in the preliminary investigation and review of the voluminous public records, and is requesting an hourly rate of $600.  Attorney Biedermann is a 2007 graduate of Yale Law School and was an Arthur Liman Fellow at DRA from 2007 to 2009. She assisted with the review of many public records and drafting the complaint, and is requesting an hourly rate of $430.  Attorney Chuang is a 2007 graduate of University of Pennsylvania Law School and has been a Staff Attorney at DRA since 2011.  Previously, she was a Litigation Associate at Latham & Watkins LLP.

She primarily worked on finalizing the settlement agreement, providing notice to the class, and drafting the motions for preliminary and final approval, as well as the motion for reasonable attorneys' fees and costs, and is requesting an hourly rate of $430. Attorney Janssen is currently a Staff Attorney at DRA and graduated from New York University School of Law in 2010. She assisted with discrete tasks relating to the negotiation of the County's Work Plan and draft Annex, and is requesting an hourly rate of $330. Attorneys Patkin, Lee, and Strugar worked on the case in their capacity as attorneys at DRLC. Former DRLC staff attorney Patkin is a 2007 graduate of UCLA School of Law, and is requesting an hourly rate of $450. Former DRLC staff attorney Strugar is a 2004 graduate of USC Gould School of Law, and is requesting an hourly rate of $525. Former DRLC staff attorney Lee is a 2003 graduate of Loyola Law School, and is requesting an hourly rate of $550. The Fee Experts cited by Attorneys indicate that the hourly rates requested by all of these attorneys is reasonable.

7. The Court finds that the rate of $240 for DRA's paralegals and $250 for its summer associates is reasonable. DRA's paralegals are college graduates that have worked under attorney supervision for over a year. DRA's summer associates generally have two full years of law school experience before working at DRA for their second-year summer. The Court further finds that the hourly rate of $230 for DRLC's law clerks and litigation assistants is reasonable.

8. The Court hereby approves the following 2012 hourly rates and hours expended:

| DRA | Rate | Hours | Fees |
|---|---|---|---|
| Sid Wolinsky | $860.00 | 700.00 | $602,000.00 |
| Shawna Parks | $665.00 | 81.40 | $54,131.00 |
| Mary-Lee Smith | $555.00 | 139.50 | $77,422.50 |
| Karla Gilbride | $430.00 | 494.40 | $212,592.00 |

| DRA | Rate | Hours | Fees |
|---|---|---|---|
| Larry Paradis | $800.00 | 15.80 | $12,640.00 |
| Ron Elsberry | $725.00 | 18.30 | $13,267.50 |
| Katherine Weed | $600.00 | 20.50 | $12,300.00 |
| Stephanie Biedermann | $430.00 | 184.00 | $79,120.00 |
| Christine Chuang | $430.00 | 125.00 | $53,750.00 |
| Kara Janssen | $330.00 | 36.40 | $12,012.00 |
| Summer Associates | $250.00 | 26.70 | $6,675.00 |
| Paralegals | $240.00 | 260.90 | $62,616.00 |

| DRLC | Rate | Hours | Fees |
|---|---|---|---|
| Michelle Uzeta | $700.00 | 35.50 | $24,850.00 |
| Shawna Parks | $665.00 | 285.60 | $189,924.00 |
| Debra Patkin | $450.00 | 143.50 | $64,575.00 |
| Jennifer Lee | $550.00 | 16.00 | $8,800.00 |
| Matthew Strugar | $525.00 | 20.20 | $10,605.00 |
| Law Clerk | $230.00 | 122.90 | $28,267.00 |
| Steve Cueller (Litigation Assist.) | $230.00 | 4.70 | $1,081.00 |

9.     The Court finds that the hourly rates and hours expended are reasonable under established Ninth Circuit law. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing the lodestar figure and the requirement to consider factors outlined in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975)).[1]

---

[1] The requested Attorneys' Fees and Costs stem from negotiations between Class Counsel and the County of Los Angeles, and are much lower than the fees calculated under the lodestar method. The calculated fees, without any multiplier, are $1,526,628.00 and the costs expended are $47,903.05, for a total of $1,574,531.05, which is $349,531.05 greater than the amount negotiated by the Settlement. Since this case involved injunctive and declaratory relief, the Fee award will not result in an "inequity" between Counsel and Class Members. *See In re HP Inkjet Printer Litig.*, 11-16097, --- F.3d ----, 2013 WL 1986396, *1, *5 (9th Cir. May 15, 2013) (reasoning that "coupon" settlements may create inequity where Class Counsel request fees and

1        10.    The Court further finds that Counsel has submitted sufficient

2  evidence of the time and effort undertaken by Class Counsel in prosecuting and

3  settling the claims, and that this time and effort was reasonable and necessary in

4  light of the needs of the litigation.

5        In accordance with the terms of the Agreement, the County of Los Angeles

6  shall pay attorneys' fees and reimbursement of litigation costs to Class Counsel in

7  the amount of $1,225,000 within ninety (90) days of this Order (September 9,

8  2013) and up to $75,000 for monitoring the Agreement within six (6) years of this

9  Order.

10

11  **IT IS SO ORDERED.**

12  DATED: June 10, 2013

13                            CONSUELO B. MARSHALL

14                         UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

28  costs).

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   CESSY LAUDERDALE, CORNELIO    )   CASE NO.: CV 08-979 ABC (JWJx)
     VERA, and BERTHA DAVIS,       )
12   individually and on behalf of )   ORDER RE: ATTORNEY FEES AND COSTS
     the class of similarly situated)
13   individuals,                  )
                                    )
14                     Plaintiffs, )
                                    )
15        v.                        )
                                    )
16   CITY OF LONG BEACH, a public   )
     entity, LONG BEACH POLICE      )
17   DEPARTMENT, a public entity,   )
                                    )
18                    Defendants. )
     _____ )
19

20        Plaintiffs Cessy Lauderdale, Cornelio Vera, and Bertha Davis, on

21   their behalf and on behalf of similarly situated individuals, filed a

22   motion on November 23, 2009, for reasonable attorney's fees and costs

23   following the parties' settlement of this class action lawsuit.

24   Defendants City of Long Beach and the Long Beach Police Department

25   (the "City") opposed on December 14, 2009 and Plaintiffs replied on

26   December 22, 2009.  The Court found this matter appropriate for

27   resolution without oral argument and vacated the January 11, 2010

28   hearing date.  Fed. R. Civ. P. 78; Local Rule 7-15.  Upon

consideration of the parties' papers and the case file, the Court rules as follows.

**I.    BACKGROUND**

On February 13, 2008, Plaintiffs filed this class action lawsuit against the City, alleging that the City had violated the rights of people who are deaf or hard of hearing who have interacted, currently interact, or will interact with the Long Beach Police Department ("LBPD"), by failing to take appropriate steps to effectively communicate with these individuals.  The Complaint sought declaratory and injunctive relief compelling the City to ensure effective communication with individuals who are deaf or hard of hearing through the provision of auxiliary aids and services and proper training of LBPD officers on how to effectively communicate during official interactions.

The Complaint and the motion for preliminary approval of the class action settlement set forth the underlying facts in this matter, and the Court need not summarize them here.

The parties ultimately entered a Settlement Agreement resolving Plaintiffs' claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, the Unruh Civil Rights Act (Cal. Civ. Code §§ 51 et seq.), and the Blind and Other Physically Disabled Persons Act (Cal. Civ. Code §§ 54 et seq.).  The Agreement provides that, among other relief: (1) the LBPD will take appropriate steps to ensure effective communication with the class through the provision of auxiliary aids and services; (2) the LBPD will implement and follow a policy entitled "Communication with People who are Deaf or Hard of Hearing"; (3) the LBPD will make available Video Relay Service/Video Interpreting equipment at the main LBPD

station within one year after final approval of the agreement for a minimum one-year period; and (4) the LBPD will train personnel on the Settlement Agreement and policy.  In the Agreement, the City conceded that Plaintiffs were prevailing parties for the purpose of attorney's fees.  The parties agreed that Plaintiffs would apply to the Court for a determination of the amount of fees.

Although the parties ultimately reached a settlement, Plaintiffs portray the negotiations as unnecessarily drawn out by the City, while the City claims the negotiations were protracted by Plaintiffs, especially because the City knew that prolonging the matter could expose it to more in fees.  In reality, the negotiations fell somewhere in the middle.

Before Plaintiffs filed suit, they sent a tort claims letter to the City in early 2007, which the City rejected.  (Parks Decl. ¶ 20.) Plaintiffs sent another detailed letter to the City in January 2008, which was again rejected by the City.  (Id. ¶ 20, Exs. H, I.) Plaintiffs then filed suit in February 2008.

The Court suggested settlement of the case at a June 16, 2008, conference with the parties and the first step to that settlement was to negotiate the policy that the City would eventually adopt.  The City began the process with the first of three attorneys, Principle Deputy City Attorney Belinda Mayes.  (Parks Decl. ¶ 21; Fudge Decl. ¶ 4.)  But Ms. Mayes left the City Attorney's Office in October 2008 and this matter was reassigned to Principal Deputy City Attorney Monte Machit, who met with Plaintiffs' counsel on December 15, 2008.  Machit informed Plaintiffs' counsel that the matter would be transferred again to Deputy City Attorney Randall C. Fudge, who worked on the matter from that time to the present.  (Parks Decl. ¶ 22; Fudge Decl.

3

¶ 8.)  Plaintiffs claim that, during these transitional periods, progress on settlement slowed.

Nevertheless, progress was made on the policy by January 2009 (which the LBPD began implementing), so the parties turned their attention to the Settlement Agreement itself, setting up a series of four meetings at the City Attorney's office in Long Beach.  (Parks Decl. ¶ 23.)  The preliminary drafts of the agreement exceeded twenty pages and the City objected to several terms, as did Plaintiffs, so "a significant amount of time was expended in re-drafting portions of the Settlement Agreement."  (Fudge Decl. ¶ 8; Parks Decl. ¶ 24, Ex. L (letter from Attorney Fudge noting that the negotiations were "a laborious process involving multiple revisions of a 20-some page agreement.").  Nevertheless, the parties eventually agreed on most of the issues.  (Fudge Decl. ¶ 9.)  The remaining issues were submitted to a five-hour mediation on June 4, 2009, and an agreement on injunctive and declaratory relief was reached in principle and the amount of damages settled on.  (Parks Decl. ¶ 25.)  From October 2008 through July 2009, the parties exchanged at least ten drafts of the proposed Settlement Agreement.  (Parks Decl. ¶ 27.)

But a final agreement was not immediately forthcoming.  Each side claims that the other sought to change, amend, or renegotiate some of the terms agreed to after the mediation, including aspects of the policy the LBPD had already implemented.  (Compare Parks Decl. ¶ 26 ("Although Plaintiffs' counsel believed they had an agreement in principle on the few remaining issues regarding injunctive and declaratory relief at the parties' mediation, Defendants' counsel sought to renegotiate a number of issues that were previously negotiated and agreed upon by the parties.") with Fudge Decl. ¶ 10

4

("Subsequently, in or about July 2009, Plaintiffs sought to amend the Policy by adding terms to the Policy contained in the Settlement Agreement.").)  After much negotiation, the parties finally agreed that the City would issue a supplemental Training Bulletin to LBPD personnel.  (Fudge Decl. ¶ 11.)

During the course of negotiations up to February 2009, the parties did not engage in discovery, other than a public records request by Plaintiffs before filing the Complaint.  (Parks Decl. ¶ 28.)  With discovery cut-off and class certification deadlines looming and no settlement reached, however, Plaintiffs moved forward with some discovery, which they hoped would reveal the extent of the LBPD's policies, procedures, and training, and, as a result, nudge the case closer to settlement.  (Parks Decl. ¶ 29.)  They served on the LBPD three sets of requests for production, two sets of requests for admissions and interrogatories, and served on the City two sets of requests for production, requests for admissions and interrogatories, and Plaintiffs deposed representatives from the LBPD and the City. (Parks Decl. ¶ 29.)  The parties also exchanged correspondence in setting the deposition dates, which were moved several times.  (Parks Decl. ¶ 30.)  Ultimately, because deadlines were still approaching, Plaintiffs drafted a class certification brief and supporting declarations, although those documents were never filed with the Court.  (Parks Decl. ¶ 31.)

Having executed the Settlement Agreement and presented it to the Court for approval, Plaintiffs now seek attorney's fees and costs for the work performed.  Plaintiffs claim reasonable fees in the amount of $429,282.50 as calculated under the lodestar method, multiplied by 1.5 to reflect the inherent risk in the case and the results achieved, for

a total of $643,923.75.  They also seek $10,378.95 in costs and $51,024.50 for the hours expended on the fees motion.  The City, on the other hand, claims that Plaintiffs are entitled to no more than $167,340 in attorney's fees and $7,439.79 in costs, but does not dispute that Plaintiffs are entitled to $51,024.50 for the fees motions.

**II.  DISCUSSION**

Plaintiffs' counsel, the Disability Rights Legal Center (the "DRLC") and the private law firm of Munger, Tolles & Olsen LLP ("MTO"), seek fees and costs under several statutes as the prevailing parties: the ADA, 42 U.S.C. § 12205; the Rehabilitation Act, 29 U.S.C. § 794a(b); the California Disabled Persons Act, Cal. Civ. Code § 55; and Cal. Civ. Code § 1021.5.  The lodestar fees they seek (not including fees for the fees motion and costs) are as follows:

//

//

//

//

//

//

//

//

//

//

//

//

//

//

| Attorney | Year of Graduation | Rate | Hours | Amount |
|---|---|---|---|---|
| **DRLC** | | | | |
| Shawna L. Parks | 1999 | $525 | 99.00 | $51,975.00 |
| Sage Reeves | 2001 | $475 | 263.40 | $125,115.00 |
| Tiffany Green | 2005 | $375 | 225.40 | $84,525.00 |
| Matthew Strugar | 2004 | $400 | 9.60 | $3,840.00 |
| Law Clerks | | $165 | 81.80 | $13,497.00 |
| **Subtotal DRLC** | | | 679.20 | $278,952.00 |
| **MTO** | | | | |
| Kristina Wilson | 2006 | $350 | 263.60 | $92,260.00 |
| Bethany Woodard | 2005 | $395 | 118.70 | $46,886.50 |
| Robert Dell Angelo | 1992 | $550 | 9.90 | $5,445.00 |
| Law Clerks/Support Staff | | $65 to $220 | 30.60 | $5,739.00 |
| **Subtotal MTO** | | | 422.80 | $150,330.50 |
| **Total Lodestar** | | | 1102.00 | $429,282.50 |
| **with 1.5 Multiplier** | | | | $643,923.75 |

Generally, a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002) (quoting and applying standards from Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40 (1983) to ADA claim); see also Armstrong v. Davis, 318 F.3d 965, 970-71 (9th Cir. 2003) (applying standard to ADA and Rehabilitation Act claims); Molski v. Arciero Wine Group, 164 Cal. App. 4th 786, 790, 79 Cal. Rptr. 3d 574, 577-78 (Ct. App. 2008) (interpreting Cal. Civ.

Code § 55).  The City agreed in the Settlement Agreement that Plaintiffs were "prevailing parties" here, which is consistent with controlling authority  See Barrios, 277 F.3d at 1134 ("Under applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant[.]"); see also Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1, 16–17, 64 Cal. Rptr. 3d 327, 340–41 (Ct. App. 2007) (finding that disability class action obtaining awards for 209 drivers satisfied the "significant benefit," "public interest," and "large class of persons" requirements of section 1021.5).

Once a party is considered "prevailing," the Court must determine the reasonable amount of fees by calculating the "lodestar," which is the number of hours reasonably spent multiplied by a reasonable hourly rate.  Hensley, 461 U.S. at 433, 103 S. Ct. at 1939; Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).  The lodestar amount is also the touchstone for reasonable fees under California law.  See Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 579, 21 Cal. Rptr. 3d 331, 157 (2004).  The lodestar is presumed to provide reasonable fees, but "the district court may, if circumstances warrant, adjust the lodestar amount to account for other factors which are not subsumed within it."  Camacho, 523 F.3d at 978 (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).  To make adjustments following calculation of the lodestar, the Court considers the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5)

the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Morales v. City of San Rafael, 96 F.3d 359, 363–64 & n.8 (9th Cir. 1996) (quoting Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)), amended by 108 F.3d 981, 981 (9th Cir. 1997). The Court must explain how it reached the ultimate amount of fees awarded, although that explanation can vary somewhat in its level of detail depending on the magnitude of the variation from the amount requested and the amount awarded. See Moreno, 534 F.3d at 1111 (noting that "the district court can impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation.").

**A. Lodestar Amount**

Before applying any multiplier requested by Plaintiffs (which the Court will discuss below), Plaintiffs claim a lodestar of $429,282.50. (See Parks Reply Decl., Ex. A.)

1. Reasonable Hourly Rates

Reasonable hourly rates are based upon the "prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984). The relevant community is the "forum in which the district court sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997). And the prevailing rate is the "'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and

reputation.'"  Id. at 502 (citation omitted).  "Affidavits of the
plaintiffs' attorney and other attorneys regarding prevailing fees in
the community, and rate determinations in other cases, particularly
those setting a rate for the plaintiffs' attorney, are satisfactory
evidence of the prevailing market rate."  United Steelworkers of Am.
v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiffs seek fees based upon the following prevailing rates in
this District:

- $375/hour for Tiffany Green of DRLC, a 2005 graduate of University of California, Los Angeles School of Law;

- $475/hour for Sage Reeves of DRLC, a 2001 graduate of University of California, Davis School of Law;

- $525/hour for Shawna L. Parks of DRLC, a 1999 graduate of Boalt Hall School of Law at the University of California, Berkeley;

- $400/hour for Matthew D. Strugar of DRLC, a 2004 graduate of University of Southern California School of Law;

- $395/hour for Bethany Woodard of MTO, a 2005 graduate of University of Southern California School of Law;

- $350/hour for Kristina Wilson of MTO, a 2006 graduate of Northwestern University School of Law;

- $550/hour for Robert Dell Angelo, a partner of MTO and a 1992 graduate of University of California, Los Angeles School of Law; and

- $165/hour and $220/hour for law clerks at DRLC and MTO, respectively.

Plaintiffs have presented ample evidence that the rates they seek
are reasonable in the Central District.  Laurence W. Paradis, an
experienced civil rights litigator and the Executive Director and Co-
Director of Litigation of Disability Rights Advocates in Berkeley,
California, testified that he is familiar with the DRLC and its
attorneys and opined that the rates sought are consistent with market
rates for attorneys with similar experience in the Southern California

market, and are consistent with the rates charged by his organization. (Paradis Decl. ¶¶ 6–12.)  Barrett S. Litt, another experienced civil rights litigator, also testified that the rates are in line with the Southern California market, his own experience, and fee awards in similar cases.  (Litt Decl. ¶¶ 26–31.)  Three other experienced civil rights litigators also submitted declarations all attesting that the rates Plaintiffs charge are consistent with market rates in Southern California.  (See Stormer Decl. ¶¶ 8–13; Mann Decl. ¶¶ 15–19; Harris Decl. ¶¶ 12–16.)

Indeed, two large law firms in the Los Angeles area – O'Melveny & Myers and Gibson, Dunn & Crutcher – charge similar rates for attorneys with equivalent experience.  In 2008, O'Melveny & Myers charged $450 per hour for a 2005 graduate (as compared to the $395 per hour for MTO's Bethany Woodard, also a 2005 graduate) and charged $675 per hour for a 1994 partner (as compared to $550 per hour for MTO partner Robert Dell Angelo, a 1992 graduate).  (Litt Decl. ¶ 21.)  In a case in which Gibson, Dunn & Crutcher partnered with the Los Angeles public interest law firm of Public Counsel, that firm charged $525 per hour for a 2004 graduate and $495 per hour for 2005 graduates.  (Litt Decl. ¶ 23.)  Finally, Mr. Paradis testified that his organization charges $375 per hour for its 2005 graduates and $420 per hour for its 2004 graduates.  (Paradis Decl., Ex. A.)[1]

Once the prevailing party provides evidence of the prevailing

---

[1]Although Mr. Paradis's organization is located in San Francisco, he opined that rates there and in Southern California are similar. The City offered no contradictory evidence.  See Bouman v. Block, 940 F.2d 1211, 1236 (9th Cir. 1991) (accepting testimony of litigator and expert on attorney's fees that market rates in San Francisco and California are similar).

market rates, "'[t]he party opposing the fee application has the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in the submitted affidavits.'" <u>Camacho</u>, 523 F.3d at 980 (citation omitted; ellipsis in original).  To carry this burden, the City offers the testimony of Andre Jardini, a legal auditor who provided an audit report on Plaintiffs' fee request, to show that Plaintiffs' counsel's rates are inflated.[2]  He explained:

> Based on an Incisive Legal Intelligence publication entitled "The Survey of Law Firm Economics 2009 Edition", the average hourly billing rate for an attorney with 8 to 10 years of experience is $272.  The lower quartile is $212 and the upper quartile $325.  The average hourly rate for attorneys with five years experience like Matthew D. Strugar is $231 an hour and attorneys with two to three years experience like Tiffany Green average $186 hourly rate.

