JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| CHERYL AICHELE, ET AL., | Case No CV 12-10863-DMG (FFMx) |
|---|---|
| Plaintiffs, | **FINAL ORDER APPROVING CLASS ACTION SETTLEMENT AND JUDGMENT OF DISMISSAL [195]** |
| vs. | |
| CITY OF LOS ANGELES, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

**I.      INTRODUCTION**……………………………………………………..1

**II.     DEFINITIONS** ................................................................ 1

**III.    OBJECTIONS AND OPT-OUTS** ................................. 4

**IV.     THE CLASS** .................................................................... 5

**V.      CLAIMS FILED** ............................................................. 7

**VI.     SETTLEMENT AGREEMENT FAIR, ADEQUATE, AND
         REASONABLE** ................................................................ 8

**VII.    NOTICE** .......................................................................... 9

**VIII.   TERMS OF PAYMENTS FROM THE CLASS FUND** ............................. 9

**IX.     CLASS FUND ATTORNEYS' FEES** ........................... 14

**X.      CLASS ADMINISTRATOR** ......................................... 14

**XI.     GENERAL PROVISIONS** ............................................. 15

**XII.    FINAL RESOLUTION** .................................................. 15

## I.    **INTRODUCTION**

This lawsuit having come before this Court for a hearing on August 28, 2015, pursuant to this Court's Order Preliminarily Approving Proposed Settlement Between Plaintiffs and Defendant dated April 24, 2015 (the "Preliminary Approval Order," Doc. # 191) to consider and determine the matters set forth in the Preliminary Approval Order; and due notice of said hearing having been published and given; and all persons who made timely objections to or decisions to opt out of the proposed settlement set forth in the Settlement Agreement, and described in the Class Notice, having been given an opportunity to present such objections to the Court; and the Court having considered the matter, including all papers filed in connection therewith, and the oral presentations of counsel at said hearing; and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

## II.    **DEFINITIONS**

1.    Each term and phrase used in this Final Order Approving Class Action Settlement shall have the same definition and meaning as in the Settlement Agreement, as follows.

2.    "Administrator" means the claims administrator chosen by Plaintiffs and Defendants jointly and to be appointed by the Court to administer the claims process, pay class claims, issue deficiency notices, publish summary Class Notice, discharge other duties set forth in this Settlement Agreement and handle other tasks necessary and appropriate to completing the claims process.  No provision is made for Spanish translation of the relevant documents because Plaintiffs' counsel's understanding is that there are no mono-lingual Spanish speakers among the class members.

3.    "Damages Class Member" means all members of the damages class as recited above; members of the various sub-classes are referred to by the names assigned them in the class certification order, as recited above (Vicinity Sub-Class, OR Sub-Class, City Bus Sub-Class and County Bus Sub-Class); members of the

injunctive relief class are those who meet that class definition, as defined above.

4.     "Class Counsel" means the four firms certified as class counsel in the Court's August 26, 2013 class certification order (modified, where applicable, to reflect the current firm names): Kaye, McLane, Bednarski and Litt, LLP; Carol A. Sobel Law Offices; Schonbrun DeSimone Seplow Harris & Hoffman, LLP; and Hadsell Stormer and Renick, LLP.

5.     "Matters Alleged in the Lawsuit" refers to the claims for relief and allegations in the Amended Complaint filed April 11, 2013.

6.     "Released Persons" means Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents.

7.     "LAPD" refers to the Los Angeles Police Department.

8.     "Class Notice" means the notice in a form substantially similar to that attached to the Motion for Preliminary Approval as Exhibit B [Doc. # 184], with such modifications as were provided by the Court.

9.     "Effective Date" means the date upon which this Final Order Approving Class Action Settlement and Judgment of Dismissal ("Judgment of Dismissal") entered by the Court approving the Settlement Agreement becomes final.  If a class member objects to the settlement, the Judgment of Dismissal will be deemed final upon expiration of the time to appeal or, if one or more Notices of Appeal are filed in the Ninth Circuit Court of Appeals, upon exhaustion of all such appeals and any petitions for writs of certiorari.  If no class member objects to the settlement, the Judgment of Dismissal will be deemed final upon its entry.