(Jardini Decl. ¶ 35.)  The Court does not find Mr. Jardini's position persuasive.  He does not include copies of the survey he cites and he

---

[2]Plaintiffs filed objections to the report of Andre E. Jardini in support of the City's opposition to the motion for attorney's fees. Plaintiffs claim he is not qualified as an "expert" under Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  Generally, under Rule 702, the Court acts as a gatekeeper before expert evidence goes to a jury, but "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." <u>United States v. Brown</u>, 415 F.3d 1257, 1269 (11th Cir. 2005).  "Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702."  <u>In re Salem</u>, 465 F.3d 767, 777 (7th Cir. 2006).  Plaintiffs mostly disagree with the substance of Mr. Jardini's conclusions, which the Court addresses <u>infra</u> as they are relevant to the Court's rulings.  To the extent that any part of his testimony does not meet the standard of Rule 702, the Court has not considered it.  The Court overrules Plaintiffs' other objections.

does not explain the methodology the authors of the survey might have used to arrive at the "average" billing rate. The survey could very well have included rates that encompassed all types of lawyers from solo practitioners to partners at the largest law firms and could have covered the entire country. That, of course, runs contrary to the requirement that reasonable rates be set at the "'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" See Barjon, 132 F.3d at 500, 502.

Mr. Jardini proposes a "blended rate" of $300 per hour, but again he does not explain how he reached this blended rate, which does not even seem to correlate with the survey he cited. (Jardini Decl. ¶ 36.) Nor does he cite any legal authority for using a blended hourly rate, which may not reflect a reasonable rate. Cf. S.E.C. v. Goren, 272 F. Supp. 2d 202, 208 (E.D.N.Y. 2003) (rejecting use of blended hourly rate because it "risks under- and over-compensating [attorneys] for their efforts."). The Court finds this evidence insufficient to rebut Plaintiffs' proposed rates and concludes that those rates are reasonable.

    2.   <u>Reasonable Hours Expended</u>

Plaintiffs' counsel spent a total of 1,102 hours litigating this case (not including hours spent on the fees motion), which Plaintiffs claim is reasonable. (Parks Reply Decl., Ex. A.)[3] Plaintiffs' counsel arrived at that number after making discrete deductions from their hours equal to twenty percent. (Parks Decl. ¶ 33, Ex. A.)

_____

[3]This number reflects Plaintiffs' subtraction of 4.2 hours from their initial total (3.7 from the hours spent by Tiffany Green and .5 hours spent by Sage Reeves) based on conceded billing errors. (Parks Reply Decl. ¶ 5.)

1   Further, eighty percent of the hours expended were spent by attorneys
2   at the associate level (and thus had lower billing rates) and that
3   number increases to ninety percent once support staff and law clerks
4   are included.  (Parks Decl. ¶ 32, Ex. A.)

5               a.   Reduction for MTO's Involvement

6        First, the City argues that all the work done by the MTO
7   attorneys was duplicative and unnecessary, so the 446.70 hours billed
8   by the MTO attorneys should be excluded entirely from the reasonable
9   hours spent on the litigation.  (Jardini Decl. ¶¶ 26-32, 49.)
10  Generally, billed time that includes unnecessary duplication of effort
11  should be excluded from the lodestar.  See Herrington v. County of
12  Sonoma, 883 F.2d 739, 747 (9th Cir. 1989).  Indeed, "courts ought to
13  examine with skepticism claims that several lawyers were needed to
14  perform a task, and should deny compensation for such needless
15  duplication as when three lawyers appear for a hearing when one would
16  do."  Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286
17  (9th Cir. 2004) (internal citations omitted).  Nevertheless, "[c]ommon
18  experience indicates that lawyers often hire other lawyers to help
19  them with specific issues in the case."  Bouman, 940 F.2d at 1236.  Of
20  course, there is some degree of duplication that is necessary in any
21  case, so "the court should defer to the winning lawyer's professional
22  judgment as to how much time he was required to spend on the case;
23  after all, he won, and might not have, had he been more of a slacker."
24  Moreno, 534 F.3d at 1112.

25       Here, MTO's participation was not unnecessarily duplicative.  MTO
26  brought its highly regarded civil litigation practice to the case,
27  relying on its years of experience litigating complex cases to help
28  bring the case to a favorable settlement.  Likewise, the DRLC is

nationally recognized as an expert in the field of disability law and
undoubtedly assisted MTO attorneys on understanding the substantive
aspects of disability law, which may have reduced, not increased, the
number of hours MTO attorneys would have otherwise had to spend to
research and understand disability law. As one DRLC attorney
explained, Plaintiffs' counsel employed a "team approach at settlement
meetings, leveraging the DRLC's expertise in the subject matter with
the litigation skills and resources brought to bear by MTO." (Parks
Reply Decl. ¶ 10.)

Mr. Jardini opines that "MTO has used this matter as a training
ground for its younger associates to gain experience while providing
pro bono work" (Jardini Decl. ¶ 26), but he points to nothing to
suggest that the attorneys from MTO lacked competence to participate
in the case or that the DRLC attorneys engaged in any sort of
"training," apart from the normal supervision one would expect from
experts in the substantive law at issue. In fact, were the City
right, Plaintiffs could never have staffed the case appropriately no
matter what they did: on the one hand, the City complains that higher-
billing attorneys spent too much time on the case (Jardini Decl. ¶ 36
(claiming case was staffed in a "top heavy fashion")), but on the
other hand the City criticizes the use of lower-billing MTO attorneys
for alleged "training" purposes (Jardini Decl. ¶ 26). Whatever the
City believes should have been the proper staffing of the case, "the
district court may not set the fee based on speculation as to how
other firms would have staffed the case." Moreno, 534 F.3d at 1114.
Thus, the Court finds that a total elimination of the 446.70 hours
spent by MTO attorneys on the case is unwarranted.

Although MTO's presence was not unnecessarily duplicative as a

general matter, Mr. Jardini points to three specific instances where
utilizing multiple attorneys from both firms may have led to some
duplicative work.[4]  First, Mr. Jardini indicates that unidentified
entries from January 23, 2008 to March 14, 2008 of MTO's billing
records[5] indicate that Kristina Wilson spent 16.45 hours drafting the
complaint.  (Jardini Decl. ¶ 28.)  Similarly, unidentified entries
from February 4, 2008 to February 13, 2008, indicate that several DRLC
attorneys also spent approximately 13.3 hours reviewing and revising
the complaint.  (Id.)  The Court does find the 29.75 hours spent on
the complaint were likely duplicative.  The DRLC has brought two
similar deaf and hard-of-hearing class action cases before this court
(Parks Decl. ¶ 9), so they probably could have used at least some part
of those prior complaints to save time drafting the complaint in this
case.  Yet, a relatively junior MTO attorney (Kristina Wilson, a 2006
graduate) spent 12.4 hours from January 23, 2008 to February 4, 2008,
before DRLC attorneys seem to have reviewed any part of the draft
complaint.  Then another relatively junior DRLC attorney (Tiffany
Green, a 2005 graduate) spent two hours reviewing and revising the
complaint before she sent it to a more experienced DRLC attorney,
Shawna Parks.  And even after that, counsel spent an additional 11.3
hours reviewing and revising the complaint.

---

[4]Mr. Jardini includes these three specific instances in his
declaration.  He also created a chart of billing entries that he
suggests demonstrates other possible duplicate billing entries.  He
has not set out the information in a useful way, however, because the
Court cannot tell from his list whether the two firms actually
performed duplicate work.

[5]A further problem with Mr. Jardini's chart is that he does not
identify the discrete billing entries he adds together to reach his
cumulative totals.  Neither Plaintiffs nor the Court has any way to
verify the accuracy of each cumulative entry without that information.

As noted above, the DRLC brings its expertise in disability law to this case – and specifically its experience litigating deaf and hard-of-hearing class actions against municipalities – yet it apparently did not immediately lend that support to the complaint-drafting process, which likely prolonged the entire drafting process. Thus, the Court finds that the 12.4 hours spent by junior MTO associate Kristina Wilson before the DRLC attorneys reviewed the draft complaint was duplicative and unnecessary, as was the two hours DRLC junior attorney Tiffany Green spent before sending it to a more senior DRLC attorney. Although the Court is not entirely convinced that all of the remaining 15.35 hours spent by the two firms were still necessary, the City provides no basis to reduce that number further and the Court will not do so.

Second, Mr. Jardini identifies instances where multiple attorneys attended court appearances and depositions, which the City claims were overstaffed. As a general matter, "in an important class action litigation such as this, the participation of more than one attorney does not constitute an unnecessary duplication of effort." Probe v. State Teacher's Retirement Sys., 780 F.2d 776, 785 (9th Cir. 1986). Indeed, having multiple attorneys attend depositions, meetings and settlement conferences allowed counsel to contribute creative solutions, reduced the need for inter-office communications after meetings, and ameliorated disagreements over what actually went on at meetings. (Parks Reply Decl. ¶ 12.)

However, one DRLC attorney billed 5.9 hours and two MTO attorneys billed a total of eight hours for attending a deposition on April 27, 2009. (Jardini Decl. ¶ 29.) First, the Court has reviewed the actual billing records and they do not appear to correlate to Mr. Jardini's

1  entries.  The entry for the DRLC attorney on that date reflects 6.10

2  hours billed for attending the deposition, not 5.9, and the entries

3  for the MTO attorneys on that date reflect 6.5 and 3.7 hours billed,

4  for a total of 10.2 hours, not eight hours.[6]  Based on the numbers

5  contained in the actual billing records, the Court finds duplicative

6  the 3.7 hours spent by MTO associate Kristina Wilson, when an MTO

7  associate with similar seniority (Bethany Woodard, a 2005 graduate)

8  billed 6.5 hours for the deposition and DRLC attorney Sage Reeves (a

9  2001 graduate) billed 6.1 hours for the deposition.  Having one senior

10 attorney and one more junior attorney attend the deposition was

11 plenty; the third junior attorney was excessive.

12      The Court, however, does not find that having two DRLC attorneys

13 and one MTO attorney attend the mediation in this case was

14 duplicative.  Both Sage Reeves (again, a 2001 graduate) and Shawna

15 Parks (a 2000 graduate) from DRLC attended the June 4, 2009,

16 mediation, billing a total of 12.6 hours for the time preparing and

17 attending.  Kristina Wilson also billed 8.8 hours for preparing for

18 and attending the mediation.[7]  First, participation of more than one

19 attorney at a mediation does not automatically constitute an

20 unnecessary duplication of effort.  See Kim v. Fujikawa, 871 F.2d

21 1427, 1435 n.9 (9th Cir. 1989).  Second, the mediation was far more

22 important in this case than the deposition discussed above.  Unlike

23 the deposition, the mediation sat at the very crossroads of the

24

25 _____

26      [6]The Court also notes that the MTO attorneys spent a total of
   17.7 hours preparing for and attending the deposition, but subtracted
27 7.5 hours from that to arrive at 10.2 hours actually billed.

28      [7]Again, Mr. Jardini's calculation of eight hours for Ms. Wilson's
   hours billed was inaccurate based on the billing records.

resolution of this case.  The parties had agreed to some terms of a settlement, but needed a neutral to finalize it.  The Court hesitates to second-guess the choice of two senior DRLC attorneys to attend with the assistance of a junior MTO associate, since an agreement may not have been reached if both senior DRLC counsel had not brought to bear their expertise and experience.  The Court will not subtract hours on this basis.

### b.   Specific Reductions for DRLC Hours

The City also seeks to reduce DRLC's hours based on improper billing for overhead, conducting excessive interoffice communication, and for committing errors within its bills.

Mr. Jardini identifies 27.05 hours he claims were improperly spent on "overhead," including "calendaring, scheduling and confirming meetings, issues regarding retainer agreements, and electronic filing."  (Jardini Decl. ¶ 37.)  In some circumstances, "attorneys' fees for administrative and secretarial tasks . . should be considered general overhead to run a law office," and already compensated in the reasonable hourly fee, Eklund v. City of Seattle, No. C06-1815Z, 2009 WL 2019119, at *4 (W.D. Wash. July 2, 2009) (citing Keith v. Volpe, 644 F. Supp. 1312, 1316 (C.D. Cal. 1986)), but only if that is the billing custom in the relevant market, see Trustees of Constr. Indus. & Laborers Health & Welf. Trust v. Redland Ins. Co., 460 F.3d 1253, 1257 (9th Cir. 2006).  The City has provided no evidence that this is the practice in the Central District.  Thus, the Court cannot subtract these hours on that basis.

It is clear, however, that "[i]t is simply not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."  Davis

1  v. City & County of San Francisco, 976 F.2d 1536, 1543 (9th Cir.

2  1992), vacated in part on other ground by 984 F.2d 345, 345 (9th Cir.

3  1993); see also Redlands Ins. Co., 460 F.3d at 1257.  The Court has

4  reviewed the entries for the hours claimed to be "overhead" or

5  administrative and finds that most of them, while not models of

6  billing clarity, arguably require the skills of an attorney to be

7  performed.  For example, on June 14, 2007, Tiffany Green spent three-

8  tenths of an hour responding to an email from a law clerk "re

9  questions about Long Beach Case . . . and Section 1983 COA," which

10 certainly entails attorney-level work.  Similarly, on December 18,

11 2008, Sage Reeves billed one-tenth of an hour in a telephone

12 conference with the City's counsel Randall Fudge "re scheduling,"

13 which also could require an attorney's experience, especially if the

14 scheduling issue was disputed.  On September 21, 2009, Sage Reeves

15 billed two-tenths of an hour for "Legal research re filing with Court

16 re need for settlement conference/extension," which again, is

17 obviously attorney-level work.  And several entries reflect work

18 performed by Tiffany Green on retainer agreements, which also entails

19 attorney skill.

20     Not every entry identified needed an attorney to perform it,

21 however.  For example, on July 2, 2007, Tiffany Green spent one-tenth

22 of an hour emailing "Cessy Lauderdale – re videophone," which the

23 Court suspects was intended to set up videoconferencing and required

24 no attorney-level skill.  On January 25, 2008, Tiffany Green billed

25 .05 of an hour with the entry "Gave to SAC to be mailed off with a

26 check for 20.00," which certainly could have been done by a non-

27 attorney.  Similarly, several times Ms. Green simply forwarded

28 electronic notices sent by the Clerk's office when a document is

1    electronically docketed, yet she charged one-tenth of an hour each

2    time.  On June 3, 2009, Sage Reeves spent .2 of an hour drafting an

3    "email to clients re mediation location and directions," which appears

4    to entail nothing but logistics.  And in September and October of

5    2009, an unidentified attorney by the initials of "M.D." (who the

6    court presumes is Matthew D. Strugar, who bills at $400 per hour)

7    spent half an hour "preparing" to mail declarations and cover letters

8    to the named Plaintiffs, spent .6 of an hour compiling and assembling

9    exhibits for the declaration of Barrett Litt, and spent .9 of an hour

10   compiling documents for the fee motion and settlement approval, none

11   of which required an attorney's skill, and especially not one at $400

12   an hour.

13        Rather than chronicle every improper entry here, the Court has

14   reviewed the entries Mr. Jardini identified as "overhead" and deducts

15   3.65 hours spent on clerical and administrative work that were

16   improperly billed at attorney rates.[8]

17        Next, the City claims that the DRLC attorneys spent an excessive

18   73.5 hours conferring among themselves and an excessive 56.6 hours

19   conferring with MTO attorneys.  Mr. Jardini proposes – without legal

20   authority or factual support – that the 73.5 hours be reduced by half

21   to 36.75 and the 56.6 hours be eliminated entirely.[9]  The Court will

22

23        [8]The Court notes that, on June 10, 2008, a law clerk billed 6.3
     hours for "Discovery matter: indexed defendant's initial disclosures."
24   That task could have reasonably required the expertise of a law clerk
     or paralegal, especially if some sort of summary or analysis of the
25   documents was required.  Thus, it was compensable at the law clerk
     rate of $165 per hour.
26
          [9]On the hours spent conferring with MTO attorneys, the Court only
27   presumes Mr. Jardini proposes eliminating the hours entirely, based on
     the summary chart included in his declaration (Jardini Decl. ¶ 49)
28                                                          (continued...)

                                     21

not do so.

There is nothing inherently wrong with conferencing with co-counsel in a case; in fact, "conferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation." McKenzie v. Kennickell, 645 F. Supp. 437, 450 (D.D.C. 1986) ("Such supervision is necessary to avoid wasteful or disorganized efforts by inexperienced lawyers keeping fee claims within reasonable bounds."); see also Berberena v. Coler, 753 F.2d 629, 632–33 (7th Cir. 1985) (finding compensable the hours attorneys "spent mostly in consultation, negotiation, and on the telephone," which "were of key importance to obtaining the consent decree" in the case). Conferences are especially important in cases like this one, where more junior attorneys took the laboring oar while more senior attorneys supervised, because "meetings between junior and senior lawyers to discuss the progress of research and review completed assignments are reasonable and appropriate means to secure proper supervision and efficient staffing of large class actions cases such as this." McKenzie, 645 F. Supp. at 450.

Moreover, the total number of hours the City complains were excessively spent on consultation – 130.1 – amounts to just under twelve percent of the total 1102 hours spent. Given that the parties conducted only limited discovery, no motion work, and the case settled before going to trial, it is unremarkable that conferences accounted for this proportion of time. The City provides no cogent reason why

------

[9](...continued)
because his actual testimony in this section of his declaration is unintelligible (Jardini Decl. ¶¶ 43–44).

this amount of conferencing was excessive, and the Court finds none.[10]
See Prison Legal News v. Schwarzenegger, 561 F. Supp. 2d 1095, 1104
(N.D. Cal. 2008) (rejecting request to reduce fees by eight percent
for excessive conferences because "Defendants have provided no
evidence or argument that any conference was excessive or
duplicative.").

Next, the City points out several entries it claims are the
result of duplicative billing errors and requests a reduction of 10.3
hours.  The DRLC attorneys conceded that 3.7 hours were billed by
Tiffany Green in error and half an hour was billed by Sage Reeves in
error (and those deductions are already reflected in the 1102 hours
sought by Plaintiffs).  They argue that the other entries were correct
for a simple reason: the same attorney can work on the same task at
two separate times in a single day.  Indeed, all the remaining
"errors" that Mr. Jardini points out appear to fall within that
category, and, in some instances, even reflect different amounts of
time spent on the same task.  The Court finds Plantiffs' explanation
reasonable and will not deduct the remaining 6.1 hours from the total
hours spent.

Finally, the City argues that the DRLC spent an excessive number
of hours drafting the settlement agreement in this case, which Mr.
Jardini calculates at 46.4 hours.  Mr. Jardini instead suggests that
the proper number should be twenty-four hours because the settlement
in this case was similar to the settlement agreement in a similar case
litigated before this Court.  See Valenzuela v. County of Los Angeles,

---

[10]Even the City's own expert, Mr. Jardini, opined in another case
that conferences among co-counsel are not unreasonable, but beneficial
to a case.  (Parks Reply Decl., Ex. E at 7-8.)

No. CV 02-902 ABC (JWJx).

The Court rejects the request for several reasons. First, Mr. Jardini provides no explanation of how he arrived at the 46.4 hours, so the Court cannot tell whether that number accurately reflects only hours spent on drafting, or included hours spent on any other tasks related to the settlement agreement, such as research, conferences, consultation with clients, etc., and these tasks were obviously unique to this case. Second, while Mr. Jardini suggests that the hours were excessive because the DRLC attorneys could have simply copied portions of the settlement agreement in <u>Valenzuela</u>, Plaintiffs submit a detailed declaration from DRLC attorney Shawna Parks explaining that the negotiations over the contents of the settlement agreement here reflected "the needs of this case, including operational aspects of the LBPD, the specific problems encountered by people who are deaf or hard of hearing and who have interacted with the LBPD, and advances in technology since the <u>Valenzuela</u> settlement." (Parks Reply Decl. ¶ 6.) The Court has reviewed the two agreements and notes that the settlement agreement here was not simply a carbon copy of the settlement in <u>Valenzuela</u> and it is unsurprising that the parties spent a substantial amount of time finalizing it. (Parks Reply Decl. ¶¶ 7-9.) Thus, the Court declines to subtract any hours for this work.

### c. Total Hours Deducted

The Court concludes that Plaintiffs reasonably spent 1080.25 hours on the case, which reflects the following deductions from Plaintiffs' proposed 1102 hours:

- • - 12.4 hours spent by MTO associate Kristina Wilson on drafting the complaint;

- • - 3.7 hours spent by MTO associate Kristina Wilson to prepare for and attend the April 27, 2009, deposition;

- •   - 2 hours spent by DRLC attorney Tiffany Green on the complaint; and

- •   - 3.65 hours spent as clerical and administrative work, 1.45 of which was billed by Tiffany Green, .2 billed by Sage Reeves, and two of which were billed by attorney Matthew D. Strugar.