10.    An "Opt-Out" is any Class Member who files with the Administrator a timely request for exclusion from this Settlement Agreement.

11.    "Proof of Claim Form" means the Proof of Claim and Release Form that Class Members must use to make a claim for payment from the Class Fund, as that term is defined in Paragraph 11, under this Settlement Agreement. A copy of the proposed Proof of Claim Form is attached as the last page of Exhibit B, referred

to *supra*.

12.     The "Class Fund" is the monetary fund set aside for Class Members who file timely class claims.  The Class Fund amounts to $2,675,000, inclusive of all attorneys' fees and costs of class administration.  The portion of the Class Fund to be paid by the County is $225,000 ("County Payment").  The portion of the Class Fund to be paid by the City is $2,450,000 ("City Payment").  Except for the attorneys' fees and costs awarded by the Court, all monies due under this Agreement shall be paid to the Administrator approved by the Court.

13.     The "Post-Administration Class Fund" is the Class Fund less awarded attorneys' fees and costs, the costs of class administration, and the amount of the Class Representative Incentive Payments authorized to be paid to the Class Representatives.

14.     "Class Attorney's Fees and Costs" are the attorneys' fees and costs that Plaintiffs have requested the Court award Class Counsel pursuant to the Settlement Agreement.  The amount of attorneys' fees that Class Counsel have requested shall be 25% of the Class Fund ($668,750) plus costs.  These fees and costs are all inclusive of either statutory and class fund fees available on both the federal and state claims brought in this case.  The apportionment of such fees among Class Counsel shall be agreed to among the Class Counsel.

15.     The "Claim Cut-off Date", which was July 27, 2015, is the date by which any Class Member who wishes to receive payment from the Class Fund must file his/her Proof of Claim Form (attached as the last page of Exhibit B referred to, *supra*).

16.     The "Bar Date", which was June 26, 2015, is the date by which any class member had to file objections, if any, to the Settlement Agreement, or any class member had to request exclusion from the settlement.  A Class Member was to request exclusion from the settlement by sending a request to the Administrator consistent with the terms of Paragraph 49 of the Settlement Agreement.

## III.   OBJECTIONS AND OPT-OUTS

17.   There have been no objections to the settlement in general, and no objection to the request for an award of attorneys' fees filed.  Declaration of Steven Powell, ¶ 9.

18.   There are four opt-outs.  Two of the opt-outs – Robert Miliam and Tyson Heder – are individuals who have their own pending individual lawsuits for the events in question.  Mr. Heder is expressly excluded under the terms of the Settlement Agreement from being considered an opt-out for purposes of the City's right to rescind the settlement agreement due to his pending lawsuit.[1]  A third opt-out is Patrick Meighan, who excluded himself from "this settlement and from my [his] share of the settlement funds" because the "people of Los Angeles have more important things to do with their money than giving it to me."  The fourth opt-out, Denita Huerta, gave no explanation for her exclusion, but did not express dissatisfaction with the settlement both in writing and at the hearing.  See Declaration of Barrett S. Litt, dated August 12, 2015 and Ex. A thereto; Powell Declaration, ¶ 8 and Ex. C thereto.

19.   Under ¶¶ 52 *et seq.* of the Settlement Agreement, a portion of the City's contribution to the total settlement will be diverted to an Opt-Out Fund, to be held by the Class Administrator.  The amount to be so held will be determined by including in the calculation and distribution of funds the points to which Robert Miliam, Patrick Meighan and Denita Huerta (the "countable opt-outs") would have been entitled had they not opted out.[2]  Those funds shall be placed in the Opt-Out Fund and shall be available to the City and County (if the County is a defendant in any lawsuit filed or to be filed by a countable opt-out) proportionally to each's contribution to the total settlement, and may be used to pay the costs of defense or damages to the extent available for that countable opt-out had that person

---

[1]  Melissa Balin was also so listed, but she has not opted out.