    4.   <u>Total Lodestar Amount</u>

Based on the above analysis, the Court calculates the lodestar amount as $421,458.75, which is broken down as follows:

| Attorney | Year of Graduation | Rate | Hours | Fees | Notes |
|---|---|---|---|---|---|
| **DRLC** | | | | | |
| Shawna L. Parks | 1999 | $525 | 99.00 | $51,975.00 | |
| Sage Reeves | 2001 | $475 | 263.20 | $125,020.00 | Reflects .2 hour reduction |
| Tiffany Green | 2005 | $375 | 221.95 | $83,231.25 | Reflects 3.45 hour reduction |
| Matthew Strugar | 2004 | $400 | 7.60 | $3,040.00 | Reflects 2 hour reduction |
| Law Clerks | | $165 | 81.80 | $13,497.00 | |
| **Subtotal DRLC** | | | 673.55 | $276,763.25 | |
| **MTO** | | | | | |
| Kristina Wilson | 2006 | $350 | 247.50 | $86,625.00 | Reflects 16.1 hour reduction |
| Bethany Woodard | 2005 | $395 | 118.70 | $46,886.50 | |
| Robert Dell Angelo | 1992 | $550 | 9.90 | $5,445.00 | |
| Law Clerks/Support Staff | | $65 to $220 | 30.60 | $5,739.00 | |
| **Subtotal MTO** | | | 406.70 | $144,695.50 | |
| | | | | | |
| **Total Lodestar** | | | 1080.25 | $421,458.75 | |

## B.   Use of a Multiplier

Plaintiffs seek to apply a multiplier of 1.5 to the lodestar amount under California law "to account for the contingent risk of the litigation and the extraordinary results achieved." Even though a multiplier is not available under federal fee-shifting statutes based

upon the contingency nature of a case, the Ninth Circuit has held that when a plaintiff is entitled to fees for both federal and California state claims, a federal court may apply a contingency multiplier under California law.  See Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478—79 (9th Cir. 1995).[11]  To determine whether a multiplier is appropriate, the Court considers factors similar to those considered under federal law, such as "the novelty and difficulty of the issues presented, the quality of counsel's services, the time limitations imposed by the litigation, the amount at stake, and the result obtained by counsel."  City of Oakland v. Oakland Raiders, 203 Cal. App. 3d 78, 83, 249 Cal. Rptr. 606, 609 (Ct. App. 1988).

While this case involves important issues and Plaintiffs obtained substantial relief, Plaintiffs are not entitled to a multiplier.  The case was not particularly difficult, given that the parties never needed to litigate applicable legal standards and the city all but conceded liability at the outset of the lawsuit.  Likewise, the DRLC has reached settlements in at least two other similar cases against municipalities.  (Parks Decl. ¶ 9.)  Furthermore, the lion's share of the work in this case was spent on negotiating a settlement agreement.  Negotiations began early in the case and enabled the parties to avoid

---

[11]Even under federal fee-shifting statutes, the Court may adjust the lodestar in light of additional considerations, including the results obtained. Hensley, 461 U.S. at 434.  However, a "strong presumption" exists that the lodestar figure represents a "reasonable fee" and should be enhanced only in "rare and exceptional cases." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986).  To overcome the strong presumption that the basic fee is reasonable, the fee applicant bears the burden of coming forward with "specific evidence" that the lodestar amount is unreasonably low. See Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000) (citing Delaware Valley, 478 U.S. at 565). This showing must be based on factors not already subsumed in the lodestar calculation. Id.

motion work and most discovery.  Counsel was certainly well-equipped to bring the case to a favorable resolution for Plaintiffs and the class, but the reasonable hourly rates to which Plaintiffs' attorneys are entitled more than adequately account for the quality of counsel's representation.  See Morales, 96 F.3d at 363–64 (noting that the Court may adjust lodestar figure "on the basis of the Kerr factors that are not already subsumed in the initial lodestar calculation.").  The Court also appreciates that Plaintiffs' counsel may have had to forego some other clients to pursue this case, but once again that fact is adequately reflected in the lodestar amount.  See id.

Plaintiffs cite Beasley v. Wells Fargo Bank, 235 Cal. App. 3d 1407, 1419, 1 Cal. Rptr. 2d 459, 466 (Ct. App. 1991), overruled on other grounds by Olson v. Auto. Club of S. Cal., 42 Cal. 4th 1142, 1151, 74 Cal. Rptr. 3d 81, 87 (2008), to argue that the purpose of using a contingency risk multiplier "is to compensate for the risk of loss generally in contingency cases as a class," (emphasis in original), and such a risk is present in disability class action cases (Parks Decl. ¶¶ 34–37; Stormer Decl. ¶ 15).  Yet, the DRLC has brought several cases involving deaf or hard-of-hearing individuals against public entities and those cases have settled, suggesting the risks in these specific types of cases are not so high that a multiplier is necessary to assure class action plaintiffs obtain representation.[12]

The Court has already calculated the lodestar amount at over $400,000, more than twice the amount of fees to which the DRLC agreed in the Valenzuela case.  The Court recognizes that the settlement here

---

[12]The Court notes as well that the lodestar amount of fees, including any enhancement, assessed against the City would fall on the taxpayers.  See Serrano v. Priest, 20 Cal. 3d 25, 49, 141 Cal. Rptr. 315, 328 (1977).

was harder-fought than the one in <u>Valenzuela</u> and some of the issues raised in this case were different from those in <u>Valenzuela</u>, but those differences are adequately reflected in the lodestar.  Applying a multiplier on top of that is unwarranted.

**C.  Reasonable Costs**

Plaintiffs also seek reimbursement for costs expended in the litigation in the amounts of $2,367.25 to the DRLC and $8,011.70 to MTO.  (Parks Decl., Ex. A.)  The City does not dispute that Plaintiffs are entitled to costs generally.  <u>See</u> 42 U.S.C. § 12205; Cal. Code Civ. Proc. § 1032(b).  Nor does the City dispute that the DLRC should recover the full $2,367.25 it seeks.  Thus, the Court awards the DRLC its full $2,367.25 in costs.

The City does dispute the amount sought by MTO, however.[13]  Mr. Jardini identifies two possible duplicate entries on the costs billing records submitted by MTO: (1) a duplicate charge of $30 for a filing fee on June 25, 2008; and (2) a duplicate charge on March 10, 2009, for a court reporter for a deposition to occur on April 27, 2009.  As to the first charge, it appears that the entries were not for "filing fees," but each was for a "Certified Case Records Request" to the Superior Court.  It is possible that these two entries are not duplicates, but two separate requests.  But Plaintiffs were unable to respond to the City's argument because they belatedly filed a notice of errata and supplemental submission to which the City appropriately responded after briefing had otherwise concluded.  Therefore, the

---

[13]In their initial request, Plaintiffs omitted the itemized list of costs for MTO.  Following the City's filing of its opposition, Plaintiffs recognized the error and filed an errata including the missing information.  The City then filed a supplemental declaration from Mr. Jardini analyzing the costs.

1  Court accepts the City's explanation and subtracts $30 from MTO's

2  costs.

3       MTO's costs billing records also include a duplicate charge for a

4  court reporter at a deposition on April 27, 2009.  MTO's records

5  reflect that Kristina Wilson paid $1,143.22 to Barkley Court Reporters

6  on March 10, 2009, in advance of a deposition scheduled on April 27,

7  2009.  A second entry on July 23, 2009, reflects that MTO attorney

8  Bethany Woodard also paid $1,143.22 to Barkley Court Reporters for a

9  deposition on April 27, 2009.  Both entries share the same invoice

10 number of 368523 and nothing in the entries indicates that they were

11 intended to be separate payments.  Again, because Plaintiffs' notice

12 of errata and the City's response came after the close of briefing and

13 Plaintiffs provided no explanation of the duplication, the Court can

14 only conclude that these entries were in fact duplicative.  Thus, the

15 Court subtracts $1,143.22 from MTO's costs and awards a total of

16 $6,838.48 in costs expended by MTO.[14]

17      //

18      //

19      //

20      //

21      //

22      //

23      //

24

25      [14]Mr. Jardini also renews his opinion that MTO's involvement in
26 the case was unnecessary and duplicative, and therefore subtracts
   costs from MTO's costs billing records to arrive at a total of
27 $5,072.54.  For the reasons discussed supra, the Court rejects his
   position that MTO attorneys were entirely unnecessary to the case and
28 declines to subtract any costs on that basis.

1    //

2    //

## C. Fees for the Fees Motion

Plaintiffs also seek fees for the time spent on the fees motion:

| Attorney | Year of Graduation | Rate | Hours | Fees |
|---|---|---|---|---|
| **DRLC** | | | | |
| Shawna L. Parks | 1999 | $525 | 35.10 | $18,427.50 |
| Matthew Strugar | 2004 | $400 | 21.50 | $8,600.00 |
| **Subtotal DRLC** | | | 56.60 | $27,027.50 |
| **MTO** | | | | |
| Kristina Wilson | 2006 | $350 | 23.80 | $8,330.00 |
| Bethany Woodard | 2005 | $395 | 36.60 | $14,457.00 |
| Robert Dell Angelo | 1992 | $550 | 2.20 | $1,210.00 |
| **Subtotal MTO** | | | 62.60 | $23,997.00 |
| | | | | |
| **Total Requested** | | | 119.2 | $51,024.50 |

The City does not dispute that Plaintiffs may recover fees for work done in litigating attorney's fees. See, e.g., Thompson v. Gomez, 45 F.3d 1365, 1366 (9th Cir. 1995). The City also does not dispute the amount presented by Plaintiffs of $27,027.50 for DRLC attorneys and $23,997.00 for MTO attorneys, for a total of $51,024.50.

The Court nevertheless feels compelled to reduce the amount of fees incurred on the fees motion by 10% for time spent on a frivolous dispute over the date of the hearing on this motion. The Court may, in its discretion, shave up to 10% off the fees sought without reviewing and commenting on billing records entry-by-entry. See In re Smith, 586 F.3d 1169, 1174 (9th Cir. 2009); Moreno, 534 F.3d at 1112. That includes deducting excessive hours spent on a fees motion. See Anderson v. Dir., Office of Workers Compensation Programs, 91 F.3d 1322, 1325 (9th Cir. 1996).

Plaintiffs originally filed this motion on November 23, 2009 and noticed the hearing for December 14, 2009. On December 1, 2009, the parties filed a stipulation with the Court purporting to move that hearing date. The stipulation did not clearly indicate which party drafted it (the document contained the City's counsel's caption, but the docket indicates that Plaintiffs' counsel filed it), but it was so deficient that the Court not only denied it, but made clear its displeasure with the parties' failures. (Docket No. 55.) The Court did, however, grant the parties the opportunity to refile it properly.

That should have been the end of the matter. But apparently the parties could no longer agree on the new hearing date, due in no small part to the Plaintiffs' obstinance. (See Docket No. 56.) To protect its interests in opposing the fees motion, on December 4, 2009, the City filed an ex parte application to set the new hearing date. In response, Plaintiffs' counsel filed a notice of non-opposition. They claimed the City acted prematurely in filing the ex parte application, but the City was right to act promptly, as the Court had already pointed out that the City missed the previous deadline to file its opposition to the fees motion, which could have resulted in forfeiture of any chance to oppose. (See Docket No. 55.) Plaintiffs never provided a good explanation as to why they had not simply worked with the City's counsel to file a new stipulation. The Court finds that the work spent on this motion practice – which the Court calculates at approximately 10% of the total work done on the fees motion – was unnecessary and unreasonable.

Moreover, even if the motion work were not unnecessary, the hours spent on it were grossly excessive. The Court need not – and will not – chronicle every excessive hour, but a few entries are worth noting.

For example, on December 7, 2009, the date the non-opposition to the ex parte application was filed, MTO associate Kristina Wilson spent 2.6 hours, for a total cost of $910, drafting the "notice of non-opposition to defendant's ex parte application to continue hearing dates; revise and file notice of non-opposition to defendants' ex parte motion to continue hearing dates." On the same date, MTO attorney Bethany Woodard also spent some part of one hour, at a cost of $395, conferencing regarding the non-opposition, as well as revising a draft of it. And then DRLC attorney Shawna Parks spent .4 hours, at a cost of $210, "receiv[ing] and review[ing] draft non-opp to briefing schedule on fees motion, edits to same." The Court can conceive of no justification for spending four hours at a total cost of over $1,500 on a document that should have been one line (maybe two if Plaintiffs felt compelled to explain their position) indicating Plaintiffs did not oppose the City's request.

Similarly, MTO attorneys spent 3.6 hours on December 4, 2009, at a cost of $1,350, conferencing with each other and with opposing counsel, and researching the law on ex parte applications. Again, the Court can identify no reason why MTO associates spent nearly four hours discussing and researching the ex parte application that asked for relief that Plaintiffs had previously agreed to.

The Court has reviewed the billing records for the motion work and concludes that a 10% reduction from Plaintiffs' requested fees on the fees motion is warranted, for a total reasonable award of $45,922.05. Of that, $24,324.75 goes to MTO and $21,597.30 goes to

the DRLC, which is proportionate to each firm's share of the original total fee amount requested.[15]

**III. CONCLUSION**

Based on the above analysis, the Court finds that Plaintiffs are the prevailing parties entitled to reasonable attorney's fees and costs. The Court further finds that Plaintiffs' counsel's hourly rates are reasonable and, after taking the deductions from the total hours as noted above, finds the hours spent were reasonable. The Court denies Plaintiffs' request to apply a multiplier. The Court also awards reasonable costs to Plaintiffs, except those deducted above, and awards Plaintiffs the fees spent in connection with the fees motion with a 10% reduction. Thus, the Court AWARDS Plaintiffs the reasonable fees and costs in the amount of $476,586.53, which breaks down as follows:

| DRLC Lodestar Fees | $276,763.25 | | MTO Lodestar Fees | $144,695.50 |
|---|---|---|---|---|
| DRLC Fees on Fees | $21,597.30 | | MTO Fees on Fees | $24,324.75 |
| DRLC Costs | $2,367.25 | | MTO Costs | $6,838.48 |
| | | | | |
| DRLC Total | $300,727.80 | | MTO Total | $175,858.73 |
| | | | | |
| Total Award | $476,586.53 | | | |

//

//

//

//

//

---

[15]In other words, MTO's share of the original $51,024.50 was $27,027.50, or 53%, and the DRLC's share was $23,024.50, or 47%. The Court has used those same proportions to determine the reduced award for each firm.

1      Plaintiffs are ordered to lodge with the Court **within 10 days of**

2  **the date of this Order** a proposed order that reflects the Court's

3  ruling.[16]

4      **IT IS SO ORDERED.**

5

6      DATED: January 11, 2010    _____

7                  AUDREY B. COLLINS
        UNITED STATES DISTRICT CHIEF JUDGE

---

[16]In conjunction with this Order, the Court has also signed the proposed Order granting preliminary approval of the class action settlement and class certification.  The parties should treat this Order as triggering paragraphs 9 and 10 of that Order for issuing class notice, for filing any counsel objections, and for calculating the hearing date on the final approval of the settlement, notwithstanding the Court's request here that Plaintiffs file a conforming proposed order on the attorney's fees and costs award.

1
2
3
4
5
6
7

8     UNITED STATES DISTRICT COURT

9     FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11    JUAN GAMINO, individually and as          CASE NO. CV-02-9785 CBM (Ex)
12    class representative; KATHY
      CONLEY, individually and as class         **ORDER AWARDING CLASS**
13    representative; ED FERREL,                 **COUNSEL ATTORNEYS' FEES**
      individually and as class representative,  **AND COSTS**
14

15              Plaintiffs,

16

17         v.

18    COUNTY OF VENTURA;
19    VENTURA COUNTY SHERIFF BOB
      BROOKS, individually and in his
20    capacity as Sheriff of Ventura County;
      DOES 1-10,
21

22              Defendants.

23

24         The matter before the Court is Plaintiffs' Motion for Attorneys' Fees (the
25    "Motion"). Upon consideration of the papers and arguments presented, the Court
26    GRANTS Plaintiffs' Motion.
27

28

**BACKGROUND**

This case is a class action on behalf of new arrestees booked into in the Ventura County Jail charged with violations of California Health and Safety ("H&S") Code §11550, who were strip searched pursuant to the then policy of the Ventura County Jail to do so without individualized suspicion. The case was settled on terms enumerated in the Preliminary Approval Order and documents attached thereto, and those terms will not be repeated here.

The custom and practice that was the basis of this lawsuit was ceased as a result of the litigation in the related action, *Way v. County of Ventura*, 445 F.3d 1157 (9th Cir. 2006) (hereafter *Way*) and this case. *Way* was an individual plaintiff case, also before this Court. *Gamino* was filed separately after *Way*, as a class action. After favorable decisions in this Court and the Ninth Circuit, granting summary judgment to plaintiff *Way* on liability, *Way* was settled for a total of $575,000. Of that amount, $500,000 was for fees and costs, and the remainder was for the plaintiff.

This case subsequently settled, after extensive mediation efforts. The Court approved the settlement at a hearing held on February 2, 2009. [Doc. No. 182.] Under the settlement, defendants would pay sums to class representatives, and various sums to class members who file claims, and would pay for the cost of class administration. In addition, defendants would pay $1,400,000 in attorneys' fees and costs, subject to the approval of this Court.

Plaintiffs filed a motion for attorneys' fees seeking the $1,400,000 award agreed to, based on both a class fund theory and a lodestar with a multiplier theory. For the reasons stated below, the Court awards Plaintiffs' counsel $1,400,000 in attorneys' fees and costs.

2

Case 2:12-cv-10863-DMG-FFM Document 194-2 Filed 06/08/15 Page 97 of 150 Page ID
#:2394
Case 2:02-cv-09785-CBM-E Document 185 Filed 02/05/2009 Page 3 of 14

1

## LEGAL STANDARD

2

It is well settled in the Ninth Circuit that, "[i]n a common fund case, the

3

district court has discretion to apply either the lodestar method or the percentage-

4

of-the-fund method in calculating a fee award." *Fischel v. Equitable Life*

5

*Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir.2002). "Reasonableness

6

is the goal." *Id.* at 1007. To calculate an award of reasonable attorney's fees,

7

courts use the lodestar formulation set forth in *Hensley v. Eckerhart*, 461 U.S. 424,

8

433 (1983), which instructs the court to take the number of hours reasonably

9

expended on the litigation and multiply it by a reasonable hourly rate. In

10

determining the "lodestar figure," courts must consider the *Kerr* factors:

11

12
13
14
15
16
17

(1) the time and labor required, (2) the novelty and difficulty of the
questions involved, (3) the skill requisite to perform the legal service
properly, (4) the preclusion of other employment by the attorney due
to acceptance of the case, (5) the customary fee, (6) whether the fee is
fixed or contingent, (7) time limitations imposed by the client or the
circumstances, (8) the amount involved and the results obtained, (9)
the experience, reputation, and ability of the attorneys, (10) the
"undesirability" of the case, (11) the nature and length of the
professional relationship with the client, and (12) awards in similar
cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

18

## DISCUSSION

19

### A. The Time and Labor Expended By Counsel

20

Counsel efforts in litigating this case were substantial. The work performed

21

included: 1) extensive investigation of the underlying circumstances, including

22

speaking with scores of class members; 2) preparation of the complaint; 3) the

23

Rule 26 conference and report; 4) three requests for production of documents; 5)

24

extensive analysis of documents produced; 6) three set of interrogatories; 7) 12

25

depositions; 8) three discovery motions; 9) a motion to compel Sheriff Brooks'

26

deposition; 10) three summary judgment motions; 11) two published appeals in

27

*Way* (one remanding because appealed order was not final for purposes of appeal,

28

and the second upholding this Court's grant of summary judgment to Plaintiff

3

1  Way); 12) preparation and mailing of first class notice (pre-settlement); 13)

2  handling of hundreds of class members' calls after mailing of first class notice; 14)

3  retention of data consultants and extensive analysis of computerized jail data; 15)

4  list of charges qualifying as charges of violence, weapons or drugs for purposes of

5  the different levels of class claims; 16) three days of unsuccessful mediation efforts

6  with Ret. Magistrate Judge Edward Infante (including multiple mediation

7  sessions); 17) four mediation sessions with Magistrate Judge Charles Eick;

8  18) preparation of a 14-page mediation letter in anticipation of mediation with

9  Ret. United States District Judge Raul Ramirez; 19) two days of mediation sessions

10  with Judge Ramirez; 20) and negotiation and preparation of settlement documents,

11  including settlement agreement, preliminary and final approval orders, class notice

12  and claim forms.