[2]  Tyson Heder is not counted because he was not considered a countable opt-out in the Settlement Agreement in that he already had an individual pending lawsuit at the time of settlement.

4

participated in the settlement.  Any Opt-Out Fund money that is either partially or wholly unused will be treated pursuant to the provisions of ¶ 43, *infra*.

20.   To the extent that no lawsuits are filed within 13 months of entry of this Final Order by a countable opt-out , the money shall be considered available and paid according to the provisions of ¶ 43, *infra*.  If one or more new lawsuits are filed within 13 months from the date of this order by a countable opt-out, the money shall be handled according to the immediately preceding ¶ 19.

21.   The lack of any objection and the limited opt-outs, at least three of which facially are unrelated to the merits of the settlement, and one of which expresses no view on that issue (or any intention to proceed separately), strongly support the fairness and adequacy of the settlement.  "The negligible number of opt-outs and objections indicates that the class generally approves of the settlement."  *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act* (FACTA) Litig., 295 F.R.D. 438, 456 (C.D. Cal. 2014) (citing *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming the approval of a class action settlement where 90,000 members received notice and 45 objections were received); *Rodriguez v. West Publishing*, 563 F.3d 948, 967(9th Cir. 2009) ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four [.014 percent] submitted objections"); *Chun–Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 852 (N.D.Cal.2010) (concluding, in a case where "[a] total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of roughly three hundred and twenty-nine (329) members," that the reaction of the class "strongly supports settlement").

## IV.   **THE CLASS**

22.   The Class Representative Plaintiffs filed the above-captioned action in the United States District Court for the Central District of California ("Court") on December 20, 2012.  The Class Representative Plaintiffs asserted they represented,

and the Court ultimately certified, a class and several subclasses of persons who were allegedly subjected to violation of their First, Fourth, and Fifth/Fourteenth Amendment due process rights, as well as other federal constitutional rights and rights under California state law, as a result of actions by Defendants surrounding the arrest, detention, and release of Plaintiffs on November 30, 2011, in or around the vicinity of City Hall.  Plaintiffs alleged that some or all Defendants violated their rights by, among other things, declaring an unlawful assembly, making unlawful arrests, holding Plaintiffs in unconstitutional conditions of confinement, and unlawfully denying Plaintiffs release from custody on their own recognizance ("OR").

23.   Over the objections and opposition of Defendants, the Court certified a damages class and several damages sub-classes, and an injunctive relief class on August 26, 2013.  The respective classes and sub-classes were defined as follows, which definition the Court reaffirms:

> **Damages Class**: All persons who were arrested in or around the vicinity of City Hall (in the area between Los Angeles Street and Broadway Street and between Cesar Chavez Avenue and Second Street) on November 30, 2011 between the hours of midnight to 3:00 a.m. in connection with law enforcement agencies' efforts to disperse the Occupy Los Angeles protest.

> **Vicinity Sub-Class**: All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, although they were not participating in the Occupy protest at Los Angeles City Hall at all, or had removed themselves from it at the direction of the police.

> **OR Sub-Class**: All persons who were arrested in or around the vicinity of City Hall on November 30, 2011; who had no objective disqualifications from entitlement to release OR pursuant to Penal Code §853.6, and who were not released OR before or immediately after the booking process was completed.

> **City Bus Sub-Class**: All persons who were arrested in or around the

6

vicinity of City Hall on November 30, 2011, and who were transported on buses driven to the LAPD's Metropolitan Detention Center.

**County Bus Sub-Class**: All persons who were arrested in or around the vicinity of City Hall on November 30, 2011, and who were transported to Van Nuys jail on buses driven by members of the Los Angeles County Sheriff's Department.

**Injunctive Relief Class**: All individuals who were arrested on or after November 30, 2011 for unlawful assembly and who were denied, and who may in the future be denied, release on their own recognizance pursuant to Penal Code § 853.6, who have no objective disqualifications from entitlement to release OR pursuant to Penal Code § 853.6, without a particularized and individualized determination that they are not eligible for OR release.