13

14  In summary, the time and efforts expended by Class Counsel were extensive

15  and involved all that occurs in a case that is being prepared for trial.

16  **B.    The Novelty and Difficulty of the Issues and Counsel's Skill**

17  The issues involved in this case involve complex issues of constitutional law

18  in an area where considerable deference is given to jail officials, as the Ninth

19  Circuit recognized in the partial summary decision in this case. *See Way v. County*

20  *of Ventura, supra,* 445 F.3d at 1161 (9th Cir.2006) ("We recognize the difficulty of

21  operating a detention facility safely, the seriousness of the risk of smuggled

22  weapons and contraband, and the deference we owe jail officials' exercise of

23  judgment in adopting and executing policies necessary to maintain institutional

24  security."); *see also Craft v. County of San Bernardino*, 468 F.Supp.2d 1172,

25  1176 (C.D.Cal. 2006) (quoting *Way*).

26  The *Way* case, which provided the legal foundation for the settlement here

27  (as the parties stipulated that the outcome of *Way* would govern liability here),

28  involved difficult questions of constitutional law. A good snapshot of the state of

4

1   the law at the time is contained in *Way v. County of Ventura,* 445 F.3d 1157, 1159

2   (9th Cir.2006), where the Court provided the following summary:

3

4          Way brought this civil rights action ... alleging that they violated her
           civil rights under the Fourth and Fourteenth Amendments by
5          subjecting her to a body cavity search following her arrest. The parties
           both filed motions for summary judgment. The district court held that
6          the search violated *Way*'s constitutional rights because individualized
           suspicion is required for arrestees who are not admitted to the general
7          jail population. It denied qualified immunity to Brooks and Hanson on
           the basis of *Giles v. Ackerman,* 746 F.2d 614, 616-17 (9th Cir.1984)
8          (per curiam), *overruled on other grounds by Hodgers-Durgin v. de la
           Vina,* 199 F.3d 1037, 1040 n.1 (9th Cir.1999) (en banc); *Kennedy v.
9          Los Angeles Police Dep't,* 901 F.2d 702, 711 (9th Cir.1990) (as
           amended), *implied overruling on other grounds recognized by Act
10         Up!/Portland v. Bagley,* 971 F.2d 298, 301 (9th Cir.1992); and *Fuller
           v. M.G. Jewelry,* 950 F.2d 1437, 1446 (9th Cir.1991), holding that a
11         reasonable officer reviewing Ventura's policy and the established law
           would have recognized that the Sheriff Department's policy was
12         unconstitutional because it did not further any legitimate penological
           interests. That ruling is the subject of this appeal.

13         What was distinct about this case and the *Way* case was that it involved strip

14  searches of arrestees charged with a drug offense. The Ninth Circuit had ruled long

15  before that the involvement of drugs supplied reasonable suspicion for a strip

16  search. *See, e.g., Thompson v. City of Los Angeles,* 885 F.2d 1439, 1447 (9th Cir.

17  1989) (reasonable suspicion may be supplied by the nature of the charge).

18         Thus, the plaintiff in *Way* had to prevail on the argument that being under

19  the influence of drugs was fundamentally different in kind from possession or

20  trafficking in drugs and did not provide reasonable suspicion for a strip search.

21  Plaintiff succeeded in that contention, paving the way for the current settlement.

22
    *See Way*, 445 F.3d at 1162 ("We cannot see how the charge of being under the
23
    influence of a drug necessarily poses a threat of concealing (and thereby using or
24
    trafficking) additional drugs in jail during the limited time between booking and
25
    bail, or booking and placement in the general population. If not, it was
26
    unreasonable to assume that *Way* harbored drugs in some cavity or other.").
27
28  Plaintiff ultimately prevailed before the Ninth Circuit, which acknowledged it had

    never directly addressed the issue in deciding that the Sheriff was entitled to

                                            5

Case 2:12-cv-10863-DMG-FFM   Document 194-2   Filed 06/08/15   Page 100 of 150   Page ID
#:2397
Case 2:02-cv-09785-CBM-E   Document 185      Filed 02/05/2009   Page 6 of 14

1

2

3

4

5

6

7

qualified immunity. *Id*. ("we had never previously addressed the constitutionality of a body cavity search policy premised on the nature of this or any other drug offense. More importantly, we had held that the nature of the offense alone may provide reasonable suspicion [citation omitted], and twice pointed to charges involving drugs, contraband and violence as the kind of offense that might give rise to reasonable suspicion.").

8

9

10

11

12

13

14

15

16

17

18

    In addition, properly handling the data in cases of this type requires a high degree of sophistication. In cases like this, proper use of the data is the factual key to the case (along with establishing the policies or customs being challenged, which occurred during the *Way* case). It is through the data that members of the class are identified. This is usually a sophisticated process, requiring counsel familiar with both the facts of the case and how to use the data. Jail data is not configured to straightforwardly answer the questions for which answers are needed to determine class composition. Code has to be written to take all of those factors into account. Then the analysis has to be discussed between Plaintiffs and Defendants, in order to work out agreement on the data issues. All of this occurred here.

19

20

21

22

23

24

25

26

27

28

    There are relatively few attorneys qualified to handle the data issues in a case such as this to the maximum degree of effectiveness. When Mr. Barrett Litt came into the case, Plaintiffs had not yet undertaken an independent data analysis. After Mr. Litt's entry, data consultants he had used previously analyzed all the data. As a result, the class list changed. In addition, an entire group of individuals were identified for whom no determination could be made based on the available data as to whether they were strip searched. This is because, for the earlier part of the class period, the data only captured the lead charge, but there may have been a secondary §11550 charge on the basis of which the arrestee was strip searched.

6

Case 2:12-cv-10863-DMG-FFM   Document 194-2   Filed 06/08/15   Page 101 of 150   Page ID
#:2398
Case 2:02-cv-09785-CBM-E     Document 185     Filed 02/05/2009     Page 7 of 14

1    The solution to this problem was developed through the use of the Possible Class

2    Member mailing.

3              **C.      The Risks Of Non-Payment Assumed By Counsel and Preclusion**
                        **of Other Employment**
4

5         Plaintiffs' counsel faced a substantial risk of non-payment, in part because

6    counsel took this case on a contingency fee basis. Obviously, the County had the

7    resources to pay a judgment. However, the risk lay in establishing that the

8    County's policies were illegal. As discussed previously, strip search litigation in

9    general is inherently risky because of the deference given jail officials, and because

10   there is a split in circuits developing. Seeking large amounts of money from

11   government entities always carries risks of politics entering into the equation.

12        Declarations filed in support of Plaintiffs' motion for attorneys' fees from

13   experienced class and civil rights lawyers noted several particular difficulties in

14   litigation of this kind, including 1) particular challenges and expertise exist to

15   establish a policy or custom under *Monell v. Dept. Soc. Serv.,* 436 U.S. 658, 690

16   (1978); 2) great deference is given to jails in addressing security issues; 3) the law

17   often differs from circuit to circuit; and 4) there is a greater risk than normal that

18   the whole legal landscape could change by virtue of a change in the law,

19   particularly if the Supreme Court addresses the issue (which it has not done in the

20   area of strip searches of pre-trial detainees since *Bell v. Wolfish,* 441 U.S. 520

21   (1979), almost 30 years ago. The Court agrees that all of these reflect risks for

22   Plaintiffs' counsel in pursuing litigation of this type.

23        Class counsel, particularly Mr. Earnest Bell, declined substantial other work

24   to pursue this case. These two cases combined (*Way* and *Gamino*) spanned many

25   years when the outcome was uncertain. Over 2000 hours were devoted to the

26   combined *Way* and *Gamino* cases.

27

28

                                            7

Case 2:12-cv-10863-DMG-FFM  Document 194-2  Filed 06/08/15  Page 102 of 150  Page ID
#:2399
Case 2:02-cv-09785-CBM-E    Document 185    Filed 02/05/2009    Page 8 of 14

## D. The Result Obtained For The Class

This case was hard fought. The *Way* case, in which the key merits issues were fought out, went through extensive briefing in this Court and the Ninth Circuit. The Plaintiffs were individuals of little means. All the work was performed on a contingent fee basis. The settlement was the result of arm's length negotiations entered only after Plaintiff won the *Way* case. Even then it required over a year of settlement efforts, and the addition of Mr. Litt to Plaintiffs' attorney team, to reach a settlement.

The financial terms of the settlement are very favorable to class members. Those not charged with crimes of violence or involving other drug charges receive $2300 for a first offense and $700 for a second offense. This is considerably higher than the average recovery in other strip search class actions. (*See* B. Litt Dec. at ¶ 35, [Doc. No. 176], filed concurrently with Plaintiffs' Motion.) While this is partly explained by the scale of the other cases compared to this one, the fact remains that class members are receiving very favorable payments. In addition, even those charged with other drug charges or crimes of violence are participating in the settlement, even though the law in this Circuit is that such charges provide reasonable suspicion to strip search pre-arraignment arrestees. All of this is due exclusively to Class Counsel's efforts.

Nor can the results in this case be judged solely by the monetary component of the settlement. As a result of the combined *Way* and *Gamino* litigation, the County long ago ceased all of the strip search practices addressed in this settlement. That is a major accomplishment, particularly in light of the standing limitations imposed on such cases. Thus, as a result of Class Counsel's efforts, tens of thousands of future inmates have been spared the "embarrassing and humiliating experience", and "extensive intrusion on personal privacy", that a strip

1   search, "regardless of how professionally and courteously conducted", necessarily

2   entails. *Hunter v. Auger,* 672 F.2d 668, 674 (8th Cir.1982).

3   ### E.   Experience, Reputation and Ability of Class Counsel

4       Class Counsel are highly experience litigators in the fields of civil rights and

5   class actions. Mr. Litt is widely known as one of the foremost civil rights attorneys

6   in California, having a particular expertise in civil rights class actions and other

7   complex multi-party civil rights cases, especially law enforcement class actions.

8   He has both spoken and published on the issue of strip search and law enforcement

9   class actions at some length, and is counsel in several other pending class actions,

10  both in California, and in other parts of the country (Washington, D.C., Baltimore

11  and Atlanta). In addition, he has several $1 Million plus civil rights trial verdicts,

12  including a $22.5 Million verdict against the City of Long Beach, which is the

13  largest Fair Housing verdict on record. He has settled three strip search class

14  actions for eight figure sums, aside from this one. (*See* Dec. of B. Litt at ¶¶ 1-12,

15  and his curriculum vitae attached as Exhibit 1.)

16

17      Mr. Bell is an experienced civil rights litigator, who has practiced primarily

18  in Ventura County, and has been the most prominent plaintiffs' police abuse

19  attorney in Ventura County for many years. He litigated the *Way* case through the

20  Ninth Circuit and settlement. In addition, Mr. Bell litigated the first part of the

21  *Gamino* case and brought in Mr. Litt when he determined that the settlement

22  process would be aided by a civil rights lawyer experienced in class actions.

23  ### F.   The Reaction Of The Class

24      The reaction of the class was very favorable. There were no objections to

25  the settlement. There were only five opt-outs (which is approximately 1/10 of 1%).

26  Over 1000 Claim Forms were timely filed.

27

28

9

Case 2:12-cv-10863-DMG-FFM Document 194-2 Filed 06/08/15 Page 104 of 150 Page ID
#:2401
Case 2:02-cv-09785-CBM-E Document 185 Filed 02/05/2009 Page 10 of 14

### G. $1,400,000 Is A Reasonable Fee In This Case

In this case, Plaintiffs' counsel seek an award of $1.4 Million, in addition to the $500,000 received in the *Way* case. This encompasses both fees and costs. (Costs are relatively modest, totaling under $15,000, which includes all the specialized data work performed by consultants retained by Plaintiffs.) The table below reflects the lodestar calculation for Plaintiffs' counsel's work in this case.

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| Earnest Bell | $600 | 1,602.50 | $961,500.00 |
| Barrett S. Litt | $750 | 187 | $140,250.00 |
| Charla Gray | $275 | 5.3 | $1,457.50 |
| Julia White | $235 | 37 | $8,695.00 |
| **Total** | | | **$1,111,902.50** |

The rates used here are reasonable. Mr. Bell and Mr. Litt have been attorneys since 1988 and 1970, respectively. (Dec. of B. Litt at ¶ 3; Dec. of E. Bell at ¶ 2, attached as Exhibit 2 to Dec. of B. Litt.) Combined, they have 60 years' litigation experience. Mr. Bell, an attorney with 21 years' experience, is the leading plaintiffs' police practices civil rights attorney in Ventura County. (Dec. of E. Bell at ¶¶ 2, 5.) Over the last several years, police misconduct cases have comprised about 90% of his practice. (*Id*. at ¶ 5.) Mr. Litt has 38 years' experience and for the last 25-30 years has focused his practice on complex civil litigation in the areas of constitutional law, civil rights law, class action litigation and complex multi-party litigation. (Dec. of B. Litt at ¶ 3.) In the area of class actions against jails for violation of civil rights involving strip searches, specifically, Mr. Litt is considered one of the leading plaintiffs' lawyers in the country. (*Id*. at ¶ 8.) The rates used by Mr. Bell and Mr. Litt are comparable to Los Angeles market rates for complex litigation. (*See id*. at ¶¶ 10-21; Dec. of E. Bell at ¶ 11.)

In addition, numerous declarations have been filed that were submitted in *Craft v. County of San Bernardino*, 2008 WL 916965 (C.D.Cal. April 01, 2008),

10

establishing the reasonableness of these rates, and those declarations are a year out of date. Mr. Litt also submitted a declaration establishing that his then current rates have frequently been awarded by courts, and that the rates here reflect his firm's current rates.

In *Craft*, District Judge Stephen Larson, using 2007 rates, found that "rates ranging from a high of $725 per hour for Mr. Litt to a low of $275 for 2006 graduates, as well as law clerk rates of $200 per hour and paralegal rates from a low of $110 to a high of $225 per hour" were "supported by numerous declarations... establish[ing] that the hourly rates set are similar to those for attorneys of comparable skill and experience at the rates paid for complex federal litigation" and that "the rates sought are reasonable and reflect the market for attorneys of comparable skill, experience and expertise in complex federal litigation." *Craft*, 2008 WL 916965 at 9. Judge Larson also noted that it "was Congress' intent for civil rights cases [to use the standard of complex litigation in setting civil rights fee rates]. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-576 (1986) (quoting Senate Report, at 6, U.S. Code Cong. & Admin. News 1976, p. 5913, *supra*, (Congress intended civil rights fees to be comparable to that for 'other types of equally complex Federal litigation, such as antitrust cases')." *Id.*

Plaintiffs anticipate that the lodestar will increase by approximately $100,000 plus in the course of the remaining work on the case, including work between now and the settlement and work over the ensuing period through the final distribution of the funds. (The post-settlement work is expected to be somewhat extensive due to the process of deciding issues such as which possible class members are in fact class members, lien issues and the like). Thus, the total lodestar is approximately $1.2 Million. The total fee award, including the $500,000 awarded in *Way*, is $1.9 Million, which would result in a multiplier of approximately 1.6 ($1.2M x 1.6 = $1.9M).

Case 2:12-cv-10863-DMG-FFM   Document 194-2   Filed 06/08/15   Page 106 of 150   Page ID
#:2403
Case 2:02-cv-09785-CBM-E     Document 185     Filed 02/05/2009     Page 12 of 14

1     This is a modest multiplier. Many class action cases have authorized far

2 higher multipliers. *See, e.g., Craft v. County of San Bernardino,* 2008 WL 916965

3 (C.D.Cal. 2008) (multiplier of 5.2 in strip search class action); *In re Charter*

4 *Communications, Inc., Securities Litigation,* 2005 WL 4045741, 18 (E.D.Mo.

5 2005) (multiplier of 5.61); *In re Rite Aid Corp. Sec. Litig,* 362 FSupp.2d 587

6 (E.D.Pa. 2005) (multiplier of 6.96); *Di Giacomo v. Plains All Am. Pipeline,* Nos.

7 H-99-4137, H-99-4212, 2001 U.S. Dist. LEXIS 25532, at 31, 2001 WL 3463337 at

8 10 (S.D.Tex. Dec. 18, 2001) (multiplier of 5.3); *Roberts v. Texaco, Inc.,* 979

9 F.Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5, plus fund set aside for post-

10 settlement work); *Bynum v. District of Columbia,* 412 F. Supp. 2d 73 (D.D.C.

11 2006) (multiplier of 2 in strip search class action); *Kuhnlein v. Department of*

12 *Revenue,* 662 So.2d 309, 315 (Fla. 1995) (class fund award of 10% of

13 $188,100,000, resulting in multiplier of approximately 15, reduced by Fla.

14 Supreme Court to multiplier of 5 times lodestar, because lodestar was proper

15 method under Florida law). See also cases cited in the Appendix in *Vizcaino v.*

16 *Microsoft Corp.,* 290 F3d 1043 (9th Cir. 2002) (containing several cases with

17 multipliers of three and higher).

18     In this case, Plaintiffs' counsel obtained a relatively expeditious and

19 "excellent result" in a "complex and risky case". *See Stop & Shop,* 2005 WL

20 1213926 (E.D.Pa.), *supra.* The *Way/Gamino* case, when initially filed in *Way,* was

21 a very risky case. The size of the recovery for class members is substantial. The

22 "skill and experience brought to bear by counsel throughout the year[s] they spent

23 actively litigating this case, and the economy with which they were able to achieve

24 such a noteworthy settlement" all speak to a substantial fee award. Further, "the

25 award is justified by the high caliber of Plaintiffs' counsels' work in this case." *Stop*

26 *& Shop, supra.*

**H.      Awarding Fees and Costs Requested Advances the Purposes of Class Actions in the Context of This Settlement**

Because of the structure of the settlement agreement, the $1,400,000 allocated to fees and costs is separate from the individual class members' recovery, *i.e.*, class members will not receive more if a lower fee is awarded.  An important purpose of the class action device is that defendants should not benefit from their wrongdoing, and should be deterred from doing so by being vulnerable to class actions to remedy their wrongful conduct. *See, e.g.*, Richard A. Posner, *Economic Analysis of Law* 626-27 (5th ed. 1998) ("the most important point from an economic standpoint is that the violator be confronted with the costs of his violation-this achieves the allocative purpose of the suit-not that he pays them to his victims").

Through the deterrence prism, the defendants would receive an unjustified windfall if the requested fees were not granted in full.  In addition, it is important to provide appropriate incentives for attorneys to undertake the risk of class litigation.  To the extent they are not properly awarded when they are successful, that undermines the deterrent purpose of the class action mechanism. As recent commentators have observed, if the economic interests of the class and counsel are misaligned, class counsel lose the incentive to maximize the benefit to the class because they do not participate, or do not fully participate, in the benefit of a larger recovery. *See, e.g.*, Myriam Gilles, *Exploding The Class Action Agency Costs Myth: The Social Utility Of Entrepreneurial Lawyers*, University of Pennsylvania Law Review, 155 U. Pa. L. Rev. 103 (November 2006).

## CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiffs' Motion for Attorneys' Fees.  Defendants are ordered to pay Class Counsel attorneys' fees and

13

Case 2:12-cv-10863-DMG-FFM   Document 194-2   Filed 06/08/15   Page 108 of 150   Page ID
#:2405
Case 2:02-cv-09785-CBM-E     Document 185      Filed 02/05/2009     Page 14 of 14

1  costs in the amount of $1,400,000 pursuant to Paragraph ¶ 26 of the parties'

2  Settlement Agreement [Doc. No. 171].

3

4          IT IS SO ORDERED.

5

6  DATED:   February 5, 2009          By _____

7                                        CONSUELO B. MARSHALL
                                         UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

## United States Court of Appeals for the Ninth Circuit

**Notice of Docket Activity**

The following transaction was entered on 02/10/2009 at 2:23:58 PM PST and filed on 02/06/2009

**Case Name:**    COUNTY OF LOS ANGELES v. USDC-CAC
**Case Number:**  09-70361

**Docket Text:**
Received notification from District Court re: payment of docket fee. Amount Paid: USD 450.00 Date paid: 02/06/2009. (JFF)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| P.C., etc., et al., | ) | No. CV 07-3413-PLA |
| Plaintiffs, | ) | **consolidated with** |
| v. | ) | |
| CITY OF LOS ANGELES, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| S.G.P., etc., et al., | ) | No. CV 07-6495-PLA |
| Plaintiffs, | ) | |
| v. | ) | |
| CITY OF LOS ANGELES, et al., | ) | |
| Defendants. | ) | |
| | ) | |
| P.C., etc., et al., | ) | No. CV 09-842-PLA |
| Plaintiffs, | ) | **ORDER RE MOTIONS FOR ATTORNEYS FEES AND COSTS** |
| v. | ) | |
| CITY OF LOS ANGELES, et al., | ) | |
| Defendants. | ) | |

On March 15, 2012, following a jury trial, a verdict in this civil rights action was returned in favor of plaintiffs and against six of the original ten named defendants.[1] The jury concluded that two defendants had used excessive force or failed to intervene in the use of excessive force against decedent, and that the excessive force was a substantial factor in his death; that six defendants (including the aforementioned two defendants) unreasonably denied medical care to decedent while he was in their custody and were negligent toward decedent; and that punitive damages against three of those six defendants were justified. On March 19, 2012, following a damages phase, the jury awarded damages of $870,000 to decedent's estate, $1,500,000 to plaintiff P.C., $400,000 to plaintiff S.G.P., $400,000 to plaintiff E.E., and punitive damages against defendant Meneses ($20,000), defendant Silva ($10,000) and defendant Arellano ($15,000). Plaintiffs have now filed two Motions for Attorneys Fees in which they seek: (1) attorneys fees pursuant to Fed.R.Civ.P. 54(d) and 42 U.S.C. § 1988 in the sum of $791,883.50, as well as costs, as to attorneys Dale Galipo, Humberto Guizar, Hilary Rau, and John Fattahi (the "First Motion"); and (2) attorneys fees in the sum of $49,282.50 as to attorney James P. Segall-Gutierrez (the "Second Motion"). Defendants have filed oppositions to both Motions, and Replies were filed to both the First Motion and the Second Motion. The Court has reviewed the documents submitted by the parties in connection with the Motions, and has considered the arguments presented by counsel at the hearing on September 12, 2012.