24.   The parties reached this agreement to resolve the damages claims, and agreed that, at the time the settlement terms were agreed to, no injunctive relief was necessary.  Accordingly, no injunctive relief is included in this Order.

**V.   CLAIMS FILED**

25.   A total of 243 claim forms were sent to class members by the Class Administrator.  Other claim forms were sent to those who requested them, but there were many such requests from individuals who did not qualify as class members. (See Declaration of Steven Powell on behalf of Class Administrator Gilardi & Co., ¶¶ 4, 7.)  In addition, class counsel engaged independently in substantial outreach efforts to reach class members to encourage them to file claims.  (See Declaration of Carol A. Sobel, dated July 21, 2015.)  A total of 287 timely claims were filed. Of those timely claims, 188 were filed by qualified class members, and 99 were filed by non-class members.  (Powell Declaration, ¶ 7.)  In addition, there were three late claims.  *Id*.  Thus, the claims made represent approximately 77-78.5% of class members reached (depending on whether late claims are included).  *Id*.

## VI.   **SETTLEMENT AGREEMENT FAIR, ADEQUATE, AND REASONABLE**

26.   The settlement of this lawsuit was not the product of collusion between Plaintiffs and Defendants or their respective counsel, but rather was the result of bona fide and arm's-length negotiation conducted in good faith by the Parties and their counsel, with the assistance of an independent mediator, who is a sitting United States Magistrate Judge.

27.   The Settlement Agreement and the settlement set forth therein are hereby approved and found to be fair, adequate, reasonable, in the best interest of the Class as a whole, and in satisfaction of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

28.   The financial terms of the settlement are favorable to class members. Every class member receives no less than $4000.  Those who were bystanders and were arrested, or were held without OR – which is most class members – receive substantially more with a maximum possible recovery of well over $10,000.  These amounts are exclusive of attorneys' fees and costs.  The mean recovery, based on the number of claims made, exceeds $10,000.

29.   The settlement compares well with other protest cases.  The Court is aware of no protest cases that have gone to trial, and this settlement compares favorably with other protest settlements.  The most comparable case appears to be one involving arrests of people involved in protests over the shooting of Oscar Grant in Oakland, California.  Participating class members in Oakland, who were arrested and held for 14 to 24 hours before being released in circumstances similar to the class here, received an average of approximately $4200.  *See* Doc. # 188 (Declaration of Carol A. Sobel).  Here the average (referring to the mean) recovery, based on the 191 claims filed and determined to be valid in this case, well exceeds $10,000.  *See id.*, *supra*, for elaboration regarding other protest and similar settlements. The settlement is supported by highly experienced Class Counsel, who

thoroughly investigated the case and successfully litigated the class certification.

## VII.  NOTICE

30.   As required by this Court in its Preliminary Approval Order:  (a) Class Notices were sent by the Class Administrator to all persons identified from law enforcement records as class members; and (b) Class and Settlement Notice was published in a summary fashion as set forth in the Settlement Agreement and in the Preliminary Approval Order, all as more fully set forth in the Declaration of Steven Powell on behalf of the Class Administrator Gilardi & Co, dated August 10, 2015.

31.   The notice given to the Class Members is hereby determined to be fully in compliance with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all parties entitled thereto

32.   Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in this hearing, it is hereby determined that all Class Members, except for those who have opted out, are bound by this Final Order Approving Class Action Settlement.

## VIII.  TERMS OF PAYMENTS FROM THE CLASS FUND

33.   The total monetary settlement comprising the total Class Fund is $2,675,000, inclusive of attorneys' fees, costs and all costs of class administration, of which the County Payment is $225,000 and the City Payment is $2,450,000.