There is no dispute that plaintiffs are considered the prevailing parties in this action under § 1988. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see Defendants' Opposition to First Motion, at 4 ("plaintiffs are the prevailing party for purpose of awarding *reasonable* attorneys' fees and costs with respect to Officers Meneses, Silva, Flores, Chavez, Arellano and Vargas") (emphasis in original). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances. Accordingly, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Hensley, 461 U.S. at 429 (citations omitted). The applicant bears the burden of showing

---

[1] One defendant was dismissed at the start of trial, and the jury did not find liability as to three defendants.

an entitlement to an award and of documenting the hours expended and hourly rates (id. at 437); the opposing party then "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates v. Gomez, 60 F.3d 525, 534-35 (9th Cir. 1995). The question in these Motions is whether the requested amounts are reasonable under the statute. Plaintiffs contend that they are entitled to the requested fees, based on the nature of the case, the experience of counsel, the work involved, and the outcome of the trial. Defendants disagree, arguing that counsels' billing statements are too vague, counsel billed for improper activities and duplicative tasks, counsel seeks excessive amounts for an excessive number of attorneys, and the hourly rates sought are excessive.

The Court examines the "lodestar" in determining whether the requested fees are reasonable. The lodestar is obtained, first, by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Hensley, 461 U.S. at 433-34. Those hours that were not reasonably expended (such as when a case is overstaffed, or based on varying skills of the lawyers involved, or that are excessive or redundant) should be excluded. Id. A reasonable hourly rate under § 1988 is determined "according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Blum v. Stenson, 465 U.S. 886, 895 (1984).

The factors that may be considered in reaching a lodestar value and possible adjustment are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3.

Here, plaintiffs seek an award of fees of $791,883.50 in the First Motion based on the work of four attorneys. They assert that as of the filing of the First Motion, Mr. Galipo had spent 780.4

hours working on this case, and that a reasonable hourly rate is $700; that Mr. Guizar worked 358.5 hours, at a reasonable hourly rate of $500; that Hilary L. Rau worked 89.1 hours, at a reasonable hourly rate of $285; and that John C. Fattahi worked 102.4 hours, at a reasonable hourly rate of $400. In the Second Motion, attorney James P. Segall-Gutierrez represents that he worked 141 hours, at a reasonable hourly rate of $350, for a total of $49,350.[2] In support of these numbers, plaintiffs have submitted declarations from each attorney setting forth his or her legal experience, including in civil rights litigation, and their time records from this case. As for Mr. Galipo and Mr. Guizar, civil rights litigation is their area of expertise. Mr. Galipo and Mr. Guizar have also submitted declarations from attorneys not associated with this case setting forth their opinions as to the skills of these two lawyers, the prevailing hourly rates for attorneys with similar experience and skills, and the reasonableness of the hourly amounts sought by Mr. Galipo and Mr. Guizar.[3] Plaintiffs seek an additional $4,845 (17 hours of work by Ms. Rau at $285 per hour) for time spent drafting their Reply to the First Motion, and for work performed opposing defendants' Motion for New Trial.

In opposition, defendants argue that plaintiffs' counsel's billing statements are too vague, and that counsel billed for improper activities, duplicative tasks, excessive amounts and attorneys, and at excessive rates. In particular, counsel contends that Mr. Galipo rarely appeared in Court prior to the final pretrial conferences, and when he did appear he represented that he was not familiar with the case at that point; and that when Mr. Guizar would appear on behalf of plaintiff E.E., he "rarely had any idea as to how to move the case forward." Defendants assert that this was a "relatively straight forward case of excessive force," that the amount sought in the Motions is "extraordinary," and that four of the original officers accused in this action were either dismissed or not found liable by the jury. Examining each of the four attorneys in the First Motion,

---

[2]    While Mr. Segall-Gutierrez indicates that he worked a total of 141 hours at a rate of $350 per hour (which works out to $49,350) (Second Motion, at 6), he seeks a slightly lower recovery of $49,282.50. Second Motion, at 6, 8.

[3]    One of the declarations attached to Mr. Guizar's declaration indicates Mr. Guizar is seeking a fee based on $600 per hour (not the $500 per hour rate actually being sought), and that the $600 per hour amount is reasonable. See Guizar Declaration, Ex. D.

defendants contend among other things that courts have been reluctant to award a rate as high as that sought by Mr. Galipo even to attorneys with comparable experience; that he was playing catch-up as the trial progressed; that it is "unbelievable" he passed up taking on other cases while handling this matter given his busy schedule; that he and other counsel relied on defendants' exhibits as they were better organized; and that he was never available to discuss the case with opposing counsel. As for Mr. Guizar, defense counsel argues that his assertions concerning the number of successful jury trials he has handled are unsupported; that his contribution to this trial was minimal, he did not take part in any hearings regarding legal issues, and he did not ask meaningful questions even when he did appear at depositions; and that he was ill-informed about the status of the case, and in essence acted as an assistant to Mr. Galipo. Defendants next argue that Mr. Fattahi's billing rate at his former firm has no correlation to the type of work he did on this case.[4] Although defendants agree that he did most of the work on this case prior to trial, he is a third year attorney with minimal police litigation experience, and his duties -- including outlining issues for Mr. Galipo for depositions -- were comparable to those of a paralegal. Finally, Ms. Rau had only a year of experience as an attorney when this case went to trial, and she was only minimally involved.

Defendants further argue that although three separate lawsuits were involved in this consolidated action, they all involved the same allegations and officers arising from the same incident. Defendants were able to handle the case with one attorney alone; multiple attorneys were not necessary for plaintiffs. Similarly, multiple attorneys attended conferences, depositions, and hearings, often doing the same work. For example, Mr. Guizar attended depositions where he asked only a few questions, which were all objectionable, and billed for all of his time in trial even though he played only a minor role.

Defendants in the First Motion also present a challenge to the number of hours spent on specific billing entries for Mr. Galipo and Mr. Guizar, and more general challenges as to the other

---

[4] Attached to Mr. Fattahi's declaration is a declaration from a partner at the firm where Mr. Fattahi was an associate prior to going to work for Mr. Galipo. Mr. Fattahi's billing rate for paying clients in business litigation matters was $365 per hour.

two counsel. Citing specific examples (Opposition to First Motion, at 9-12), defense counsel contends in part that Mr. Galipo and Mr. Guizar are padding their hours; that fees should not be allowed for time spent by multiple attorneys attending the same hearings and depositions or for reviewing a case with another attorney involved in the same matter; that Mr. Guizar is guilty of "truly excessive billing," and his fee request is unreasonable given that his time was essentially spent "occupying a chair in court;" and that counsel is asking for compensation for deposition time above and beyond the length of the actual deposition. Next, counsel points out that Mr. Fattahi billed for many of the same items for which Mr. Galipo billed, including depositions, the review of reports and documents, and attending court conferences. He also prepared and reviewed documents even though Mr. Galipo and Mr. Guizar billed for the same items, and billed at an attorney rate for correspondence that could have been handled by a law clerk. Finally, Ms. Rau's contribution to the case was minimal, and her hours were duplicative, excessive and unnecessary.

Accordingly, defendants believe the hourly rate for each attorney in the First Motion should be reduced, that a reasonable number of hours is 200 hours for Mr. Galipo, 75 hours for Mr. Guizar, 51.2 hours for Mr. Fattahi, and no hours for Ms. Rau. They also seek a downward adjustment of the lodestar amount by 40% based on the fact that plaintiffs did not prevail as to four of the original ten defendants.

As to Mr. Segall-Gutierrez, defendants argue that he was only marginally involved in this case "until he abandoned it completely;" he did not appear at trial or at most depositions, did not generate pleadings or participate in negotiations, and did not discuss the case with opposing counsel. Defendants further contend that he was not permitted to appear to represent plaintiff E.E. in court; never discussed settlement with defense counsel (although he asserts that "plaintiffs' counsel" made efforts to settle the case); spent no time in trial; completely misrepresented a prior matter he claims to have settled for $25.5 million (and in fact abandoned his clients in that case, who received only a small portion of the over-all settlement, and that he had nothing to do with the settlement); misrepresented the nature of another case he settled; had nothing to do with the ultimate verdict in this action; and had minimal participation at most at the five depositions at which he appeared. Defendant thus contends that Mr. Segall-Gutierrez should not be awarded any fees.

As to the hours he claims, defendants argue that the time he spent reviewing pleadings and work generated by other attorneys involved nothing generated by him, and his skill and experience lent nothing to this case. Defendants list several examples of entries that, they submit, show that Mr. Segall-Gutierrez "is attempting to piggy-back his bill on the work of Mr. Galipo, and dip his hand into the treasury of the City of Los Angeles for legal work that he had nothing to do with." Opposition to Second Motion, at 9-11.

After considering the pleadings of the parties and declarations filed in support of their positions, and the oral argument of counsel, the Court accepts the rates of the four attorneys in the First Motion as falling within the prevailing market rate. Here, plaintiffs have submitted evidence that the rates sought by Mr. Galipo and Mr. Guizar are appropriate for attorneys of comparable skill, experience, and reputation. The rates established in the case L.H. v. Schwarzenegger, 645 F.Supp.2d 888, 894 (E.D. Cal. 2009), for San Francisco are appropriate to utilize as reflective of the market rates in a large California city. The Court notes that those rates are now a few years old, but the rates sought here are still within those set forth in L.H. See First Motion, at 6. When added to the declarations of outside attorneys attesting to the propriety of the requested rates, the Court will not deviate from those amounts as to Mr. Galipo and Mr. Guizar. As to Mr. Fattahi, however, the Court observes that at the time he started working on this case, he had only a few months experience in the area of civil rights litigation, and had less than two years of such experience when he ceased his work on this case. His **current** billing rate at his own firm, after six years as an attorney and three years specializing in civil rights litigation, is $400 per hour. The Court thus finds it appropriate to cut his requested rate by 20%, to $320 per hour. As for Ms. Rau, she only had months as a practicing attorney when she began her work on this case, and no experience in the area of civil rights litigation. The Court will also cut her requested rate by 20%, to $228 per hour.

Having reviewed all of the time entries of all counsel, the Court rejects defendants' assertions that Mr. Galipo's judgment as to the time he needed to prepare for what turned out to be a very successful trial for plaintiffs should be questioned. Aside from citing the numbers of hours sought for various tasks, the Court has not been presented with any sound rationale to

question his or Mr. Guizar's under oath declarations. Defense counsel's opinion as to Mr. Guizar's legal abilities, or the significance of his questions at depositions or his performance at trial, do not undercut his sworn statements. The fact that Mr. Galipo conducted the bulk of the trial does not mean that Mr. Guizar should not be entitled to his time preparing for and being at the trial. He represented different plaintiffs; his presence was proper and necessary. He also conducted some witness examinations and cross-examinations, and gave a closing argument. There was little repetition between the questions and arguments of Mr. Galipo and Mr. Guizar, which reflects time they spent coordinating their trial presentations. Defense counsel has not convinced the Court that the hours spent by these counsel on the various tasks "are well beyond what a reasonable attorney would claim." Further, many hours are claimed based on time spent by counsel reviewing depositions, statements and reports, and meeting with experts and preparing for expert testimony. The Court observed at trial that much of plaintiffs' case was based on a careful review and understanding of prior statements made by defendants, both immediately following the incident and at deposition. This review necessarily required many hours to compare, contrast, index and reference those statements. The Court also observed the importance of expert testimony at trial, and the need for a thorough comprehension and understandable presentation of expert opinions. The requested hours are not excessive.

Nor does the Court believe that reduction is needed when more than one attorney appeared at a deposition, or at a court hearing. First, at a minimum, one attorney for plaintiffs E.E. and S.G.P. and one attorney for plaintiff P.C. were entitled to attend and be compensated for such proceedings. Next, even if one plaintiff had multiple attorneys at a proceeding, this is not per se duplicative. "Duplicative hours are those where the presence of more than one attorney does not provide benefit to the client." Oberfelder v. City of Petaluma, 2002 WL 472308, *7 (N.D. Cal. Jan. 29, 2002) (citation omitted). As in Oberfelder, this Court does not find the presence of multiple attorneys at depositions, hearings or trial to be unreasonable or atypical, especially as multiple clients were being represented. Indeed, it is far more effective to judge a deponent's demeanor based on an attorney's actual in-person perception; the ability to effectively discuss case strategy and division of labor may well depend on multiple view points presented by multiple attorneys.

See, e.g., Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008) (recognizing that some duplication is necessary when litigation extends over years, and that it would be "the highly atypical civil rights case where plaintiff's lawyer engages in churning;" "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case"). The Court is also not persuaded that plaintiffs should not be able to recover for time beyond the hours actually spent at a deposition. Time preparing for and traveling to and from the deposition is also recoverable. So may counsel be awarded fees for time spent conferring with co-counsel.

However, the Court cannot conclude that Mr. Guizar's time spent writing letters to the mayor and other public figures, or preparing for a press conference, "contributed directly and substantially" to plaintiffs' litigation goals. See Gilbrook v. City of Westminster, 177 F.3d 839, 877 (9th Cir. 1999).[5] The Court will reduce the number of hours by 8 for letters to "Carillo on behalf of family," to the Mayor, for the family "regarding citizen compt [sic]", to the Police Commissioners, and to Senator Romero, and by 2 hours for time Mr. Guizar spent preparing for a press conference.

Defendants offer no persuasive reasons to reduce Mr. Fattahi's hours based on duplication of efforts. The fact that a team of lawyers prepared the case for plaintiffs does not mean that they should not be able to bill hours for talking to each other, or for an associate to prepare the attorney who will actually litigate the case. Finally, Ms. Rau took over for Mr. Fattahi when he left Mr. Galipo's office in July, 2011. The bulk of her time spent reviewing and updating documents is not unreasonable.

The Court rejects defendants' suggestion that the lodestar be reduced by 40% based on the percent of defendants as to whom no liability was established. The overall relief obtained by plaintiffs was substantial; the issues as to each defendant were substantially similar; and the hours attributable to the four non-liable defendants that were not also necessary for the other defendants

---

[5] Defendants object to, among other entries, 30 hours of time spent by Mr. Guizar writing letters to the mayor, police commissioner, and others, and 2 hours of time preparing for a press conference.

is insignificant. Nevertheless, the Court will reduce the overall number of hours being sought by all counsel in the First Motion by 10% to account for this factor, as well as to account for the relatively straight-forward nature of the litigation (i.e., little in the way of novel or complicated legal issues), the lack of substantiation that counsel was precluded from accepting other cases as a result of handling this matter, and some duplication of efforts based on changes in counsel during the course of this litigation.

As to Mr. Segall-Gutierrez, however, the analysis is quite different. In his declaration, he asserts that he worked on this case for approximately four years. He states in his Reply brief that he acted in the role of a "co-counsel" for plaintiff E.E., presumably with Mr. Guizar. Reply to Second Motion, at 3. His time records indicate that he first became involved in this action in August, 2007, was working regularly on the action until February 2010, but then had little involvement until February, 2012, an almost two-year gap. His activities after that time were limited to only a few hours, mostly involving the preparation of a declaration of his client. He was not involved in the trial of the case. While Mr. Segall-Gutierrez argues that his accomplishments as a civil rights attorney are attested to by his declaration and "the supporting declarations" (Second Motion, at 6), he submits no such supporting declarations.[6] His own declaration is filled with inconsistencies and/or errors. For example, he indicates that he attended law school until 1999, but has managed his own law firm since 1995. Segall-Gutierrez Declaration, at ¶¶ 7, 8. In his Reply brief, however, he indicates that he has been an attorney since 2005. He does not detail when he made the "natural transition" to civil rights litigation (id., at ¶ 8). While he may have settled two federal civil rights cases with the City of Los Angeles (and defendants offer strong evidence that he may be over-stating, if not misrepresenting, his involvement in those actions), he does not assert that he has **tried** any federal civil rights cases, or that he has tried any civil rights cases at all. Id., at ¶¶ 9, 10. One of his two "accomplishments" in civil rights cases "in the last eighteen months," i.e., prior to the signing of the declaration on May 9, 2012, occurred well over **three years** prior. Id., at ¶ 11. While he indicates that he specializes in police misconduct

---

[6]    The Second Motion, concerning Mr. Segall-Gutierrez, appears to be a "copy-and-paste" job of the First Motion, as to which there were supporting declarations.

civil rights litigation (id., at ¶ 12), his declaration does not support that assertion. As to the time he spent on this case, his time sheets include entries amounting to many, many hours for his "review" of documents prepared by others, but his contribution to those documents, or the necessity for him to review those documents to advance this litigation, goes unaddressed. His assertion that "the difficulty of this case and the skill, experience and ability necessary to prevail on this case" (id., at ¶ 14) warrants a fee of $350 per hour to him is not supported by anything contained in the Second Motion. Indeed, at the time he began work on this case, he had been an attorney for only two years. In the Reply to the Second Motion, Mr. Segall-Gutierrez does little to counter or even address the specific claims raised by defendants in their Opposition, other than to argue that he has been an attorney since December 2005, has worked on "several" civil rights cases, and that he worked 141 hours on this case and did not abandon his client. There is no evidence before the Court -- from co-counsel, from plaintiffs, or even from Mr. Segall-Gutierrez himself -- that the actual work done by Mr. Segall-Gutierrez contributed in any way to the final results in this case or provided a benefit to his client that was not being provided by Mr. Guizar. While he asserts that he "did not assume representation of Plaintiff; he was a co-counsel" (Reply to Second Motion, at 3), what he actually did as co-counsel that added to the advancement of the case is left largely to the imagination. The Court concludes that his contribution to this matter was minimal at best, and therefore reduces his number of hours to 60, at an hourly rate of $200. The 10% reduction discussed above is also appropriate as to Mr. Segall-Gutierrez' fees.