34.   Pursuant to the Settlement Agreement, Defendants have compensated or will compensate the Class Administrator for its services.  Under the terms of the Settlement Agreement, the Class Administrator will not accrue any costs for figuring points for Claimants or any other activities beyond the "Notice Procedures" and "Claims Processing" described until after entry of the Final Order Approving Class Action Settlement.  Thus, the precise amounts that the class member claimants will receive cannot be determined, but the approximate amount can and is addressed further on in this Final Order.

35.   Since there have been no objections to the Settlement, there can be no appeals taken.  *See* Newberg on Class Actions §14:13 (5th ed.) ("Class members who object but whose objections are rejected by the district court may seek to appeal that rejection."); *Devlin v. Scardelletti*, 536 U.S. 1, 1, 122 S. Ct. 2005 (2002) (holding that absent class members who object in a timely manner to approval of a settlement at a fairness hearing have the power to bring an appeal without first intervening; rejecting the contention that only Named Plaintiffs and formal interveners qualify as parties).  Since no class member timely objected, no class member may appeal.  Accordingly, the effective date of settlement is the date of this Order (see definition of "Effective Date", ¶ 9, *supra*), and, pursuant to the provisions of Paragraph 22 of the Settlement Agreement, the City and County Defendants shall each deposit or cause to be deposited into the Settlement Fund their respective shares of the settlement within thirty (30) calendar days of the date of entry of this order, as follows:

    a.   The County shall make a single payment to the Administrator of $225,000, less the amount already advanced to the Class Administrator.

    b.   The City shall make two payments, the total of which shall be $2,450,000, less the amount already advanced by the City to the Class Administrator.  It shall deposit or cause to be deposited the total of the attorneys' fees and costs awarded by the Court to Class Counsel, payable to the Client Trust Account of Kaye, McLane, Bednarski & Litt.  The remainder of the funds due from the City after deduction of said attorneys' fees and costs, and Class Administrator advances, shall be paid to the Administrator.

36.   To extent the City and County have not already done so, each shall provide any such additional information requested by the Class Administrator related to the case.  Such information shall be confidential, and may not be disclosed to anyone except counsel of record, the Class Administrator, and

designated representatives of the Parties.

37.    As indicated previously in ¶ 25, there have been three late claims filed by qualified class members of which the Court has been apprised.  The Court will allow these, and any other late claims filed by qualified class members postmarked, or received by the Class Administrator, August 28, 2015 or earlier, and they are to be included in the allocation of funds to class members provided in this Order.  The phrase "valid claims" as used in the remainder of this Order includes such late claims.

38.    The Allocation and Distribution Plan formula for distribution of the Post-Administration Class Fund to class members shall be as follows.  The total number of points is to be calculated by determining the points awarded to class members who filed valid claims, (including, for the reasons stated in ¶¶ 19 and 20, points for the countable opt-outs).  The value of a point shall be determined by taking the Post Administration Class Fund (defined in ¶ 13) and dividing it by the total number of awarded points.  The points awarded shall be based on the following formula:

    a.  Each class member who filed a valid claim shall be allocated four points.  This covers claims for the arrest and conditions on the bus.

    b.  Each class member who filed a  valid claim who qualifies as a member of the Vicinity Sub-Class shall be allocated an additional four points.

    c.  Each class member who filed a valid claim who qualifies as a member of the OR Sub-Class and spent 36 hours or less in custody (measured from the time of arrest) shall be allocated an additional two points.

    d.  Each class member who filed a valid claim who qualifies as a member of the OR Sub-Class and spent more than 36 hours in custody shall be allocated an additional four points.

    e.  No class member who filed a valid claim shall receive less than $4,000.  (Although it appears to be moot because it appears that the minimum payout will exceed $4000 without adjustment, the

distribution formula will be adjusted if necessary so that all members who are allocated four points will receive $4,000, and the remaining funds will be distributed pro rata even if that means the class members receiving four points end up receiving more per point than other class members.)