In sum, taking into account the 10% across-the-board adjustment to the number of hours, the deduction of 10 hours from Mr. Guizar, and the adjustment in the hourly rates of Mr. Fattahi and Ms. Rau, the Court awards attorneys fees based on the First Motion as follows: (1) Mr. Galipo -- 702.4 hours at $700 per hour ($491,680); (2) Mr. Guizar -- 313.7 hours at $500 per hour ($156,850); (3) Mr. Fattahi -- 92.2 hours at $320 per hour ($29,504); and (4) Ms. Rau -- 80.2 hours at $228 per hour ($18,285.60), **for an award on the First Motion of $696,319.60**. An additional award of **$3,876** is appropriate for the time spent opposing defendants' Motion for New Trial, and preparing the Reply to the First Motion (17 hours by Ms. Rau at $228 per hour). The court concludes that the **total award on the First Motion (**$700,195.60**)** does not amount to a windfall

to the attorneys involved. While the Court is not required to consider proportionality of fees to determine if the amount sought is reasonable, the Court notes that plaintiffs seek $791,883.50 based on a total jury award of over $3.2 million, or only about 25% of the amount awarded. The amount the Court is actually awarding is even less, about 22% of the amount awarded by the jury. As for the Second Motion, the Court awards attorneys fees to Mr. Segall-Gutierrez in the amount of **$10,800**, based on 60 hours at $200 per hour, with a 10% adjustment.[7]

**IT IS SO ORDERED**.

DATED: September 14, 2012

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7] Counsel for plaintiffs should advise the Clerk's Office that defendants' Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial has been denied, so that a determination on the previously-submitted Bills of Costs can be made.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

=============================================================================

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>       **DATE:** <u>August 2, 2012</u>

**TITLE:**       <u>Leonard Avila v. Los Angeles Police Department, et al.</u>

=============================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                  Not Present
Courtroom Clerk                                   Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**       **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                       Not Present

=============================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND LIQUIDATED DAMAGES** [Docket No. 170]

This matter is before the Court on Plaintiff Leonard Avila's ("Plaintiff") Motion for Attorneys' Fees and Liquidated Damages ("Motion"), filed May 3, 2012. Defendants Los Angeles Police Department ("LAPD"), City of Los Angeles, and Commander Stuart Maislin (collectively, "Defendants") filed an Opposition ("Opposition") on May 14, 2012, to which Plaintiff submitted a Reply ("Reply") on May 21, 2012. On May 14, 2012, Defendants filed a Request for Judicial Notice ("RJN") to which Plaintiff filed no objection. Therefore, the Request for Judicial notice is GRANTED. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for June 4, 2012. *See* Fed. R. Civ. P. 78(b). For the following reasons, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

I.       FACTUAL AND PROCEDURAL BACKGROUND

The instant action was brought under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 215(a)(3). Plaintiff is a former police officer employed by Defendant LAPD, and was terminated after he testified in the trial of a coworker regarding FLSA violations in his department. (Mot. 1, May 3, 2012, ECF No. 170.) On April 4, 2012, a unanimous jury determined that Plaintiff's termination was retaliatory, in violation of § 215(a)(3) of the FLSA. (Mot. 1.) Remedies are set forth in 29 U.S.C. § 216(b): "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Plaintiff also seeks liquidated damages in the amount of his jury award of $50,000. (Mot. 11.) Section 216(b) authorizes liquidated damages to plaintiffs prevailing on § 215(a)(3) claims:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title,

MINUTES FORM 11                                                                    ____ : 0
CIVIL GEN                          Page 1 of 12                Initials of Preparer __CCH__

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>        **DATE:** <u>August 2, 2012</u>

> including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

Plaintiff's Motion seeks a total of $748,522.50 in attorneys' fees, and liquidated damages of $50,000. (Mot. 14.) Defendants filed an Opposition, arguing that Plaintiff's calculations are inaccurate and that the attorneys' fees requested are excessive and unreasonable. (*See generally* Opp'n, May 14, 2012, ECF No.186.) Defendants also argue that Plaintiff is not entitled to liquidated damages. (Opp'n 15-19.) Plaintiff's Reply argues that his request is reasonable and that there is no basis for reducing the requested attorneys' fees. (*See generally* Reply, May 21, 2012, ECF No. 194.) Plaintiff also argues that liquidated damages are mandatory because Defendants do not have a "good faith" defense. (Reply 5.)

II.    DISCUSSION

       A.    Plaintiff's Request for Attorney's Fees

Section 216(b) authorizes the payment of attorneys' fees by a defendant when a plaintiff is successful in bringing a FLSA claim. 29 U.S.C. § 216(b). The Court holds that Plaintiff is thus entitled to such a recovery and now determines the appropriate amount. The district court uses the lodestar method to determine the appropriate amount of attorneys' fees. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Courts calculate the lodestar figure by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the attorney. *City of Riverside v. Rivera*, 477 U.S. 561, 568-69 (1986); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

Plaintiffs have used the lodestar method to reach a total of $748,522.50 in attorneys' fees. (Mot. 4-5.) The Motion asserts that lead attorney Matthew McNicholas's services are billed at $850 per hour. (Mot. 5.) Plaintiff claims that Mr. McNicholas worked over 500 hours on Plaintiff's case. (Mot. 5.) For Douglas Winter, Plaintiff requests 284 hours at $600 per hour. (Mot. 5.) Catherine Schmidt's 126.25 hours are billed at $550 per hour. (Mot. 5.) For Alyssa Schabloski's 42 hours, Plaintiff requests $450 per hour. (Mot. 5.) Cameron Fredman's 107.50 hours are billed at $350 per hour. (Mot. 5.) Finally, the services of paralegal Dawn McGuire are billed at $150 per hour, for 33.75 hours. (Mot. 5.) In addition to the attorneys at McNicholas & McNicholas, LLP ("McNicholas & McNicholas"), Plaintiff also retained the services of an additional attorney, Stuart Esner, to address the issue of exhaustion of judicial remedies. (Mot. 5.) For his 68.4 hours of work, Mr. Esner requests $400 per hour. (Mot. 6.) Defendants contest Plaintiff's calculations, for various reasons including both the hourly rates and number of hours applied in calculating the lodestar number. (*See generally* Opp'n.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>          **DATE:** <u>August 2, 2012</u>

1.      <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is based on the market rates of the region and the experience of the lawyer. *See Rivera*, 477 U.S. at 568-69; *McCown*, 565 F.3d at 1102. Defendants do not contest the hourly billing rates charged by Mr. Fredman and Ms. McGuire of $350 and $150 per hour, respectively. (Opp'n 10; Decl. of Mark K. Kitabayashi in Supp. of Opp'n ("Kitabayashi Decl.") ¶ 11, May 14, 2012, ECF No. 186-2.) Defendants also do not dispute the hourly rate of $400 charged by independent attorney, Stuart Esner. (Mot. 6; Kitabayashi Decl. ¶ 11.)

For Plaintiff's lead counsel, Mr. McNicholas, Plaintiff requests $850 per hour in attorneys' fees. (Mot. 5.) However, Defendants argue that this rate should be reduced to $600, the amount Mr. McNicholas was awarded in a related case, *Romney v. Bratton*, Case No. CV 09-3048-VPF (PLAx) (C.D. Cal. Dec. 1, 2011).[1] (Opp'n 10-11.) Defendants also note that Mr. McNicholas's request of $850 per hour far exceeds rates charged in the ninth decile by partners practicing in California. (Kitabayashi Decl. ¶ 10(a), Ex. A.) However, the data consulted by Defendants reports the average hourly rates for the entire state of California. (*See generally* Kitabayashi Decl. Ex. A.) This number is the average of all regions in California, including those with significantly lower costs of living than Los Angeles, where McNicholas & McNicholas practices. Thus, it is unreasonable to decrease Mr. McNichlas's rate simply because it exceeds rates charged in the ninth decile in California as a whole. However, the Court finds that Plaintiff's request for $850 per hour is excessive.

Plaintiff argues that this increased rate is supported by the rates he received in two recent cases. (Decl. of Matthew S. McNicholas in Supp. of Mot. ("McNicholas Decl.") ¶ 15, May 3, 2012, ECF No. 171.) In 2011, Plaintiff was retained at an hourly rate of $850 to negotiate a separation package. (McNicholas Decl. ¶ 15.) Plaintiff was also awarded an hourly rate of $800 in a recent case. (McNicholas Decl. ¶ 15.) The Court declines to award Plaintiff an hourly rate of $850 based upon these two outliers. As noted by Mr. McNicholas, his typically awarded rate is $650 per hour. (McNicholas Decl. 4-5.) In the most similar case to the present case, *Romney*, Mr. McNicholas claims he was awarded an hourly rate of $650. (McNicholas Decl. ¶ 15.) However, the Court recognizes that the experience of the attorney is relevant to calculating his appropriate hourly rate. In *Romney*, Mr. McNicholas succeeded in gaining his client a nearly $4 million jury verdict. (McNicholas Decl. ¶ 6.) It is reasonable for Mr. McNicholas to request a higher rate after winning

---

[1]  It is unclear whether Mr. McNicholas was awarded $600 or $650 per hour. Plaintiff's Reply states he was awarded $600/hour for his work in *Romney*. (Reply 4.) However, Mr. McNicholas states in his declaration that he was awarded $650/hour. (Decl. of Matthew S. McNicholas in Supp. of Mot. ("McNicholas Decl.") ¶ 15, May 3, 2012, ECF No. 171.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>     **DATE:** <u>August 2, 2012</u>

a significant award in a closely related case.  Therefore, the Court finds an hourly rate of **$700/hour** to be a reasonable rate for Plaintiff's lead counsel, Mr. McNicholas.

Defendants argue that the rates requested by Plaintiff's attorneys Mr. Winter, Ms. Schmidt, and Ms. Schabloski should be reduced.  (Opp'n 10; Kitabayashi Decl. 5.)  Mr. McNicholas has attested to the skill and expertise of these attorneys, rates charged in other cases, and their work product at McNicholas & McNicholas.  (McNicholas Decl. ¶¶ 17-21.)  Defendants make the unsupported assumption that because the rate charged by Mr. McNicholas exceeds what they believe to be a reasonable rate by 30%, the rates charged by the remaining attorneys should also be decreased by 30%.  (Kitabayashi Decl. ¶ 10.)  Defendants provide no other support for their argument that the rates charged by these attorney should be decreased other than noting once again that the rates charged by Plaintiff's attorneys exceed the rates charged in the ninth decile in California.  (Kitabayashi Decl. ¶ 10.)  However, as noted above, the rates indicated in Defendants' chart represent the average of rates charged by attorneys in all of California.  (Kitabayashi Decl. Ex. A 3-4.)  These rates are not indicative of a reasonable rate in Los Angeles.[2]  Without further evidence that the rates charged by Mr. Winter, Ms. Schmidt, and Ms. Schabloski are unreasonable, the Court  grants the rates requested in Plaintiff's Motion.  The Court awards Mr. Winter an hourly rate of **$600/hour**, Ms. Schmidt an hourly rate of **$550/hour**, and Ms. Schabloski an hourly rate of **$450/hour**.

    2.   <u>Reasonable Number of Hours</u>

In the Ninth Circuit:

> [t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.  The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged . . . .

*Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation omitted).  Plaintiff has submitted a declaration with an attached record of all time expended by his attorneys on the

---

[2] Defendants' argument that Mr. Winter's rate should be reduced because it exceeds rates charged in the ninth decile by partners in California also fails because this argument does not take into account Mr. Winter's experience.  (Kitabayashi Decl. ¶ 10(b).)  According to Defendants' own chart, a partner in the ninth decile with 22 years of experience (Kitabayashi Decl. ¶ 11; McNicholas Decl. ¶ 17) bills at $665/hr.  (Kitabayashi Decl. Ex. A, at 4).  Therefore, Defendants' argument is not a basis for reducing Mr. Winter's requested rate of $600/hr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **CV 11-01326 SJO (FMOx)**     **DATE:** **August 2, 2012**

matter, in fifteen minute increments. (*See generally* McNicholas Decl. Ex. 1.) The record includes not only the amount of time expended, but how the time was spent. (McNicholas Decl. Ex. 1.)

Defendants advance several theories as to why the number of hours used to calculate Plaintiff's lodestar should be reduced. (*See generally* Opp'n.) The Court will consider each of Defendants' theories individually.

        a.   Administrative and Clerical Work

Defendants argue that the number of hours worked by Plaintiff's attorneys should be reduced for all hours spent on administrative or clerical work. (Opp'n 12.) In support of their argument that that all hours spent on administrative and clerical work should be reduced by 100%, Defendants cite *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009). (Opp'n 12; Decl. of Gerald G. Knapton in Supp. of Opp'n ("Knapton Decl.") ¶¶ 25-27, May 14, 2012, ECF No. 186-3; Knapton Decl. Ex. 3A.) *Nadarajah* states that clerical tasks, such as tracking a package and assembling documents, billed by a **paralegal** should be subsumed in the firm's overhead rather than billed at the paralegal's rates. 569 F.3d at 921. Of the billing entries identified as clerical work by Defendants, the Court finds that only the printing of exhibits by McNicholas & McNicholas's paralegal on November 30,2011 and the 10.5 hours billed by "YB" at McNicholas & McNicholas constitute clerical work. (Knapton Decl. Ex. 3A.) The Court thus grants Defendants' request as to these hours and reduces the hours billed by paralegal McGuire by **1 hour**, and the hours billed by "YB" by **10.5 hours**.[3]

        b.   Duplicative Work

Defendants argue that Plaintiff's requested attorneys' fees should be substantially reduced for duplicative work. (Opp'n 12.) Alleged duplicative billings include: work repeated by various lawyers; internal conferences; responses to errors made by Plaintiff's attorneys; attendance of multiple attorneys at conferences and hearings; work done by Stuart Esner; and hours that attorneys spent consulting with each other. (Knapton Decl. ¶¶ 38-44.)

---

[3] It is unclear to the Court whether Plaintiff intended to bill the hours clocked by "YB". YB's 10.5 hours are not included in Plaintiff's breakdown of hours and hourly billing rates. (McNicholas Decl. 8; Mot. 5.) Yet, when the sum of hours billed by the attorneys at McNicholas & McNicholas is calculated, a total of $722,900 is reached. This is $262.50 short of the supposed $723,162.50 requested by Plaintiff for work by McNicholas & McNicholas alone (McNicholas Decl. 9; Mot. 5), exactly the amount the records show billed by YB (*see generally* McNicholas Decl. Ex. 1; Knapton Decl. Ex. 3A). Regardless of whether Plaintiff intended to request reimbursement for the work billed by YB, the Court determines that the $262.50 is inappropriate and will not include these fees in the award.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

### CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>        **DATE:** <u>August 2, 2012</u>

In support of their argument that internal conferences should not be billed, Defendants point only to memoranda issued by the Committee on Mandatory Fee Arbitration, created in 1998 and 2003, which specifically state that the memos have not been adopted by the State Bar and are intended to assist arbitrators in detecting bill padding. (State Bar of Cal. Comm. on Mandatory Fee Arbitration, Arbitration Advisory 98-03, Determination of a "Reasonable" Fee (June 23, 1998); State Bar of Cal. Comm. on Mandatory Fee Arbitration, Arbitration Advisory 03-01, Detecting Attorney Bill Padding (January 29, 2003); Knapton Decl. ¶ 38.) While the Court finds some of the techniques persuasive, the Court will not grant such broad, unspecific cuts without further evidence of duplicative work. Defendants argue that time spent by attorneys consulting one another should be eliminated as duplicative work. The Court declines to reduce Plaintiff's requested attorneys' fees for such a reason, because it is often necessary for attorneys working on a single project to meet and confer about the case in order to provide the best assistance possible.

Defendants also argue that hours spent by the attorneys at McNicholas & McNicholas working on Plaintiff's Opposition to Defendants' Motion for Summary Judgment are duplicative because another attorney, Stuart Esner, was retained to work on the Opposition. (Knapton Decl. ¶ 41.) However, Mr. Esner was retained solely to address the issue of exhaustion of judicial remedies. (Mot. 5.) Defendants have provided no argument to suggest that, because Mr. Esner was retained to address an issue, any work done by the attorneys at McNicholas & McNicholas themselves is necessarily duplicative. Thus, the Court declines to reduce the number of billable hours pursuant to this theory.

The Court agrees with Defendants that time spent on work that ultimately failed due to mistake and oversight of Plaintiff's attorneys is not compensable. (Knapton Decl. ¶ 39.) Therefore, for Plaintiff's attorneys' failure to timely file his motions in limine, the Court will deduct **11 hours** of the time billed by Mr. Winter and **1.75 hours** of the time billed by Mr. McNicholas. The Court will also deduct time spent by Plaintiff's attorneys on the preparation of an expert whom they failed to timely designate as an expert. The Court deducts **5 hours** of the time billed by Mr. Fredman, **12.75 hours** of the time billed by Mr. Winter, and **5.25** of the hours billed by Mr. McNicholas. The Court declines to deduct billable hours for counsels' failure to file a Writ regarding the Board of Rights findings.

c.    <u>Excessive Time Billed</u>

Defendants argue that the hours billed by Plaintiff's attorneys should be reduced because counsel billed excessive hours to complete certain tasks that should have been completed more efficiently. (Knapton Decl. ¶¶ 45-49.) Defendants also note that because Plaintiff's counsel bills in minimum increments of 0.25 hours, shorts tasks such as checking an email are over-billed. (Knapton Decl. ¶ 48.) For the billings that Defendants have identified as excessive, they request a 40% reduction. (Knapton Decl. ¶ 49.) "[D]uplicative work, however, is not a justification for cutting a fee, unless the lawyer does *unnecessarily* duplicative work." *Mendez v. County of San Bernardino*, 540 F.3d

Case 2:11-cv-01326-SJO-FMO Document 279-3 Filed 09/10/12 Page 28 of 150 Page ID

**CASE NO.:** CV 11-01326 SJO (FMOx)      **DATE:** August 2, 2012


1109, 1129 (9th Cir. 2008) (internal quotation marks omitted). Therefore, in order to achieve their requested reduction, Defendants must clearly demonstrate that Plaintiff's attorneys engaged in work that was unnecessarily time consuming.

The Court agrees that billing 15 minutes for reviewing a single email is excessive and grants Defendants' request as to those records. The Court deducts **.5 hours** of the time billed by Ms. Schmidt and **.5 hours** of the time billed by Mr. McNicholas.

Defendants make the unsupported assumption that Plaintiff's counsel billed an excessive amount of time for the completion of certain tasks that do not require such time. (Knapton Decl. ¶ 47.) They have pointed to several entries that supposedly fall within this group, yet have failed to note exactly which tasks they believe took excessive time, how much time the tasks took, or what a reasonable amount of time would be. (*See generally* Knapton Decl. Ex. 3E.) Based upon a review of Plaintiff's counsels' billing records, there do not appear to be any tasks that were grossly over-billed. (*See generally* Knapton Decl. Ex. 2.; McNicholas Decl. Ex. 1.) The taking of depositions, preparation of an opposition to summary judgment, and preparation for trial are tasks that are generally time consuming, and the Court sees nothing that necessitates a reduction of 40% as to those tasks.

   d.  <u>Block Billing</u>

Defendants request that the Court reduce Plaintiff's attorneys' fees by 30% overall to account for numerous records that were block billed. (Knapton Decl. ¶¶ 50-55.) Block billing is the practice of grouping several tasks into a single time recording. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Courts frown upon block billing because it impedes the court's ability to determine whether billed hours are reasonable and tends to inflate legal fees. *Mendez*, 540 F.3d at 1128-29. Defendants argue that a total of 274.5 hours have been block billed and should therefore be reduced by 30%. (Knapton Decl. ¶ 54.) The Court disagrees that such a reduction is necessary and finds that Plaintiff's attorneys have not impermissibly block billed hours. The entries are sufficiently clear and discrete for the Court to assess what the attorneys were working on and whether they expended an unreasonable amount of time. (*See generally* McNicholas Decl. Ex. 1; Knapton Decl. Ex. 3B.)

The Court also notes that the vast majority of the entries alleged by Defendants to be block billing are in reality broken-down explanations of each part of a single task. (*See generally* Knapton Decl. Ex. 3B.) For example, one entry criticized by Defendants states: "Review CPF's research re defense argument; read and review related cases." (Knapton Decl. Ex. 3B 1.) While initially appearing to include several tasks, this entry in fact simply provides an explanation of various parts of a single task: the review of CPF's research. Most of the entries pointed to by Defendants are of the same nature: detailed breakdowns of individual tasks into discrete parts. Because the Court finds that Plaintiff's attorneys' billing records sufficiently articulate each task, the Court denies Defendants' request to reduce the 274.5 hours by 30%.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 11-01326 SJO (FMOx)</u>          **DATE:** <u>August 2, 2012</u>

e.     <u>Vague Billing Descriptions</u>

Defendants argue that several hours billed should be reduced by 30% because the billing descriptions are vague. (Knapton Decl. ¶¶ 56-58.)  Records that are not sufficiently detailed prevent the Court from determining whether the hours billed are reasonable and can result in the billing of excessive hours.  *In re Donovan*, 877 F.2d 982, 995 (D.C. Cir. 1989).  The Court concludes that the majority of the records pointed to by Defendants are sufficiently detailed to allow the Court to determine the reasonableness.  However, Mr. McNicholas has billed several hours on tasks simply described as "trial preparation" or "work on trial documents". (*See generally* McNicholas Decl. Ex. 1; Knapton Decl. Ex. 3C 2.)  From these limited descriptions, it is entirely unclear what Mr. McNicholas was working on and whether it required the several hours that he billed.  The Court finds that 34.5 of the hours billed by Mr. McNicholas are impermissibly vague.  The Court will apply the 30% deduction requested by Defendants because this is sufficient to capture the potential inflation of hours attributable to the vague records. (Knapton Decl. ¶ 58.)  Thus, the Court deducts **10.35 hours** of the time billed by Mr. McNicholas.

f.     <u>Rounded Off Billing Entries</u>

Defendants argue that the Court should reduce Plaintiff's requested attorneys' fees by 10% to account for their unsupported assumption that Plaintiff's attorneys engage in a routine practice of rounding off their entries to the nearest hour. (Opp'n 12; Knapton Decl. ¶¶ 59-61.)  Defendants point to several entries that they assume were rounded up, and the support for their argument is simply noting that many billing entries are even numbers. (Knapton Decl. ¶ 60.)  Defendants also fail to point to case law supporting their argument that attorney time must be billed in six minute increments, and that such alleged roundings are a proper basis for adjusting the calculation of a lodestar.  Thus, the Court declines to reduce Plaintiff's request based on Defedants' allegations of improper rounding.