39. Each Named Plaintiff shall receive the amount due to him or her under the foregoing formula plus a $5,000 Class Representative Payment (aka "incentive award") for his or her special contributions to the case as Named Plaintiffs. Each Named Plaintiff's award will be as follows:

    a. Cheryl Aichele: 8 points plus $5,000 Class Representative Incentive Payment

    b. James Weitz: 10 points plus $5,000 Class Representative Incentive Payment

    c. Jonathan Alexander: 8 points plus $5,000 Class Representative Incentive Payment

    d. Michael Prysner: 6 points plus $5,000 Class Representative Incentive Payment

    e. Carina Clemente: 6 points plus $5,000 Class Representative Incentive Payment

40. The Court finds that the foregoing incentive awards are justified and consistent with well-established law. Class representatives contributed to the outcome in this case in various ways, including providing information, filing declarations, making themselves available to be deposed, and exposing themselves to the consequences of a potentially adverse judgment. "Incentive awards are fairly typical in class action cases. *See* 4 William B. Rubenstein et al., *Newberg on Class Action*s §11:38 (4th ed.2008); Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 U.C.L.A. L.Rev. 1303 (2006) (finding twenty-eight percent of settled class actions between 1993 and 2002

included an incentive award to class representatives).  Such awards are discretionary, *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000), and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.  Awards are generally sought after a settlement or verdict has been achieved."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)

41.   The proposed incentive awards to the class representatives ($5000 in addition to the amount to which they would be entitled under the Settlement Agreement) is well within the range of acceptable incentive payments to class representatives for which the Court has discretion in recognition of work done on behalf of the class and in consideration of the risk undertaken in bringing the action.  *Id.  See also Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D.Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D.Cal.1995) (awarding $50,000 to a lead plaintiff); *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177, at 37 (C.D. Cal. Nov. 23, 2013) ("An incentive award of $5,000 per class representative is in line with other awards approved in this circuit.").

42.   The Class Notice advised class members of this proposed incentive award, thereby allowing them the opportunity to object to it, and none did.

43.   The Class Administrator shall have sole responsibility for distribution of the Class Fund to class members.  To the extent that valid claims are filed, but the checks issued pursuant to such claims are not cashed, the funds for that person shall be held by the Class Administrator for one year, after which any such remaining funds will be distributed pro rata to class members who made claims, and received and cashed their checks.  If, after that second round distribution, there

13

are still funds remaining, the parties will discuss and attempt to reach agreement on a *cy pres* beneficiary (with subsequent approval by the Court of any such agreement), absent which the funds will escheat to the State of California.

## IX.   CLASS FUND ATTORNEYS' FEES

44.   Plaintiffs have filed a Motion for Attorneys' Fees requesting payment of $668,750 in attorneys' fees, plus litigation costs of $5,608.93. The costs figure does not include Class Administration costs. The Court approves this request and is entering a separate order addressing it.

## X.   CLASS ADMINISTRATOR

45.   The Court reaffirms the appointment of Gilardi & Co. as Class Administrator (hereby "Gilardi"). The Court authorizes Gilardi to take from the Class Fund any outstanding payments due, and authorizes Gilardi to take such additional funds as may become due under its contract to handle the claims in this case, not to exceed $20,000 (per the terms of its contract with the parties).

46.   The Claims Administrator shall preserve all written communications from Class Members in response to the Class at least until December 31, 2016, or pursuant to further order of the Court. All written communications received by the Claims Administrator from Class Members relating to the Settlement Agreement shall be available at all reasonable times for inspection and copying by Counsel for the Parties.

47.   The Class Administrator has performed all tasks required of it, including establishing a website and call-in numbers, posting the relevant materials to the website, publishing a summary notice in the LA Weekly on three separate occasions, mailing class notices and following up, and processing claims. *See* Declaration of Steven Powell.

48.   At the conclusion of the Class Distribution, the Class Administrator shall submit a report to the Court summarizing the payments made to the Class.

14

## XI.     GENERAL PROVISIONS

49.     Claim forms not received or postmarked by August 28, 2015, shall not be paid, although such persons shall nonetheless be bound by this Order.