3.     <u>Post-Lodestar Calculation Adjustments</u>

The district court may adjust a fee upward or downward after calculating the lodestar to account for special circumstances. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

a.     <u>Plaintiff's Limited Success</u>

Courts recognize that a party may be the prevailing party, yet have only succeeded on a fraction of its claims. *Id.* at 434.  To account for such situations, courts may award the full amount of attorneys' fees or grant additional reductions. *Id.*; *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999).  Relevant to this inquiry is the similarity between the successful and unsuccessful claims, because "work on an unsuccessful claim cannot be deemed to have been

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  <u>CV 11-01326 SJO (FMOx)</u>       **DATE:** <u>August 2, 2012</u>

expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435 (internal quotation marks omitted).

In this case, Plaintiff prevailed on only his FLSA retaliation claim, losing his due process and state law claims. (Reply 2.) Defendants argue that Plaintiff's successful and unsuccessful claims are substantially unrelated and that Plaintiff's fees should thus be reduced by 80 to 90%. (Opp'n 7-8.) The Court disagrees. The claims are based upon the same core set of facts and generally related legal theories. *See Hensley*, 461 U.S. at 435. The majority of the hours spent on the most time-consuming tasks, such as discovery and trial, would have been necessary regardless of whether Plaintiff had pursued his failed claims. However, the Court recognizes that some effort was expended on the failed claims that did not contribute to Plaintiff's successful claims and therefore grants Defendants a **10% reduction** in the overall amount of fees incurred.

Defendants also argue that an overall reduction is necessary regardless of the relatedness of the claims because Plaintiff's relief is substantially less than what he initially sought. (Opp'n 13.) The Court recognizes that in relation to the multitude of claims brought and Plaintiff's counsels' success in the *Romney* trial, Plaintiff's actual success in this case was limited. The Court believes that the 10% reduction is sufficient to adjust the award for deductions necessary to account for partial success in spite of the relatedness of the claims. *See Hensley*, 461 U.S. at 436 (holding that reductions in attorneys' fees may be necessary even if all claims were interrelated to account for partial success of the plaintiff).

> b.   Similarity to *Romney* Case

Defendants argue that Plaintiff's attorneys' fees award should be substantially reduced to account for the fact that Plaintiff's attorneys also litigated the *Romney* case. (Opp'n 8-9.) Defendants argue that Plaintiff's counsels' experience with the *Romney* case resulted in "nothing novel or difficult about Plaintiff's case" that would require such a substantial amount of the attorneys' time and effort. (Opp'n 9.) Plaintiff disagrees, arguing that there were some significant differences "including the judicial exhaustion issue, Maislin's changed testimony, [and] Avila's resignation." (Reply 3.) While there were many similarities between the instant case and *Romney*, the Court agrees with Plaintiff that there were several differences necessitating the expenditure of additional time and resources. Thus, the Court declines to reduce Plaintiff's request for fees because Mr. McNicholas litigated the *Romney* case.

> B.   Plaintiff's Request for Liquidated Damages

Plaintiff argues that he is entitled to an amount of liquidated damages equal to the amount of lost wages awarded by the jury. (Mot. 11-13.) He argues that the language of 29 U.S.C. § 216(b) requires the Court to award such damages when a violation of the FLSA has been found. (Mot. 12.) Defendants disagree with Plaintiff's interpretation of the statute, arguing that liquidated damages are discretionary when defendants are found to have engaged in retaliatory conduct,

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>     DATE: <u>August 2, 2012</u>

rather than wage violations. (Opp'n 15-17.) In support, Defendants point to *Braswell v. City of El Dorado*, 187 F.3d 954 (8th Cir. 1999), and *Blanton v. City of Murfreesboro*, 856 F.2d 731 (6th Cir. 1988), both of which held that an award of liquidated damages in a FLSA retaliation claim is discretionary. (Opp'n 16.) Similarly, in the related *Romney* case, also concerning FLSA retaliation, the court declined to award liquidated damages. (RJN Ex. 4, Ex. 5, May 14, 2012, ECF No. 187-1.) Defendants further argue that the Court should exercise its discretion by not awarding the liquidated damages because an award in this case would not work to advance the purposes of the FLSA. (Opp'n 17.)

Finally, Defendants argue that even if the Court finds that an award would further the purposes of the FLSA, liquidated damages should not be granted because Defendants have a "good faith" defense. (Opp'n 18-19.) Section 260 states that if an employer demonstrates that the violation was committed in good faith, then the court may exercise its discretion and decline to award liquidated damages. 29 U.S.C. § 260. The Court finds that Defendants have not established that they had "reasonable grounds for believing that [their] act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260. The Court disagrees with Defendants' argument that because the jury declined to find Defendants liable on Plaintiff's due process and state law claims, Defendants necessarily have a good faith defense. (Opp'n 18-19; Kitabayashi Decl. ¶ 15.)

In the related *Romney* case, liquidated damages were denied not because Defendants had a good faith defense, but because the court found that Plaintiff's award of over $100,000 in past economic damages was sufficient to effectuate the purposes of the FLSA. (RJN Ex. 4 3.) However, the Court believes that in this case, an award of liquidated damages would help advance the goals of the FLSA. In *Romney*, the plaintiff received a nearly $4 million verdict, while here, Plaintiff received only $50,000. (McNicholas Decl. ¶ 6; Opp'n 1.) The Court finds that the additional $50,000 in liquidated damages would work to compensate Plaintiff for a delay in payment of wages owed and also provide an incentive for future employees to report wage and hour violations by their employers. *Hultgren v. Cnty. of Lancaster*, 913 F.2d 498, 508-09 (8th Cir. 1990) ("Section 216's provision for liquidated damages is intended in part to compensate employees for the delay in payment of wages owed under the FLSA; it is a penalty or a punishment."); (RJN Ex. 4 3.) Thus, the Court awards Plaintiff liquidated damages in the amount of his damages award: $50,000.

C.     <u>Final Calculations</u>

Plaintiff's initial Motion includes a request for: (1) 503.75 hours for Matthew McNicholas; (2) 284 hours for Douglas Winter; (3) 126.25 hours for Catherine Schmidt; (4) 42 hours for Alyssa Schabloski; (5) 107.5 hours for Cameron Fredman; (6) 33.75 hours for Dawn McGuire; and (7) 68.4 hours for Stuart Esner. (Mot. 5.) The Court declines to allow Plaintiff to collect for the hours billed by "YB".

Case 2:11-cv-01326-SJO-FMO Document 203 Filed 08/02/12 Page 12 of 130 Page ID #:3337

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 11-01326 SJO (FMOx)</u>        DATE:  <u>August 2, 2012</u>

The Court holds that the attorneys' hours will be billed accordingly: (1) $700/hr for Mr. McNicholas; (2) $600/hr for Mr. Winter; (3) $550/hr for Ms. Schmidt; (4) $450/hr for Ms. Schabloski; (5) $350/hr for Mr. Fredman; (6) $150/hr for Ms. McGuire; and (7) $400/hr for Mr. Esner.

The hours billed by Mr. McNicholas are reduced by 17.85 hours, bringing his total billable hours to 485.9 hours.  Thus, Mr. McNicholas's fees total $340,130.

The hours billed by Mr. Winter are reduced by 23.75 hours, bringing his total billable hours to 260.25.  Thus, Mr. Winter's fees total $156,150.

Ms. Schmidt's billable hours are reduced by only .5 hours, bringing her total billable hours to 125.75.  Therefore, $69,162.50 is the total for her services.

Mr. Fredman's hours total 102.5, after a reduction of 5 hours.  Thus, Plaintiff may recover $35,875 for the services of Mr. Fredman.

The Court will deduct 1 hour of pay from the total amount billed by Ms. McGuire.  Thus, Plaintiff may recover $2,812.50 for the services of Ms. McGuire.[4]

For the services of Ms. Schabloski[5] and Mr. Esner,[6] the Court grants Plaintiff the full amount requested: $14,287.50 and $25,360 respectively.  (Mot. 5-6.)  This brings the preliminary total to $643,877.50.  Applying a 10% reduction to account for Plaintiff's limited success, the Court **AWARDS** Plaintiff **$579,400 in attorneys' fees**.

The Court also **GRANTS** Plaintiff **$50,000 in liquidated damages**.

///

///

///

---

[4]  Ms. McGuire billed 14 hours at no charge.  (McNicholas Decl. Ex. 1.)  Thus, the fee award for Ms. McGuire is based on an initial request of 19.75 hours billed at the hourly rate.

[5]  Ms. Schabloski's billed 10.25 hours at no charge.  (McNicholas Decl. Ex. 1.)  Thus, the fee award is based on an initial request of 31.75 hours billed at the hourly rate.

[6]  Mr. Esner did not charge for 5 hours at trial.  (Esner Decl. 2.)  Thus, the fee award is based on an initial request of 63.4 hours billed at the hourly rate.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 11-01326 SJO (FMOx)</u>          DATE: <u>August 2, 2012</u>

III.    <u>RULING</u>

For the foregoing reasons, Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall recover attorneys' fees in the amount of **$579,400** and liquidated damages in the amount of **$50,000**.  The Judgment is hereby amended accordingly.

IT IS SO ORDERED.

cc: fiscal

United States District Court

For the Northern District of California

1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT
8
9          FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11                                          No. C 11-00667 WHA
    VALLABHAPURAPU, et al.,
12                                          **ORDER GRANTING MOTION FOR**
              Plaintiffs,                   **FINAL APPROVAL OF CLASS**
13                                          **SETTLEMENT; MOTION FOR AN**
       v.                                   **AWARD OF ATTORNEY'S FEES**
14                                          **AND COSTS**
     BURGER KING CORPORATION,
15
              Defendant
16
    _____/
17

18                      **INTRODUCTION**

19        This is an ADA disability-access class action alleging barriers to access on behalf of

20  mobility-impaired customers of restaurants in California leased by defendant Burger King

21  Corporation. The parties have filed a joint motion for final approval of the settlement. Class

22  counsel also requests attorney's fees and litigation costs and expenses. For the reasons explained

23  below, final approval of the proposed settlement is GRANTED. Plaintiffs' motion for attorney's

24  fees and costs is GRANTED.

25                       **STATEMENT**

26        This action is the second part of a class action originally asserted against Burger King

27  Corporation. Plaintiffs alleged that restaurants that Burger King Corporation leases to its

28  franchisees in California violated the Americans with Disabilities Act, the Unruh Civil Rights

    Act, and the California Disabled Persons Act. Plaintiffs alleged that Burger King violated state

EXHIBIT D                                                              000104

**United States District Court**
For the Northern District of California

1    and federal regulations by pursuing discriminatory policies or practices that resulted in unlawful

2    architectural or design barriers which denied customers who use wheelchairs or scooters access

3    to services at these Burger King restaurants.

4       In the first part of the litigation, *Castaneda v. Burger King Corporation*, No. 08-04262

5    WHA, ten classes were certified as to ten of the alleged non-compliant restaurants.  The parties

6    reached a class settlement, final approval of which was granted by this Court in July 2010.

7       Plaintiffs then filed this action in February 2011 against Burger King.  The complaint in

8    this action brings the same claims and asserts class action allegations as to the remaining 86

9    restaurants not included in the *Castaneda* settlement.  Plaintiffs reached a settlement agreement

10    with Burger King regarding the remaining 86 restaurants in this action.

11       The proposed class action settlement provides for significant injunctive relief and

12    damages.  Specifically, the injunctive relief includes all of the measures agreed to in *Castaneda*,

13    including the elimination of all accessibility barriers and the use of mandatory checklists with

14    specific accessibility items for remodeling, alterations, repairs, and maintenance.  An additional

15    remedial measure not included in the *Castaneda* settlement is that Burger King will include in its

16    manual to its franchisees the recommendation that franchisees check the force required to open

17    all public exterior and restroom doors twice per month to ensure that they do not require more

18    than five pounds of pressure to open.  The proposed settlement provides for a cash payment of

19    $19,000,000 to satisfy and settle all claims for damages, as well as any attorney's fees and costs

20    awarded (Settlement Agreement ¶ 9.1.1).  The settlement agreement provides that it "does not in

21    any way affect the rights, obligations, or restaurants at issue in the *Castaneda* Settlement" (*id.* at

22    ¶ 1.5).  Of the 86 restaurants originally at issue, the injunctive relief applies to the 77 Burger

23    King restaurants that are still in business and are leased by Burger King to franchisees in

24    California.

25       After reviewing the proposed class settlement and revising the proposed notice forms, the

26    Court directed plaintiffs to give notice to class members so that a fairness hearing could be held.

27    A "short-form notice" was approved, which was required to be posted for 30 calendar days at

28    each of the restaurants covered by the class certification order.  A "long-form notice" was also

2

United States District Court
For the Northern District of California

1  approved, which was to be sent out to existing damage claimants and to northern California

2  disability rights groups.  A fairness hearing was held on October 25, 2012 and addressed (1)

3  whether the proposed settlement should be approved, and (2) the amount of fees and costs to be

4  awarded to class counsel from the settlement fund.

5        The deadline for class members to object or opt out of the settlement was September 17,

6  2012.  Class members can opt in to receive monetary damages by November 15.  Each damages

7  claimant is required to complete a claim form documenting his or her eligible visits to one of the

8  86 restaurants where he or she encountered a barrier to access.  As in *Castaneda*, the proposed

9  settlement provides that monetary awards to each damages claimant will be distributed pro rata

10  based on the total number of visits by each damages claimant, with a maximum number of six

11  visits for which each claimant may obtain recovery.  Class members who do not opt in to receive

12  damages claims do not release their rights to pursue such damages claims separately.

13        Plaintiffs also move for a combined $4,823,082.58 in attorney's fees and litigation costs

14  and expenses, consisting of reimbursement of $230,776.77 in litigation costs and expenses, and

15  $4,592,305.81 in attorney's fees.  To provide class members with an opportunity to review and

16  comment on the application for an award of attorney's fees and costs, class counsel posted the

17  application on their website three weeks prior to the September 17 object/opt-out deadline (Lah

18  Decl. ¶ 7).

19  **ANALYSIS**

20        This order first explains why the pending settlement is fair, reasonable and adequate

21  under FRCP 23(e) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (setting

22  forth the factors to be considered when evaluating class action settlements).  Next, this order

23  discusses why the awarded attorney's fees are reasonable.

24      **1.**    **THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

25        Having considered the terms of the settlement agreement, proposed plan of distribution,

26  and adequacy of notice to class members, and having considered the motion for final approval

27  of the settlement agreement, the declarations submitted therewith, oral argument by counsel,

28  and all other documents of record in this matter, this order holds that the settlement agreement

3

EXHIBIT D                                     000106

**United States District Court**
For the Northern District of California

1    is in the best interests of the class and is fair, reasonable, and adequate under the factors set forth

2    in *Hanlon*.

3         No objections to the settlement have been filed or received by counsel or the claims

4    administrator.  One class member opted out (Keough Decl. ¶¶ 14–15).  Class counsel attempted

5    to contact the individual several times and confirmed that she was not interested in participating

6    in the settlement (Lah Decl. ¶ 6).  The settlement agreement provides for injunctive relief,

7    including the elimination of alleged accessibility barriers, the use of mandatory checklists with

8    specific accessibility items for remodeling, alterations, repairs and maintenance, and the

9    monitoring of compliance.  Burger King will also include in its manual a guideline that

10   franchisees should check to ensure the appropriate force is required to open public exterior and

11   restroom doors.  The settlement agreement provides for the Court to retain jurisdiction to enforce

12   the terms of settlement until October 26, 2016, four years after the settlement agreement has

13   been finalized.

14        The settlement also provides for a cash payment of $19,000,000 to the settlement class.

15   Monetary awards to each claimant in the settlement class will be distributed pro rata based on the

16   total number of visits by each damages claimant to one of the 86 restaurants where he or she

17   encountered a barrier, with a maximum number of six visits for which each damages claimant

18   can obtain recovery.  Each of these damage claimants must complete a claim form documenting

19   his or her eligible visits.  Payment for the costs of notifying and administering the settlement up

20   to $100,000 shall be paid by class counsel's awarded attorney's fees, while costs above those

21   amounts shall come from the settlement fund.

22        The class administrator reported that, as of October 11, 620 individuals had submitted

23   claim forms to recover damages.  The class administrator estimated that, assuming a net

24   settlement fund of $14,250,000, the average award value is $22,983.87 per processed claim,

25   $1,253.62 per store visit based on a raw store visit count, and $4,968.61 per store visit based on

26   an adjusted store visit count (limiting the number of eligible visits per claimant to six visits)

27   (Keough Decl. ¶ 16).  The parties state that, if the numbers reported by the claims administrator

28   do not change significantly, the average recovery per claimant will be 50 percent above the

EXHIBIT D                                                                    000107

1    average recovery in *Castaneda* (Br. 12–13).  At the final fairness hearing, class counsel stated

2    that as of October 22, 677 individuals have submitted claim forms to recover damages.

3        Accordingly, final approval of the settlement and plan of allocation is hereby **GRANTED**.

4    **2.    ATTORNEY'S FEES AND COSTS.**

5        Despite the settlement agreement and defendant's acquiescence to the attorney's fees

6    sought, a court must still ensure that the attorney's fees and costs awarded are "fair, reasonable,

7    and adequate."  *See Staton v. Boeing, Co.*, 327 F. 3d 938, 963–64 (9th Cir. 2003).  Common fund

8    fees, as we have here, are consistent with the "American Rule" (*i.e.,* that each party pays for its

9    own litigation expenses), and "a litigant or lawyer who recovers from the common fund for the

10   benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from

11   the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

12       District courts in this circuit may use two different approaches to gauge the

13   reasonableness of a requested fee award under the traditional common-fund approach.  The first

14   is the lodestar method, whereby a reasonable number of hours is multiplied by a reasonable

15   hourly rate.  The lodestar may include a risk multiplier to enhance the fees under certain

16   circumstances, in which a court considers "the quality of the representation, the benefit obtained

17   for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."

18   *Hanlon*, 150 F.3d at 1026.  Our court of appeals, however, also allows a calculation based upon a

19   percentage of the common fund.  *See Staton*, 327 F.3d at 967–68.  The benchmark percentage is

20   25 percent.  *See Hanlon*, 150 F.3d 1011, 1026.  Here, the requested $4,592,305.81 in attorney's

21   fees equals approximately 25 percent of the settlement fund, after costs.

22       In *Castaneda*, class counsel reduced their lodestar by $1,106,625.35, representing over

23   4,500 hours for work attributable to the 86 restaurants covered by the current settlement

24   (*Castaneda* Dkt. No. 346 ¶ 41; Fox Decl. ¶ 39).  After *Castaneda*, class counsel spent an

25   additional 5,568.53 hours on the current settlement, after exercising billing judgment and

26   deleting 557.6 hours (Lee Decl., Exh. B).  In total, class counsel claim to have expended over ten

27   thousand hours in this six-year action (*ibid.*).  After applying what they assert are reasonable

28

EXHIBIT D                                                    000108

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  rates to those hours (ranging from $335 to $825 for the attorneys, and from $225 to $275 for

2  paralegals and other staff), counsel calculate a lodestar of $3,546,721.60 (Br. 12).

3      Counsel request that this order enhance the total fee award by applying a multiplier of

4  1.29, which this order finds warranted given "the quality of the representation, the benefit

5  obtained for the class, the complexity and novelty of the issues presented, and the risk of

6  nonpayment" in this action. *Hanlon*, 150 F.3d at 1029. The determinative factor, however, is

7  the benefit to the class. Even after the requested attorney's fees and costs are deducted, the

8  monetary damages of over $14 million — which, according to plaintiffs, is the largest total

9  recovery amount ever obtained in a disability access case — is only part of the relief obtained for

10 class members. As noted above, the settlement also provides for considerable measures of

11 injunctive relief at the restaurants at issue to eliminate accessibility barriers. Because the

12 deadline for claims is November 15, 2012, the average monetary recovery per damages claimant

13 is yet unknown; however, the $14 million net settlement fund, by itself, is very good. Based on

14 the current number of processed claims, class counsel estimates that the average recovery per

15 claimant will be nearly 50 percent above the average recovery in *Castaneda* (Br. 12–13).

16 Accordingly, the benefits provided to the class warrant the requested fee award. Class counsel's

17 request for $4,592,305.81 in attorney's fees is fair, reasonable, and adequate.

18     Plaintiffs' counsel seek $230,776.77 in litigation costs and expenses. This order finds

19 that the costs and expenses, as detailed by class counsel, are reasonable. Additionally, plaintiffs'

20 counsel have not included in this amount the $100,000 in claims administration costs that they

21 have agreed to pay out of their recovered attorney's fees. For the reasons stated above, the

22 request for attorney's fees and reimbursement of litigation costs and expenses is **GRANTED**.