50.     All class members except those who timely filed opt-out forms shall be bound by this Order.

51.     Except as otherwise provided in this Order, each party shall bear its own costs, expenses and attorneys' fees.

52.     The Class Administrator will prepare a list of all rejected claims, with the reasons for rejection, and maintain the list in its case file.

53.     The Court reserves and maintains jurisdiction over this settlement and its provisions, and over the claims administration and distribution of the funds. Disagreements between the parties on any disputes or unresolved aspects of this Final Order as it relates to monetary relief shall be subject to mediation before the mediator who has mediated this case to date, United States Magistrate Judge Woehrle, if she is available, or before the United States Magistrate Judge otherwise assigned to the case if she is not.  If mediation is not successful, the matter shall be brought to this Court for resolution.

54.     The use of the masculine gender herein is construed to include the feminine and/or the neuter where applicable.  The use of the singular herein is to be construed to include the plural where applicable.  The use of the plural herein shall be construed to include the singular where applicable.

## XII.     FINAL RESOLUTION

55.     The monetary relief provided for in this Order shall compensate for all alleged violations of rights and all claims by the Damages Class Members on matters alleged in the lawsuit under any theory of liability related to the events of November 30, 2011, that come within the Damages Class definition, except as to monetary damages for those class members who opted out.

56.     The Court hereby dismisses the lawsuit on the merits, with prejudice,

and without further costs, with such dismissal subject only to compliance by the Parties with the terms and conditions of the Settlement Agreement, the Order on the injunctive relief class claims, and this Final Order Approving Class Action Settlement.

57.   The Damages Class Members, and their agents, attorneys and assigns, are hereby severally and permanently barred and enjoined, to the fullest extent permitted by law, from filing, commencing, instituting, maintaining, prosecuting, asserting or participating in a lawsuit or any other proceeding against the Defendants, including the employees, entities, agents, attorneys and insurers of Defendants and all Released Persons as defined in ¶ 6, involving or based on any of the claims encompassed by the complaint in this case, or in any way arising out of the facts alleged, or in any way related to the claims for relief pleaded, in the operative Complaint, which are fully incorporated herein by reference.

58.   The Named Plaintiffs and each Class Member waive all rights or benefits which he or she now has or in the future may have under the terms of California Civil Code §1542, arising from, alleged in, or pertaining to the matters alleged in the Lawsuit, specifically claims related to the events of November 30, 2011, that come within the Damages Class definition, except as to monetary damages for those class members who have opted out. Section 1542 reads:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

59.   Each Defendant and other Released Person are hereby released from all claims for damages or other relief which any Class Member (other than opt outs) had, has, or may have in the future, against such Defendant or other Released Person in any way arising out of the facts alleged, or in any way related to the claims for relief pleaded, in the operative Complaint;

16

60.     Defendants, and all of their agents, attorneys and assigns, waive and release any and all claims or rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by Plaintiffs in any of the cases covered in this Settlement, by any Represented Individuals as defined herein, and by any Class Members, with respect to any matters related to the matters alleged in the lawsuit complaint, including waiver of the right to file a malicious prosecution action; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code §1542 recited in the previous paragraph.

61.     Plaintiffs have not relied upon the advice of Class Counsel as to the legal and/or tax consequences of this settlement, the payment of any money by the Defendants, or the distribution of the Settlement Funds.

62.     Neither this Final Order Approving Class Action Settlement, the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall constitute evidence or an admission by any Defendant that any acts of wrongdoing have been committed, and they shall not be deemed to create any inference that there is any liability therefore.  Neither this Final Order Approving Class Action Settlement, nor the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any other matter or proceeding in any court, administrative agency, arbitration, or other tribunal, other than as expressly set forth in the Settlement Agreement.

63.     Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and therefore directs entry of this Final Order Approving Class Action Settlement.  Inasmuch as this disposes of all

//

//

//

1   claims asserted in the Lawsuit, the Court further directs the Clerk to enter this

2   Judgment of Dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

3

4   DATED:  September 9, 2015                    _____

5                                                              DOLLY M. GEE
                                                     UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28