23                              **CONCLUSION**

24     Accordingly, it is hereby ordered as follows:

25     1. The Court hereby finds that the settlement is fair, reasonable, and adequate as to

26 the class, plaintiffs, and defendants, that it is the product of good faith, arms-length negotiations

27 between the parties, and that the settlement is consistent with public policy and fully complies

28 with all applicable provisions of law. The breadth of the release to be imposed on the absent

6

United States District Court
For the Northern District of California

1   class members is sufficiently narrow. Absent class members who have not opted in to pursue

2   damages claims release only non-monetary claims relating to the accessibility of the restaurants

3   covered by the settlement based on conduct preceding final approval of the settlement

4   agreement. They do not release any claims for monetary damages. The final settlement is

5   therefore approved.

6        2. The notice given to class members and potential damages claimants was the best

7   notice practicable under the circumstances, was valid, gave due and sufficient notice to all class

8   members, and complied fully with the Federal Rules of Civil Procedure, due process, and all

9   other applicable laws. A long-form notice was mailed to all known damages claimants described

10  in the proposed settlement. A short-form notice was posted for a period of 30 calendar days in

11  all Burger King restaurants covered by the settlement, which provided information for obtaining

12  the long-form notice and opt-in/opt-out form. The short-form notice was also mailed to northern

13  California disability rights groups. The long-form and short-form notices provided information

14  regarding the manner in which class members could object to or participate in the settlement and

15  the manner in which class members could opt out of the class. A full and fair opportunity was

16  afforded to class members to participate in the proceedings to determine whether the proposed

17  settlement should be given final approval. Accordingly, this order holds that all class members

18  who did not exclude themselves from the settlement by filing a timely request for exclusion are

19  bound by this settlement order and judgment.

20       3. The Court retains continuing jurisdiction over the class action, named plaintiffs,

21  the class, and defendant for four years (until October 26, 2016) from the date of entry of this

22  order in order to supervise the implementation, enforcement, construction and interpretation of

23  the revised settlement agreement and this order.

24       4. The Court hereby awards to plaintiffs' counsel attorney's fees of $4,592,305.81 and

25  $230,776.77 in litigation costs and expenses, to be paid from the settlement fund. Plaintiffs'

26  counsel shall be awarded the $230,776.77 as well as 50 percent of the attorney's fees now; the

27  remaining 50 percent may be recovered only after counsel certifies that the fund is completely

28

EXHIBIT D                                                                                    000110

United States District Court

For the Northern District of California

1   wound up.  If problems do arise and if management of this fund so necessitates, any shortfall in

2   funds to pay class members may be deducted from the unpaid attorney's fees.

3         5. Damages claimants who have already opted in or intend to opt in to receive monetary

4   damages have until November 15, 2012, to complete, sign, and submit their claim forms for

5   shares of the damages fund.  Eligibility for payments from the net settlement fund shall be

6   determined based on the procedure set forth in section nine of the settlement agreement.

7

8       **IT IS SO ORDERED.**

9

10   Dated:  October 26, 2012.

11                         WILLIAM ALSUP
                              UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

EXHIBIT D                                                 000111

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LONG BEACH AREA PEACE )   NO. CV 04-08510 SJO (SSx)
NETWORK, et al., )
                    )
         Plaintiffs, )   **ORDER GRANTING PLAINTIFFS' MOTION**
                    )   **FOR AWARD OF ATTORNEYS' FEES AND**
         v. )   **COSTS AGAINST DEFENDANT**
                    )   [Docket No. 56]
CITY OF LONG BEACH, )
                    )
         Defendant. )
_____ )

      This matter is before the Court on Plaintiffs Long Beach Area Peace Network and Diana Mann's (collectively, "Plaintiffs") Motion for Award of Attorneys' Fees and Costs, filed April 15, 2010. Defendant City of Long Beach ("Defendant") filed an Opposition to which Plaintiffs replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for May 24, 2010. *See* Fed. R. Civ. P. 78(b). Because of the following reasons, Plaintiffs' Motion is GRANTED.

I.     <u>BACKGROUND</u>

      Defendant adopted an ordinance, codified in §§ 5.60 *et seq.*, of the Long Beach Municipal Code ("LBMC"), that established a permit scheme for parades and assemblies held in the City of Long Beach (the "Ordinance"). Plaintiffs filed a "facial challenge" to the Ordinance, seeking: (1) declaratory and injunctive relief; (2) compensatory damages; and (3) attorneys' fees. On November 15, 2004, the Court permanently enjoined Defendant from enforcing the Ordinance

on the grounds that the Ordinance constituted an unconstitutional restraint on speech and assembly.  Defendant subsequently appealed the Court's Order to the Ninth Circuit.

In *Long Beach Area Peace Network v. City of Long Beach,* 574 F.3d 1011 (9th Cir. 2009), the Ninth Circuit affirmed in part and reversed in part, and remanded the issue of whether the four unconstitutional provisions could be severed.  Defendant filed a petition for rehearing *en banc*, which was denied.  Defendant then petitioned for a Writ of Certiorari with the United States Supreme Court, which was also denied.

On March 15, 2010, the Court heard argument on whether the unconstitutional provisions of the Ordinance were severable and concluded on April 1, 2010, that the provisions were not severable and thus the entire Ordinance was invalid.  (Docket ("Dkt.") No. 43.)  Plaintiffs now move for attorneys' fees and costs.  (*See generally* Pls.' Mot. for an Order Awarding Attorneys' Fees and Costs Pursuant to 42 U.S.C. § 1983 and California Code of Civil Procedure § 1021.5 ("Pls.' Mot.").)

II.    DISCUSSION

A.    Attorneys' Fees

42 U.S.C. § 1988 states that "[i]n any action or proceeding to enforce a provision of [section 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney[s'] fee as part of the costs . . . ."  42 U.S.C. § 1988.  In determining the amount of attorneys' fees to be awarded, the court must first determine the lodestar figure, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).  The lodestar figure is presumptively reasonable.  *See Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988).  Hours are not reasonably expended if they are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  The reasonable hourly rate is the rate "prevailing in the community for similar work performed by attorneys of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Once calculated, the court may then adjust the lodestar amount up or down based on a number of factors, including:

1      (1) [t]he time and labor required; (2) [t]he novelty and difficulty of the

2      questions; (3) [t]he skill requisite to perform the legal services

3      properly; (4) [t]he preclusion of other employment due to acceptance

4      of the case; (5) [t]he customary fee; (6) [t]he contingent or fixed nature

5      of the fee; (7) [t]he limitations imposed by the client or the case; (8)

6      the amount involved and the results obtained; (9) [t]he experience,

7      reputation, and ability of the attorneys; (10) [t]he undesirability of the

8      case; (11) [t]he nature of the professional relationship with the client;

9      and (12) [a]wards in similar cases.

10  *Intel Corp. v. Terabyte Int'l*, 6 F.3d 614, 622 (9th Cir. 1993). In seeking attorneys' fees under this

11  method, "the fee applicant has the burden of producing satisfactory evidence, in addition to the

12  affidavits of its counsel, that the requested rates are in line with those prevailing in the community

13  for similar services . . . and that the claimed number of hours is reasonable . . . ." *Id.* at 622-23.

14      Plaintiffs allege that they are entitled to attorneys' fees and costs as prevailing parties under

15  42 U.S.C. § 1983. (Pls.' Mot. 2:13-16.)

16        1.   Reasonableness of Hourly Rate

17      As established in *Blum v. Stenson*, the reasonableness of an hourly rate is "calculated

18  according to the prevailing market rates in the relevant community, regardless of whether plaintiff

19  is represented by private or nonprofit counsel . . . . [T]he rates should be in line with those

20  prevailing in the community for similar services by lawyers of reasonably comparable skill,

21  experience, and reputation." *Blum*, 465 U.S. at 896 n.11. Plaintiffs have submitted affidavits and

22  cases in support of the reasonableness of the hourly rate charged by Plaintiffs' attorneys. (Pls.'

23  Mot., Ex. 3-8; Pls.' Mot., Decl. of Barrett Litt in Support of Plaintiffs' Motion for an Order Awarding

24  Attorneys' Fees and Costs.) Accordingly, the rates are presumed to be reasonable unless

25  Defendant can show that the rates are not in line with those prevailing in the community. *See*

26  *Blum*, 465 U.S. at 896 n.11.

27      Defendant has not presented sufficient evidence to refute the figures provided by Plaintiffs,

28  instead relying on references to the United States Attorney's Office ("USAO") *Laffey* Matrix and

1    the Altman Weil Survey of Law Firm Economics.[1]  (*See generally* Mem.  of P. & A. in Opp'n to Pls.'

2    Mot. for Attorneys' Fees ("Def.'s Opp'n").)  However, neither alternative is representative of the

3    "prevailing market rates in the relevant community" of Los Angeles.  *Blum*, 465 U.S. at 896 n.11.

4    Since neither the *Laffey* Matrix nor the Altman Weil Survey are applicable, Defendant has failed

5    to rebut the presumption of reasonableness of Plaintiffs' claimed rates.  *See id.*

6          After review of the evidence presented by the parties in support of fees, the Court finds that

7    the requested rates are reasonable for each of the attorneys, clerks, and paralegals.

8                          2.    Reasonableness of Claimed Number of Hours

9          Hours are not reasonably expended if they are "excessive, redundant, or otherwise

10   unnecessary."  *Hensley*, 461 U.S. at 434.  Moreover, the "fee applicant bears the burden of

11   documenting the appropriate hours expended in the litigation and must submit evidence in support

12   of these hours worked."  *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).  Once the fee

13   applicant has met that burden, the opposing party "has a burden of rebuttal that requires

14   submission of evidence to the district court challenging the accuracy and reasonableness of the

15   hours charged."  *Id.* at 1397-98.

16         Plaintiffs have submitted a sufficiently detailed breakdown of time spent on various levels

17   of the litigation.  (Pls.' Mot. 6:3-25.)  Plaintiffs allege that they have exercised billing judgment by

18   excluding the time spent preparing briefs in Small Claims Court and for issues that were ultimately

19   unsuccessful.  *See Hensley*, 461 U.S. at 434; Pls.' Mot. 5:10-20.  In total, Plaintiffs contend that

20   they have already eliminated 46 hours from Ms. Thornton's time and 41 hours from Ms. Sobel's

21   hours.  (Pls.' Mot. 5:10-20.)

22         However, Defendant argues that the hours billed are still unreasonable and must be

23   reduced.  The Court will address each of Defendant's arguments separately.

24

25

26

27         [1]  The USAO *Laffey* Matrix is a publication based on District of Columbia averages of hourly
     rates charged by attorneys, whereas the Altman Weil Survey is a national average of hourly rates
28   charged by attorneys in the United States.  The Court notes that Defendant failed to provide the
     *Laffey* Matrix, as well as the pertinent portions of the Altman Weil Survey.

### a.  Ms. Sobel's Use of an Associate

Defendant wishes to exclude all of Ms. Thornton's involvement in the appellate process when calculating attorneys' fees.  (Opp'n to Appellees' Application for Attorneys' Fees attached as Ex. 1 to Def.'s Opp'n ("Ex. 1").)  However, Defendant's request implies that Defendant would have preferred Ms. Sobel to conduct the same basic research and drafting tasks done by Ms. Thornton, but at more than three times the billing rate.  (Pls.' Reply to the Opp'n to Attorneys' Fees and Costs ("Pls.' Reply") 6:13-24.)  Had Ms. Sobel completed all of the work done by Ms. Thornton, Plaintiffs' fees would be even higher.  Accordingly, the Court finds that Plaintiffs' use of an associate was neither excessive nor unwarranted.

### b.  Ninth Circuit Appeal

Defendant alleges that Ms. Sobel's general experience in First Amendment law and her involvement as lead attorney in *Santa Monica Food Not Bombs v. Santa Monica*, 450 F.3d 1022 (9th Cir. 2006), necessarily resulted in duplicitous research. (Def.'s Opp'n 2:24-25.) However, the Court finds that any duplicitous work was done out of necessity, especially given the fact that litigation occurred over several years.  (Pls.' Reply 2:9-10.)

Defendant also contends that a reduction in attorneys' fees is warranted because Plaintiffs were only successful on four out of nine issues.  (Ex. 1.)  This is irrelevant because Plaintiffs were ultimately successful in invalidating the entire Ordinance.  (*See generally* Pls.' Reply.) Accordingly, the Court finds this argument is without merit.

Alternatively, Defendant contends that Plaintiffs' failure to follow Ninth Circuit Rule 28-2.6[2] resulted in unnecessary supplemental briefing in the present case because the "matters could have potentially been consolidated and the necessity and expense of supplemental briefing could have been avoided." (Ex. 1.)  There is no evidence that the Ninth Circuit would have consolidated the matters.  Accordingly, the Court finds that this argument lacks merit.  After reviewing the evidence presented by both parties, the Court finds no reduction in attorneys' fees is necessary

---

[2] Ninth Circuit Rule 28-2.6 states in pertinent part: "[e]ach party shall identify in a statement . . . any known related case pending in [the Ninth Circuit] . . . . Cases are deemed related if they . . . raise the same or closely related issues . . . ."  Fed. R. App. P. 28-2.6.

1  for the appellate process.  Accordingly, Plaintiffs are awarded $119,082.50 in attorneys' fees for

2  work done during the appeals process.

3                    c.     United States Supreme Court Briefing

4         Defendant alleges that spending 141.1 hours on Plaintiffs' Brief in opposition to Defendant's

5  Petition for Writ of Certiorari is excessive because Plaintiffs merely quoted and paraphrased

6  liberally from the Ninth Circuit opinion and provided little independent legal analysis.  (Def.'s Opp'n

7  4.)  However, Plaintiffs allege that it had to research numerous new cases and issues.  (Pls.' Reply

8  6:25-28.)  Furthermore, Plaintiffs argue that 19 months passed between the time Plaintiffs filed

9  their Opposition to the petition for rehearing *en banc* in May 2008 to the time they filed their

10  Response to the Petition for Certiorari in December 2009.  (Pls.' Reply 7:22-24.)  Thus, although

11  the work may have been duplicitous, given the time lapse between actions, the Court finds that

12  any duplication was necessary.  The Court finds that no reduction in attorneys' fees is necessary.

13  Accordingly, the Court finds the sum of $71,322.50 to be appropriate, and thus awards such an

14  amount for matters related to the Petition for Certiorari.

15                    d.     District Court Proceedings

16         Defendant alleges that Plaintiffs are not entitled to collect attorneys' fees for the original

17  district court proceedings because they failed to file a timely application for attorneys' fees

18  pursuant to Federal Rule of Civil Procedure ("Rule") 54(d)(2)(B)(i).[3]  *See* Fed. R. Civ. P.

19  54(d)(2)(B)(i). However, Local Rule 54-12 permits the filing of a motion for attorneys' fees fourteen

20  days after any final order is issued.  *See* Local Rule 54-12.[4]  Plaintiffs contend that the term "final

21  order" means after the time for filing an appeal has expired "such that there is no longer any

22  possibility that the district court's judgment is open to attack."  *Al-Harbi v. Immigration and*

23  *Naturalization Serv.*, 284 F.3d 1080, 1082 (9th Cir. 2002).  The Court issued its Order denying

24  

25       [3]  Rule 54(d)(2)(B)(i) states that a motion for attorneys' fees must "be filed no later than 14

26  days after the entry of judgment[.]" Fed. R. Civ. P. 54(d)(2)(B)(i).

27       [4]  Local Rule 54-12 states that "[a]ny motion or application for attorneys' fees shall be
served and filed within fourteen (14) days after the entry or judgment or other final order, unless

28  otherwise ordered by the Court."

1 severability on April 1, 2010, and the instant Motion for attorneys' fees was filed on April 14, 2010.

2 (*See* Dkt. No. 55; Dkt. No. 56.)  Since the instant Motion was filed within 14 days from the final

3 Order denying severability, Plaintiffs are not precluded from seeking attorneys' fees for the original

4 district court proceedings.  Accordingly, Plaintiffs are awarded $67,405.00 for work done for the

5 original district court proceedings.

6 e.      Severability and Post-Appellate Proceedings

7 Defendant alleges that Ms. Sobel's involvement in *Long Beach Lesbian & Gay Pride, Inc.*

8 *v. City of Long Beach*, 17 Cal. Rptr. 2d 861 (Cal. App. 1993), a case dealing with a prior version

9 of the same city ordinance as the instant case, necessarily means that some hours expended

10 working on the severability hearings in the instant case are duplicitous.  (Def.'s Opp'n 5:3-12.)

11 *Long Beach Lesbian & Gay Pride, Inc.* was decided in 1993, almost two decades ago and a whole

12 decade before the commencement of the instant litigation.  Over such a long period of time, laws

13 may change and work product may become stale.  *See Moreno v. City of Sacramento*, 534 F.3d

14 1006, 1112 (9th Cir. 2008).  At a bare minimum, an attorney "needs to get up to speed with the

15 research previously performed." *Id*.  Thus, the Court finds Defendant's argument without merit.

16 Accordingly, the Court finds the sum of $19,690.00 to be a reasonable sum of attorneys' fees for

17 the severability hearing and post-appeal proceedings.

18 f.      Work on the Motion for Attorneys' Fees and Costs

19 Defendant argues that the hours billed for the instant Motion are excessive because

20 Plaintiffs only had to include a minor amount of additional information and thus much of the work

21 was duplicative.  (Def.'s Opp'n 5:20-24.)  Plaintiffs initially sought 17.9 hours, but request an

22 additional 18.4 hours for time spent on the Reply.  Plaintiffs are not required to travel to, appear

23 at, or prepare for a hearing regarding this matter.  Accordingly, Plaintiffs' request for fees for 4.5

24 hours of time for such matters is denied.  As such, total hours billable for work done regarding the

25 instant Motion is 31.8 hours at $725 per hour for a total of $23,055.

26 B.    Costs

27 The Court is unable to locate the Bill of Costs that Plaintiffs allegedly transferred from the

28 Ninth Circuit, as it is not attached as Exhibit 15 to the Declaration of Ms. Sobel as Plaintiffs claim.

1  (Decl. of Carol A. Sobel in Support of Mot. for an Order Awarding Attorneys' Fees and Costs ¶ 20.)

2  The only enumerated costs that can be found are in Ms. Sobel's Supplemental Declaration

3  attached to Plaintiffs' Reply.  (Pls.' Reply, Supplemental Decl. of Carol A. Sobel ¶ 12.)

4  Accordingly, Plaintiffs are awarded $190.68 for out-of-pocket costs.  (Pls.' Reply, Supplemental

5  Decl. of Carol A. Sobel ¶ 12.)

6  III.    RULING

7         For the foregoing reasons, Plaintiffs' Motion for an Order Awarding Attorneys' Fees and

8  Costs is GRANTED.  Accordingly, the Court awards Plaintiffs attorneys' fees and costs in the

9  amount of $300,745.68.

10

11        IT IS SO ORDERED.

12  Dated: July 2, 2010.

                                    _____
                                              S. JAMES OTERO
                                    UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | ED CV 08-00503 ABC (RCx) | Date | February 22, 2010 |
|---|---|---|---|
| | ED CV 08-00511 ABC (RCx) | | |
| | ED CV 08-00512 ABC (RCx) | | |
| Title | Riverside County Department of Mental Health v. A.S., et al. | | |

| Present: The Honorable | Audrey B. Collins, Chief Judge | |
|---|---|---|
| Angela Bridges | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

None          None

**Proceedings:** ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND DENYING WITHOUT PREJUDICE MOTION FOR COSTS (In Chambers)

Pending before the Court is the motion for attorneys' fees and costs filed by Defendants and Consolidated Plaintiffs A.S. and Monica Valentine ("Defendants"). Mot. (Docket # 103).[1] Plaintiff Riverside County Department of Mental Health ("RCDMH") filed an opposition and Defendants filed a reply. Opp'n (Docket # 113); Reply (Docket # 116). The Court finds the matter appropriate for resolution without oral argument. Local Rule 7-15.[2] Having considered the materials submitted by the parties and the case file, and for the reasons indicated below, the Court **GRANTS** in part and **DENIES** in part the Motion.

## I. BACKGROUND

This is a case brought under the federal Individuals with Disabilities Education Act ("IDEA"), in which the Court affirmed the ALJ ruling that Plaintiff and Riverside Unified School District (the "District") were required to place A.S. at the National Deaf Academy. See Order Affirming Administrative Law Judge's Decision (Docket # 109).[3] Defendants filed a motion to recover attorneys'

---

[1] Unless otherwise noted, all references to the docket refer to the docket for Case No. ED CV 08-0503 ABC (RCx).

[2] The hearing previously set for the motion was vacated pending reassignment. December 10, 2009 Minute Order (Docket # 120). This case was previously assigned to Judge Larson, but was transferred to Chief Judge Collins.

[3] Judge Larson's order provides an extensive discussion of the background of the case, which the Court will not repeat here.